UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | **Bankr. Court Adv. Proc. No. 01-4605** |
| v. | ) | |
| | ) | |
| STATE STREET BANK AND TRUST CO., as | ) | **Related Dist. Court Case: 03-cv-33-KAJ** |
| Indenture Trustee for Junior Subordinated | ) | |
| Secured PIK Notes, | ) | |
| SCOTT CABLE COMMUNICATIONS, INC., | ) | |
| as Debtor in Possession (Chapter 11), | ) | |
| ALLSTATE INSURANCE CO., | ) | |
| MEDIA/COMMUNICATIONS PARTNERS, L.P., | ) | |
| CHESTNUT STREET PARTNERS, INC., | ) | |
| MILK STREET PARTNERS, INC. and | ) | |
| TA INVESTORS, | ) | |
| | ) | |
| Defendants. | ) | April 20, 2006 |

**UNITED STATES' MOTION THAT DISTRICT COURT
GRANT LEAVE TO APPEAL 4/10/06 ORDER DENYING
MOTION TO TRANSFER VENUE BACK TO CONNECTICUT
IN LIGHT OF RE-ASSIGNMENT OF JUDGE, and Request that
District Court Enlarge Page Limit for Accompanying Brief
and Expedite its Determination of this Motion**

The United States of America hereby seeks leave of the District Court, pursuant to Bank-

ruptcy Rule 8003, to appeal the order of the Bankruptcy Court dated April 7 and filed and entered

on April 10, 2006 (Exhibit 1 attached)), denying the *United States' Motion to Transfer Venue Back

to Connecticut in Light of Reassignment of Judge* (Exhibit 2 attached), based on a bench decision

read during the March 29, 2006 hearing (transcript attached as Exhibit 3). For additional reasons

set forth below, the United States also hereby requests that the District Court accept a brief in

excess of the 40-page limit under local rules (the accompanying brief in support of this motion

contains a total of 49 pages), and that it expedite this motion and the appeal if it is permitted.

**Companion Filing in Dist. Ct. No. 03-cv-33-KAJ**

Another appeal in this bankruptcy matter – from an order entered December 12, 2002

["12/12/02 Order"] – remains to be resolved by the District Court in Civil No. 03-CV-33-KAJ.  In

2003, Judge Jordan ordered that appeal stayed until the Connecticut District Court determines

certain appeals by the United States from orders of the bankruptcy court in that district, and he

recently entered an order administratively closing No. 03-CV-33-KAJ on the docket subject to

reopening when the Connecticut appeals are ruled upon.  Among the government's arguments in

No. 03-CV-33-KAJ is that the matter in respect to which the 12/12/02 Order was issued (an

application by debtor's counsel for compensation) was beyond the statutory authority of the

Connecticut Bankruptcy Court to transfer to Delaware.  The United States will shortly be filing a

motion in No. 03-CV-33-KAJ to have that appeal be transferred to the Connecticut District Court

if this motion for leave to appeal is granted and the government prevails in this appeal – *i.e.*, if the

underlying adversary proceeding is transferred back to the Connecticut Bankruptcy Court.

### Page-Limit Enlargement Request

The reason for the page-limit enlargement for the accompanying brief is that the United

States is requesting that the District Court expedite the appeal if it is permitted, so as to determine

it no later than June 12, 2006 (and preferably much sooner) for reasons explained below, and is

hoping that the accompanying motion brief will also suffice as the government's opening appeal

brief on the merits, for which Bankruptcy Rule 8010 would permit 50 pages.  This would require

the District Court to overlook the organizational differences mandated by Bankruptcy Rule 8003

(specifying organization of motion for leave to appeal) and Rule 8010 (specifying organization of

merits brief).  The length of the motion brief is largely due to a lengthy statement of facts and

procedural history that is essential to an understanding of the issues for appeal.  The arguments for

granting leave for appeal are not lengthy.  The arguments for reversal are subsumed within some of

the arguments for granting leave to appeal, which is why a separate merits brief may not be

necessary (although the government would only need a week following the grant of leave to appeal

to fashion a brief tailored more to presenting only the merits of the appeal if the Court prefers).

The United States further notes that the District Court's local rules permits a brief to be 40 pages of 11-point type whereas the accompanying brief is larger, 12-point, type (except for footnotes, which are 11-point type).

### Motion for Leave to Appeal (and Need for Expedited Consideration)

The bankruptcy case out of which this matter arises was filed and remains pending before the Connecticut Bankruptcy Court as its Case No. 98-51923. The debtor, reorganized Scott Cable, was created pursuant to a Chapter 11 plan of reorganization confirmed by the Delaware Bankruptcy Court in 1996 in the consolidated cases, *In re Ace-Texas, Inc. a/k/a Simmons Communications-Texas, Inc.*, No. 96-166-PJW (Bankr. D. Del.). Pursuant to the 1996 plan, reorganized Scott Cable issued certain securities referred to as junior subordinated secured PIK notes that lie at the center of the instant controversy. (PIK refers to the payment-in-kind interest feature, whereby more notes are issued rather than cash interest payments.) The junior notes now underlie a secured claim in the Connecticut case, which would exhaust the remaining proceeds (about $40 million with accumulated interest) of a court-ordered sale in 1999 of all of Scott Cable's assets, which would leave nothing to pay about $60 million in federal and state gains taxes (including interest) incurred in the sale.

The United States commenced the instant adversary proceeding under Part VII of the Federal Rules of Bankruptcy Procedure, contending that the junior notes, although debt in form, are, in substance, equity, and therefore may not be paid until administrative tax claims are satisfied. (DI# 7 (amended complaint).) In the alternative (count II), the government seeks to have the secured claim for the notes be equitably subordinated, pursuant to 11 U.S.C. § 510(c), to administrative taxes.

As described in greater detail in the accompanying brief, the Connecticut Bankruptcy

Court, after being reversed on appeal on an initial ruling that the 1996 confirmation order barred the government's adversary complaint, transferred venue for the adversary proceeding to Delaware on the premise that it should be determined by the Hon. Peter J. Walsh, because Judge Walsh confirmed the 1996 *Ace-Texas* plan. The United States maintains that this transfer was improper. It sought interlocutory appeal in Connecticut, which was denied. Then, in order to preserve its ability to appeal the transfer within this district and circuit, cf. Nascone v. Spudnuts, Inc., 735 F.2d 763, 766 (3d Cir.1984), the United States promptly moved for re-transfer, which was denied by Judge Walsh.

In early 2006, the government moved that Judge Walsh recuse himself, which prompted him to have the case be reassigned (although he stated that he found the motion meritless, while acknowledging that an appellate court might disagree).[1] The United States then moved again to re-transfer venue back to Connecticut, arguing that Judge Walsh's reassignment removed the sole reason for the transfer here in the first place, and that venue should be transferred back to Connecticut for that and additional reasons, including but not limited to the unavailability of several important witnesses who are within the subpoena range of the Connecticut court, but not the Delaware court, and the fact that the defendants are currently seeking a ruling that would overturn the law of the case created by the appellate decision of the Connecticut District Court, making it more appropriate that any appeals from a final judgment in the adversary proceeding be to that Court rather than to the Delaware District Court.

It is from the denial of the recent motion for re-transfer that the United States now seeks leave to appeal, and seeks to have this appeal be adjudicated before the trial goes forward. Since

---

[1] As the United States has informed the bankruptcy court in responding to certain allegations about the recusal motion that are not presently important, the recusal motion had to be approved by the Assistant Attorney General in charge of the Tax Division, Department of Justice, and was thoroughly reviewed at several levels.

the trial is currently set for the three consecutive weeks beginning June 12, 2006, we are requesting

expedited determination of this motion, and expedited determination of the appeal if the motion is

granted.  As the June trial date approaches, if this appeal is not determined, we will likely file a

motion to stay the trial unless the Bankruptcy Court agrees to stay the trial pending this appeal.

The United States maintains that if the trial goes forward in Delaware and it suffers an adverse

judgment on the merits, the entire case will have to be retried in Connecticut because the transfer

here in 2001 was reversible error, the denial of the transfer back to Connecticut in 2001 was

reversible error, and/or the denial of the transfer back to Connecticut in 2006 was reversible error.[2]

Furthermore, the United States' trial strategy will have been disclosed in the meantime (not to

mention the waste of resources of a three-week trial).

        WHEREFORE, the United States requests the entry of an order granting leave to appeal

and requests that the District Court expedite this motion and appeal if it is granted, by whatever

means appear appropriate to the District Court.


                                            /s/ Peter Sklarew
                                            PETER SKLAREW
                                            Tax Division, Dept. of Justice
                                            Post Office Box 55
                                            Washington, D.C.  20044
                                            (202) 307-6571 / Fax (202) 514-5238
                                            peter.a.sklarew@usdoj.gov

---

[2] As indicated in the brief in support of this motion, in adjudicating an interlocutory appeal from the denial of re-transfer in 2006, the District Court would have pendent appellate jurisdiction to review the prior interlocutory orders transferring the matter to Delaware in the first place and then denying the government's initial motion for re-transfer in 2001.

**Certificate of Service**

IT IS HEREBY CERTIFIED that service of the foregoing **UNITED STATES' MOTION THAT DISTRICT COURT GRANT LEAVE TO APPEAL 4/10/06 ORDER DENYING MOTION TO TRANSFER VENUE BACK TO CONNECTICUT IN LIGHT OF RE-ASSIGNMENT OF JUDGE, and Request that District Court Enlarge Page Limit for Accompanying Brief and Expedite its Determination of this Motion** is being made this  20th  day of April, 2006, upon counsel for all defendants via the Court's ECF system since this motion is being filed electronically.

*/s/ Peter Sklarew* _____
PETER SKLAREW
Attorney, Tax Division

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 01-4605 (KJC) |
| | ) | |
| v. | ) | |
| | ) | |
| STATE STREET BANK AND TRUST CO., | ) | |
| as Trustee for Junior Subordinated Secured | ) | |
| PIK Notes, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER DENYING UNITED STATES'
MOTION TO RE-TRANSFER VENUE BACK TO CONNECTICUT**

Upon consideration of the motion, docketed on February 10, 2006 (the "Motion") [D.I.

331], of the Plaintiff for re-transfer of venue of this adversary proceeding back to the United

States Bankruptcy Court for the District of Connecticut; and after consideration of the Motion,

the supporting briefs and the Defendants' objections thereto; and after oral argument thereon; it

is hereby:

ORDERED that the Motion is denied for the reasons stated on the record at the hearing

held on March 29, 2006.

Dated: _____, 2006
        Wilmington, Delaware

_____
The Honorable Kevin J. Carey
United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

|                                          |     |                          |
|------------------------------------------|-----|--------------------------|
| UNITED STATES OF AMERICA                 | )   |                          |
|                                          | )   |                          |
| Plaintiff,                               | )   |                          |
|                                          | )   |                          |
| v.                                       | )   | Adv. Proc. No. 01-4605   |
|                                          | )   |                          |
| STATE STREET BANK AND TRUST CO., as      | )   |                          |
| Trustee for Junior Subordinated Secured  | )   |                          |
| PIK Notes, et. al.                       | )   |                          |
|                                          | )   |                          |
| Defendants.                              | )   |                          |

## UNITED STATES' MOTION TO TRANSFER VENUE BACK TO CONNECTICUT IN LIGHT OF REASSIGNMENT OF JUDGE

**Local Rule 7.1.1 Statement:** All note-holder defendants, as well as the Indenture Trustee, have indicated that they would oppose a motion by the government to transfer venue for this adversary proceeding back to Connecticut. The debtor did not respond to an inquiry.

**Objection deadline:** February 24, 2005

**Hearing date:** To be determined by the Court

The United States of America, in light of Judge Walsh having bowed out of this case by letter of January 27, 2006 (DI# 328), thus eliminating the sole reason the proceeding was transferred here from Connecticut, and for additional reasons, hereby moves to transfer this adversary back to Connecticut. The grounds and reasons are set forth in the accompanying brief.

/s/ Peter Sklarew
PETER SKLAREW
Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Washington, D.C. 20044
(202) 307-6571
peter.a.sklarew@usdoj.gov

## CERTIFICATE OF SERVICE

**IT IS HEREBY CERTIFIED** that service of the foregoing **UNITED STATES' MOTION TO TRANSFER VENUE BACK TO CONNECTICUT IN LIGHT OF REASSIGNMENT OF JUDGE** is being made this <u>10th</u> day of February, 2006, upon counsel for all defendants via the Court's ECF system since this memorandum is being filed electronically.

<u>/s/ *Peter Sklarew*            </u>
PETER SKLAREW
Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Washington, D.C.  20044
(202) 307-6571

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE


IN RE:                          .    Chapter 11
                                .
ACE-Texas, Inc.,                .    Case No. 96-00166(KJC)
                                .
          Debtor.               .
                                .
                                .
. . . . . . . . . . . . . . .   .    . . . . . . . . . . . . .

UNITED STATES OF AMERICA,       .
                                .
          Plaintiff,            .
                                .
     v.                         .    Adv. Proc. No. 01-4605(KJC)
                                .
STATE STREET BANK AND TRUST     .    March 29, 2006 (2:04 p.m.)
CO., as Trustee for Junior      .    (Wilmington)
Subordinated Secured PIK        .
Notes, *et al.*,                .
                                .
          Defendants.           .


                TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE KEVIN J. CAREY
          UNITED STATES BANKRUPTCY COURT JUDGE








          Proceedings recorded by electronic sound recording;
             transcript produced by transcription service.

1           THE CLERK: All rise.  You may be seated.

2           THE COURT: Good afternoon all.

3           ALL: Good afternoon.

4           THE COURT: All right, we're here on - Come on.

5           MS. CURRIER: Good afternoon, Your Honor.  Teresa

6   Currier from Klett Rooney here representing Scott Cable

7   Corporation, the debtor in this case.  We did file the

8   amended agenda letter that you have before you, and I'll just

9   turn the podium over to the United States because their

10  motions are listed thereon.

11          THE COURT: Very well.

12          MS. CURRIER: Thank you.

13          MR. SKLAREW: Good afternoon, Your Honor.  My name

14  is Peter Sklarew.  I'm from the Department of Justice,

15  Washington, D.C.   I'm going to be arguing the first of the

16  government's motions today, the motion to transfer, and I'll

17  have Mr. Shapiro argue the second motion that's on the

18  calendar.

19          THE COURT: Very well.

20          MR. SKLAREW: I'd like to ask in advance, I'm not

21  sure how many of these gentlemen will be following me, but do

22  I need to specifically reserve some time for rebuttal or is

23  that understood?

24          THE COURT: I usually permit brief rebuttal time.

25          MR. SKLAREW: Thank you, Your Honor.  Your Honor,

1    there's a transfer motion brief and a response brief or I

2    believe a couple of response briefs or joinders in response

3    briefs.  There's a government reply brief, and I just wanted

4    to inquire before I begin my argument in terms of my focus if

5    the Court had a chance to read the reply brief in particular

6    since sometimes that's the last thing you get to and there

7    are some interesting points, I believe, in there that respond

8    to their briefs that were not anticipated in our first brief.

9         THE COURT: I've read all the submissions.

10        MR. SKLAREW: Thank you, Your Honor.  I'll try then

11   to summarize what I think are the main salient points here.

12   I think it's understood already, and Your Honor already asked

13   this question, my reading of the transcript at the last

14   hearing in February, which was after we filed our motion and

15   before there were any responses, that it's fairly clear that

16   the reason the case was originally sent to this district has

17   basically evaporated.  It was because of the feeling in the

18   Connecticut court and as denial of interlocutory appeal also

19   sort of essentially without supposing to affirm a decision

20   essentially on what's affirmed, that both judges believed

21   that it was proper to have it sent here so that Judge Walsh

22   could reconsider his confirmation of the plan, and Judge

23   Walsh, for whatever reason, and I can go into that if it

24   comes up necessary in rebuttal, because there's some

25   accusations about it that I don't think are very well taken,

1    is no longer on the case.  And -

2              THE COURT: I don't think it matters.

3              MR. SKLAREW: I don't think it matters, why?

4              THE COURT: Here it rests.

5              MR. SKLAREW: Here it rests.

6              THE COURT: And the question is, should it go

7    elsewhere?

8              MR. SKLAREW: Right, that's the way I look at it,

9    Your Honor.  So, there is something though that I think is

10   kind of worth noting, and that's when Judge Walsh first was

11   given this case, he indicated at his very first hearing that

12   he thought it was an anomaly to have the case here, he said.

13   That's the word he used, "anomaly", and he also said, Having

14   the case here strikes me as presenting somewhat of an anomaly

15   because the alternative relief requested in an adversary

16   proceeding is subordination, under § 510(t), and it just

17   strikes me as strange that the Court that is not presiding

18   over the Chapter 11 case would make a determination for

19   subordination under § 510©).  That was on December 19th, 2001.

20   And indeed, if you look at the case law, the case law favors

21   having administration of an estate and all things related to

22   the administration of the estate consolidated in one - in the

23   district where the bankruptcy is pending.  I realize it's not

24   an irretrievably non-breakable rule that sometimes the

25   administration can be split up a little bit.

1          THE COURT: Well, and the defendants argue here that

2    really this is the last thing that needs to be done in terms

3    of the main case.  So, there's really no harm in keeping it

4    here because it's not like there are things going on up there

5    at the same time they're going on down here, and there's some

6    inefficiency involved.  This is really the case.  At least

7    that's what they argue.

8          MR. SKLAREW: I understand what their argument is,

9    Your Honor, and our response to that, if you've read the

10   reply, is that there actually are things still going on and

11   there will be things going on.  There's an appeal pending

12   from a - and that's a very important aspect of this - there's

13   an appeal pending from the denial of conversion, and that's

14   part of the problem with the whole transfer.  One of the

15   things we agree with defendants on, I was surprised that they

16   actually put it in their briefs, is that they agree with us

17   that one of the reasons why you have the timeliness rule and

18   try to make transfers earlier on in a case, is that once

19   significant law of the case is developed, you don't want to

20   be transferring a case to another court then has to deal with

21   that law of the case.  And what happened in this situation

22   is, it got transferred here and things that weren't even law

23   of the case developed.  Judge Walsh allowed the debtor to

24   intervene and overruled the government's arguments mainly

25   because it's a Third Circuit binding precedent that says,

1   Debtors have an unconditional statutory right to intervene,

2   but he also, as part of that, since we argued that the debtor

3   had a conflict of interest, and he let the debtor intervene,

4   Judge Schiff then in Connecticut said, Well, now I'm denying

5   your motion to convert because Judge Walsh has already ruled

6   that there's no conflict of interest and that's binding on

7   you because you didn't appeal it.  That's what the debtors

8   argued at least and the Indenture Trustee argued and Judge

9   Schiff didn't make a ruling consistent with that, although

10  it's a little hard to parse his ruling.  We then appealed

11  that to the District Court in Connecticut, and unfortunately

12  it took a long time before the District Court disposed of the

13  debtor's motion to dismiss our appeal as interlocutory.  That

14  happened only about a year ago in March of 2005 when the

15  Court there said in granting our motion to interlocutory

16  appeal one ruling and denying a motion to dismiss a different

17  ruling, which was the conversion ruling, Judge Thompson said

18  he didn't see how reasonable minds could say that the

19  debtor's management did not have a conflict of interest in

20  this case with a 21.5 percent stake in the junior notes.  So,

21  we're appealing that.  Judge Walsh then after - this is what

22  becomes bizarre that it's several months later, I say it was

23  almost a year later, later in 2003 Judge Walsh spontaneously

24  at the beginning of another hearing said he didn't understand

25  why the case hadn't been converted to Chapter 7, which

1   obviously showed that when he granted the debtor's motion to

2   intervene, he was not intending to preclude a motion to

3   convert.  But, nevertheless, that's the way it was

4   interpreted in Connecticut, and now we're on appeal from

5   that.  So this kind of bouncing back and forth is exactly why

6   it was error to transfer here and why nothing is going to

7   cure that error until it goes back there because one of our

8   positions to this day, and has always been in that appeal, is

9   that this case shouldn't be tried until that appeal is done

10  because we're entitled to a Chapter 7 trustee who we believe

11  will be duty-bound to waive the attorney/client privilege,

12  force the debtor's attorneys, Mr. Block and Mr. Blumenthal,

13  who are two of the people that Mr. Shapiro's pending motion

14  to take trial depositions of, it will force them to appear at

15  trial.  They will appear at trial.  They will have to testify

16  because the attorney/client privilege will be waived, which

17  under CFT vs. Weintraub, the Supreme Court case, does say

18  that the privilege is controlled by the Trustee and has to be

19  exercised for the benefit of the estate, and a secured

20  creditor against the estate is really not exercising it for

21  the benefit of the estate, and those gentlemen are both in

22  New York where they're within a hundred miles of the

23  courthouse up there.  So I just want to address that notion

24  of that there's nothing else going on in Connecticut.  I

25  think there is, and I think it's very important.  There's an

1    appeal pending that could send this whole case back and

2    transform everything.  We could have a trial in this case.

3    We could win that appeal if this trial doesn't go forward

4    before that.  We could win that appeal and have to have a do-

5    over because we haven't had access to Mr. Block and Mr.

6    Blumenthal.  But let me move on to the other points because

7    Mr. Block and Blumenthal are actually central to my argument

8    in a different way.  Putting aside the history of this case

9    and how we got here, the factors in transfer, one of the most

10   important factors is the availability of witnesses and the

11   availability of principals for the debtor.  Well, the

12   debtor's three principals are within - one of the debtor's

13   principals, we are told, is Mr. Armstrong, current principal,

14   is going to appear, we've been advised.  So, we don't have to

15   worry about him not showing up in Delaware, and he will be at

16   trial, and his deposition's already been taken.  But there

17   are two other principals who, one of whom we are sure is not

18   going to appear and one of whom we have no knowledge of

19   whether he's going to appear, and the debtors have not made

20   any effort to get him to appear for us.  Mr. Simmons is the

21   former CEO and knows a lot about the early history of this,

22   was involved in the case heavily up until 1993 or involved in

23   the company and the issuance of the earlier notes that have a

24   historical - notes that were traded for the notes that are at

25   issue in this case.  He is within subpoena range of - He

1    lives in Connecticut, in Stamford, Connecticut.  So, he's

2    very close to Bridgeport, Connecticut. Mr. Flanigan is the

3    chief financial officer.  He's one of the persons that we

4    need a trial deposition from to authenticate and get the

5    foundation as a business record for certain documents that

6    are in dispute for other reasons, and you'll have to get I

7    guess on April 19th, but Mr. Flanigan, my point is, also lives

8    in Northern New Jersey, within a hundred miles, and I've

9    measured it, of Bridgeport, Connecticut.  So he is within the

10   subpoena range of that court.  So that's rather important.

11   We're now having a fight right now about whether or not we

12   can have a trial deposition of Mr. Block, if Mr. Block who -

13   we've been told - may not even have personal knowledge of

14   some of the things he previously said in his declarations and

15   we never previously objected to.  Then we may have to take

16   additional testimony from other persons in his law firm, the

17   law firm is in New York City.

18        THE COURT: Can you just enlighten me on one thing,

19   and I do not mean to hear argument today on the other motions

20   that have been filed and on which another date for argument

21   has already been scheduled, but since you're advancing,

22   properly, the witness availability in support of your motion,

23   a question strikes me, and that is, I'm assuming that

24   discovery has long since been closed here.  Why is the

25   government now talking about taking depositions?

1          MR. SKLAREW: Well, I'll have to let Mr. Shapiro

2     address that in greater detail on April 19th, but there are

3     briefs on file on it, but in a nutshell, there's a long

4     history of us having argued that we wanted the right to more

5     depositions.  There was a limited number.  We took our

6     limited number.  We then filed a motion before summary

7     judgment saying, We're outside our limited number, but we

8     want to let you know that we think we need more witnesses,

9     and if summary judgment is denied or comes up with things

10    that we don't anticipate, which is exactly what happened,

11    objections to foundations of what we think are plainly

12    stipulate-able documents that we would want to take more

13    depositions.  There's an argument we waived that.  You'll

14    have to address that later with Mr. Shapiro on the April 19th,

15    the other decide-able argument.

16          THE COURT: Well - I'm sorry to interrupt.  Was

17    there ever a motion?

18          MR. SKLAREW: Yes.  We filed a motion to take

19    additional depositions there's a preserved motion that is

20    still pending to this day, and it's never been acted upon.

21    And we didn't ask for it to be acted upon before summary

22    judgment.  In fact, we asked that it not be acted upon.

23          THE COURT: I'm glad you said that because in

24    preparing for this argument, you know, we came across a list

25    of things that had been at one time outstanding and no one as

1    yet, and this is not a criticism, had told me there was

2    anything outstanding other than what I was currently

3    considering.  Are there other things outstanding besides that

4    motion of which you're aware?

5          MR. SKLAREW: I can't think of any right now, and I

6    can tell you why - there is?  I'm sorry, there is.  Should I

7    ask Mr. Shapiro?

8          THE COURT: No, just, we can - I'd like to address

9    that before we adjourn today, but -

10         MR. SKLAREW: I think that's a good idea.

11         THE COURT: Okay.

12         MR. SKLAREW: I think I can explain though, there is

13    a logical reason why you don't know about the outstanding

14    motion for deps.  It really was a contentative motion, it was

15    a preservative motion that said we only needed if this, this,

16    and this.  And we're really still not at that point because

17    we still don't need those depositions if we can get the

18    reasonable stipulations and the evidence in another way, for

19    at least the trial depositions that are foundational

20    evidence.  That won't alleviate my problem with transfer

21    still, and the reason it won't is no matter what you do with

22    depositions and no matter how much you try to anticipate,

23    when you take a trial deposition, meaning - and I mean a

24    trial deposition in a more - not so much a late trial

25    deposition that you know is a trial deposition, but when you

1  take a discovery deposition that turns out to be a trial

2  deposition because the witness is then unavailable, you

3  haven't got to the point where you're prepared for trail yet.

4  You can't anticipate everything you're going to want to ask

5  that witness at trial, and that's one of the reasons,

6  otherwise there would be no need for a rule of having a

7  transfer to a venue where witnesses were.  That's the reason

8  for the rule.  So an example here is, sure, we can use Mr.

9  Block's deposition that we have and maybe the Court will make

10  a ruling in April 19th in Mr. Shapiro's favor and the United

11  States' favor on the motion to allow the evidence that was

12  considered at summary judgment.  Maybe it won't.  Maybe it

13  will allow another trial deposition to get that evidence in

14  in another admissible form, but the bottom line is, if we

15  have Mr. Block at the trial, subpoenaed, things will come up

16  that the other witnesses testify that would trigger in our

17  minds things that we may want to ask him.  And just to give

18  an example, and I'm going way out of my order here, but this

19  is something that came up in all the recent briefing, there's

20  been a lot of hullabaloo in the briefing lately.  There's a

21  lot of accusations, and I've been responding to them about

22  what the IRS knew and when it knew it, which we think is

23  collateral to this.  You'll have to decide that as well on

24  April 19th, but one of the things that the other side is

25  saying is that our trial attorney in 1999 through 2001,

1    former trial attorney, John Cardone, essentially hoodwinked

2    the District Court in Connecticut when he argued that he

3    didn't know whether the IRS was served with the disclosure

4    statement in this case, and I have been making arguments

5    that, well, he was honest because there is no rule of

6    bankruptcy procedure that requires the IRS when it does not

7    have a claim to be served, and I have been honestly stating

8    in my briefs, and you can look at my briefs, that I don't

9    know the answer.  Simply he was making an honest argument and

10   there was nothing in the District Court's appellate record at

11   that time in Connecticut to say one way or the other.  So

12   about two weeks ago, I think it's more like three weeks ago,

13   took quote a long time, I asked the Clerk of this Court

14   through the U.S. Attorney's Office, actually the U.S.

15   Attorney's Office asked for me to get a copy of the

16   certificate of service to see who was served.  We had never

17   seen it before.  It had never been put in the record.  They

18   got it just a couple of days ago.  I filed something just the

19   other day abut it, acknowledging what it said, because I had

20   been mentioning it in my briefs, and it turns out the IRS was

21   served.  Not only were they served at the address on the

22   register that this Court has under Rule 5003, they were

23   served at two other gratuitous addresses and the U.S.

24   Attorney was served.  Four IRS addresses.  Well, I've got to

25   tell you, I want to ask Mr. Block at trial, Why did you put

1    four IRS addresses on the certificate of service?  That's

2    something that's come up recently.  It's the kind of thing

3    that - these are the kind of things that are going to come up

4    at trial, and I'd like to know how many other people in his

5    firm or himself puts four IRSs on a certificate of service

6    where there's no tax claim in any other Chapter 11 case.

7    Because I've been practicing bankruptcy for 23 years with the

8    Tax Division, and I've never seen it done.  Nobody puts four

9    IRS addresses on it unless you are wanting to set up

10   something that you are going to be able to argue later, the

11   IRS was served, and therefore, they failed to object.  That's

12   part of the scheme.

13          THE COURT: Okay, you're straying.  Let's get -

14          MR. SKLAREW:  So, all right, let me - I am

15   straying.  So, proximity of the witnesses, I think, favors

16   transfer on the availability of compulsory process.  I think

17   that's the most important factor.  There are other factors

18   that I also believe favor, and there's some factors that

19   normally are considered that don't apply.  We don't have

20   interrelationships among debtors here.  We have a one-case

21   type of situation.  But, I do want to point out that in

22   addition to the law firms - there's Mr. Flanigan, there's Mr.

23   Simmons, there's Mr. Block, there's Mr. Blumenthal, and

24   that's in addition to Mr. Block's law firm, I was saying, and

25   there's Mr. Goldman, all of whom are within the compulsory

1    process range, but part of that is do we need trial

2    depositions?  When I want to move onto there, it's not just

3    that, and it's not just the other preliminary I just made.

4    It's also that in the depositions, if you look at the

5    depositions in this case, and Mr. Shapiro's brought some,

6    just to give you an example of the size of some of the

7    depositions, there are hundreds, sometimes, of objections to

8    questions by the government.  These are the kinds of things

9    that are going to result - We're going to end up briefing

10   issues on whether certain questions in each deposition were

11   proper or weren't proper or get around a hearsay objection or

12   not.  Instead of the Court making these rulings at trial when

13   a counselor can stand up and say, Okay, I'll rephrase the

14   question or something, we're going to have all kinds of huge

15   briefs about question by question on hundreds of objections

16   to government questions, and some of these depositions, for

17   example, of Mr. Block, who could otherwise simply appear at

18   trial, and the Court can make the rulings as it goes along.

19   So, that's another point related to the concern here.  I've

20   already addressed the law of the case concern in the notion

21   of the conflicting decisions which - I went back and forth

22   between Judge Walsh and Judge Schiff, but there's another law

23   of the case concern that's very important here, and probably

24   really more central.  You now have before you two motions -

25   three motions, actually, related to this, but two really more

1   closely related than one, related to what the IRS knew.  The

2   law of the case from Connecticut in our position and the

3   other side has a different position of the interpretation,

4   but our position is that it flatly precludes any inquiry into

5   what the IRS did with the disclosure statement other than

6   what - with one exception, if they could prove the IRS

7   figured out the scheme and deliberately sat back and did

8   nothing, I suppose that would be relevant.  But what they've

9   made very clear in their papers is they want to make an

10  argument that the IRS didn't do due diligence and was

11  incompetent or - they used the word "negligent".  They used

12  the word "due diligence" over and over again, and our

13  position is that we have appellate law of the case that

14  basically says even if the IRS read the disclosure statement

15  cover to cover, every word, unless it was really thinking

16  about all these things and scrutinizing it and spinning out

17  these fantasies, it wouldn't have come up with this idea.

18  And in fact, I think if the Court looks through - and I've

19  done this a little bit, and admittedly, I might not be the

20  best researcher in the world, but if the Court tries to do

21  some West Law research, you won't find a case and a history

22  of the United States in which the IRS has ever objected and

23  so I don't know why it would know it would have to, to a plan

24  on the theory that a tax incurred in a future sale, two or

25  three years down the road, is not going to be payable because

1    somebody's getting an unfair security interest.  It doesn't

2    exist.  It's never been done.  So why wouldn't - that's sort

3    of a likelihood of that.  So we - and the Judge in the

4    Connecticut Court sort of pointed it out by pointing to the

5    declaratory judgment's act   that is the background law that

6    the IRS acts against, that it can't be bound by declaratory

7    judgment because that's prohibited, that the NI Injunction

8    Act which prohibits injunctions to collect tax in advance.

9    So, when you have that background that's our position.  Now

10   their position is that these memos that have now been - that

11   were discovered in 2002 and turned over to them in August of

12   2002, of which they never requested discovery on, they're

13   contending those memos have so opened up everything that you

14   should revisit the law of the case in Connecticut.  Well,

15   that's exactly the kind of reason why the case should be

16   transferred back because if you do that, and it opens up,

17   we're going to appeal that ruling.  I don't know whether

18   we're going to appeal it as an interlocutory writ of mandamus

19   because it defies the law of the case which is a ground for

20   mandamus, or whether we're going to wait till the end of the

21   case.

22          THE COURT: Well, are you arguing that this Court

23   would be more likely to violate the law of the case doctrine

24   than the Connecticut Court?

25          MR. SKLAREW: No, not at all.  My argument is that,

1    the reason for the law of the case doctrine and appellate

2    law, if they're not transferred after it appeals, is that it

3    should go back to the same appellate court if it has to be

4    appealed to interpret its own appellate ruling and whether or

5    not it was done.  And Judge Jacobs in this district has made

6    that clear in a sense indirectly in one of the appeals we

7    have pending before him.  We have an appeal pending before

8    him from the grant of attorney's fees to the debtor, again on

9    these conflict of interest grounds and stuff like that.

10            THE COURT: Judge Jacobs?

11            MR. SKLAREW: Excuse me?

12            THE COURT: Judge Jacobs?

13            MR. SKLAREW: Judge Jacobs.  Did I say - I said -

14    Judge Jordan?  Sorry.  Judge Jordan.  Sorry.

15            THE COURT: That's all right.

16            MR. SKLAREW: Judge Jordan is hearing an appeal and

17    has stayed the appeal pending the determination of a similar

18    appeal in Connecticut, including the appeal from conversion

19    in a cash collateral order and another fees order, and he has

20    stated when he deferred and delayed the appeal here is that

21    he believes that the paramount interest is of the Court up in

22    Connecticut where the estate is being administered to make

23    these kinds of rulings, and he'd be inclined to defer to

24    Judge Thompson.  So I think if we end up with a petition for

25    a writ of - you know, if you do disagree with us and think

1     these memos open everything up and we take a petition for

2     writ of mandamus or an appeal after the case is over and it

3     goes to Judge Jordan, I think he's going to have some

4     difficulty with the notion that he should be second-guessing

5     what Judge Thompson's opinion means and whether or not he

6     ruled on this type of thing.  So, then -

7          THE COURT: You know, and you may very well be right

8     about that, but in my time on the bench, I found it's usually

9     not a wise thing for a trial judge to anticipate or speculate

10    what an appellate court might do.  I leave entirely to the

11    role of the appellate court what it thinks it should do.

12         MR. SKLAREW: I think that's wise, Your Honor, but I

13    do think it's one of the reasons why we have these law of the

14    case rules, that after a case has been up on appeal and comes

15    back down is generally thought of as a bad time for a

16    transfer to the case.  So it shouldn't - my point is, it

17    shouldn't have been transferred here.  It's now causing those

18    very problems that were predictable and the cure for that is

19    to send it back because it was error to transfer it here, and

20    those errors are coming to light now when we finally get to

21    trial.  It's unfortunate they didn't come to light earlier.

22    I mean, my opponents have had these memos except for the one

23    we're refusing to produce which I believe is on a completely

24    different subject, and therefore, unrelated, but we've had

25    these memos in their possession since August of 2002, and

1    they've never said anything about them.  In fact, in early

2    2003, they made a motion in front of Judge Walsh to have

3    summary judgment based on the finality of the plan, and even

4    Judge Walsh kind of hinted in his opinion he wasn't sure that

5    was really different than what Judge Jacobs - excuse me, I'm

6    saying it again, and now I'm talking about Connecticut, so

7    it's Judge Thompson.

8         THE COURT: But now I know who you mean.

9         MR. SKLAREW: Now.  It's Judge Thompson, you know,

10   if it was different he wasn't sure it was different, but he

11   said, assuming it's different than *res judicata*, he denied

12   that and they never brought up those memos at that time when

13   - if you're going to talk about the finality of the plan, you

14   would think notice to the IRS of what the plan might do would

15   be highly relevant to that kind of an analysis, and it wasn't

16   even brought up.  So the fact that we're not here until now,

17   2006, and, you know, it's because the memos weren't even

18   begun to be introduced and they trickled in, by the way.  Two

19   memos were put into the summary judgment response.  Then more

20   memos have been put in more recently, and now, in the reply

21   brief to one of my briefs, they put in another set of

22   additional information that adds yet more flavor to the whole

23   thing, and so, they've trickled in.  But our position is, you

24   know, it's going to implicate the law of the case.  That's my

25   point on that so I won't belabor that further.  There is, I

1    think, you might find it secondary because you don't like to

2    second-guess what appellate courts are going to do, but I

3    think it would probably be useful, one benefit to a transfer

4    back to Connecticut is that the appeal here could also be

5    transferred back to Connecticut.

6         THE COURT: But see, it wouldn't be up to this Court

7    to transfer that.

8         MR. SKLAREW: Right, but I think this Court can take

9    notice that it would be possible, and it can certainly take

10   notice of what Judge Jordan said in deferring to the

11   Connecticut Court, which would solve his problem because then

12   the appeal would simply go back there because the case - the

13   underlying case would be back there.  So, I think the Court

14   can at least take that into consideration.  There's the - I

15   think, also, the plaintiff's main argument is essentially a

16   form of delay and that it would now that we're here, you

17   know, it would delay the final conclusion of the estate to

18   end this case by sending it back.  And my response to that is

19   partly a waiver argument.  They have now filed a large number

20   of briefs with these memos trickling in, insisting that they

21   are going to reopen - argue for reopening the law of the case

22   or an interpretation of the law of the case that's different,

23   we're going to be arguing what it means, whether or not if it

24   means what I say it means, they can overcome it with new

25   evidence that it is the kind of evidence that should overcome

 1    law of the case, and there's a body of law on that, and I

 2    think by doing that at this stage, this Court would be well

 3    within its discretion to simply say, Look, you guys who want

 4    to take these memos up, you want to bring these things up,

 5    take it to the Bankruptcy Court in Connecticut and make your

 6    arguments there, fine, let them decide whether or not to

 7    reopen that issue.  That's not for this Court to do.  They

 8    can decide whether to reopen the issue.  The government can

 9    decide whether to appeal it.  You can decide whether to

10    appeal it if it's denied, and go up to Judge Thompson and try

11    to argue what, you know, what really has changed if anything,

12    and I think that - that's not really a waiver argument

13    technically in a sense that they, you know, they haven't

14    actually waived that as a voluntary knowing waiver, but what

15    I'm suggesting is, it certainly would be something this Court

16    could have within its discretion and do in light of what

17    they've now opened up and brought about with these additional

18    issues that they're throwing in.  I think there's been an

19    allegation of economic administration, the estate would be

20    better down here.  I don't see that.  I don't think that's

21    the most important factor here, but we do have a situation

22    where perhaps, as my opponents have argued, the Boston folks,

23    maybe it's no more difficult for them to come down from

24    Boston to here than it is through Philadelphia, than it is to

25    go to Bridgeport, New York through La Guardia Airport or

1    something -

2         THE COURT: Nice easy ride on Amtrak.

3         MR. SKLAREW: Right, so, that's true.  There's an

4    Amtrak ride down from Boston in that direction so they could

5    do that.  But I think that that would make it cheaper, and I

6    certainly haven't heard the Indenture Trustee, whose counsel

7    is from Connecticut say that they're not going to charge the

8    government as part of their security interest, because they

9    have a security interest for all their attorney's fees which

10   is separate and not at issue in this case.  They're not

11   going to charge that against the race, any of their travel

12   costs or air fares or to get the attorneys here or the time

13   spent traveling.  I haven't heard any of that, so that's

14   going to bear on this case.  If we win, we're going to be

15   fighting them on their fees and whether they were reasonable,

16   and part of it's going to be, you know, did the case really

17   have to stay here, and probably if it does stay here, that's

18   probably not going to go over very well.  I'm not going to

19   win that argument, so I'm going to end up having to eat it,

20   essentially, and eat the money for that.  It's going to come

21   out of the public fist, and I think that's a relatively - not

22   the major factor as I've said, along with the witnesses and

23   stuff, but to the extent there is a factor, an economic

24   estate administration, it's certainly not going to be more

25   economical here than it is up there.  Will there be some

1    delay?  Maybe.  Our position is and Mr. Shapiro will get to

2    that on the second motion today, that it's not reasonable to

3    continue with a May 8th trial date at this point.  Obviously

4    the Court will have to decide that, and I'm not going to

5    argue that point right now, but that's certainly our position

6    and if you were to fix a trial date to 45 days after your

7    ruling on the last of the pretrial motions or 45 days after

8    the last deposition, either their depositions or the IRS or

9    our depositions of their witnesses, whichever, that there's

10   no knowing whether or not that a similar trial date could be

11   reached in Connecticut.  It might very well be and it's

12   speculative to know what that is because we don't even know

13   how long it's take you to decide those motions.

14         THE COURT: Well, actually, I offered to make a call

15   to the Connecticut Court, and your colleague indicated he

16   would not consent to that.

17         MR. SKLAREW: I saw that, Your Honor, and we don't

18   believe it's appropriate for it to hinge on that, because,

19   for one thing, as I said in my reply brief, if Judge Schiff

20   is tied up, we will not oppose a transfer to a new judge at

21   that point.  Once we are done with the depositions and we

22   have the rulings and we know what we're going to trial on and

23   particularly if we can get our witnesses in New York, we will

24   not oppose a motion to transfer to another judge if he simply

25   can't get to it fast enough and another judge can. We don't -

1          THE COURT: But the point is, and the point I

2     thought I made at the last hearing here was that as the

3     movant, I think, and while Mr. Shapiro disagreed, I think one

4     of the factors for me to consider in determining whether the

5     case should be transferred is how expeditiously the

6     transferee court would be able to get to trial, and that

7     burden rests on the movant here, I think.

8          MR. SKLAREW: All right, well, Your Honor, let me

9     make a statement on that then.  First of all, preliminarily,

10    I would not waive the position that that shouldn't be a

11    factor.  Secondly, since I do believe that the case should be

12    stayed no matter what until the appeal is done, I certainly

13    don't want to give that up, but to the extent the Court

14    disagrees with those two things and it's going to make

15    whether or not the Connecticut Court can finish a factor,

16    then I suppose we'd be willing to work with opposing counsel

17    on coming up with some kind of a query, that's a joint query,

18    on the record as opposed to a phone call, some kind of

19    inquiry to Judge Schiff as to, you know, if this and this,

20    what can you do, because I think - and I think that it would

21    be appropriate to defer that kind of an inquiry until you do

22    see what kind of, you know, whether you're going to be able

23    to rule on these other motions.  There's a chicken and egg

24    problem there and a cart before the horse problem because I'm

25    of course suggesting that the transfer motion comes first.

1          THE COURT: Well, it was at the government's request

2      that I schedule this first.

3          MR. SKLAREW: Yes, and I think it should be first

4      because I think that if we're going to have a transfer, it

5      would be better to have the Connecticut Court decide some of

6      the other motions, particularly, the motions having to do

7      with the law of the case in Connecticut.  If Your Honor feels

8      it would be more expeditious to determine like the expert

9      witness motions and get those done, and you think you can get

10     those done and that's part of the analysis of whether you can

11     then transfer it after that, I suppose it doesn't really -

12     I'm not - I don't think it matters as much to us as whether

13     or not those motions are decided by this Court or the one up

14     there.  We are adamant that the motions regarding the law of

15     the case should be decided by the Court in Connecticut

16     subject to appeal in Connecticut and then that's our official

17     position, and I won't vary from that.  I think it would be,

18     you know, it would be more appropriate if we're going to

19     transfer it to get it transferred sooner than later, and it

20     would be more appropriate, therefore, to simply let all the

21     motions be decided up there.  So, moving on to the - I guess

22     I wanted to speak to Mr. Shapiro for a moment just to see if

23     I concluded my presentation, or I could save anything I

24     forgot for rebuttal, but I only have one other point that I

25     wanted to make that I'm sure I want to make at this point

1   right now, and that is that there is a concern about

2   witnesses, and since there is a concern about witnesses, I do

3   want to put this on the record, although, we do not believe

4   that the IRS witnesses are relevant at all, and we reserve

5   the right to move to quash any trial subpoenas on that

6   ground.  The government does hereby waive the hundred mile

7   limit for any of the IRS attorneys who are in Washington,

8   D.C. or Delaware.  In other words, Washington, D.C. is within

9   a hundred miles of Delaware.  We will not argue in the

10  Connecticut Court that they cannot be subpoenaed to trial

11  because they are more than a hundred miles from the

12  Bridgeport courthouse, and I have their personal permission

13  from each one, I have Pamela Lou, Catherine Zuba, all the

14  people they said they want to depose, and I'm not sure what

15  depositions will be necessary anyway.  It seems to me that

16  discovery is closed, and they could just subpoena them to

17  trial and we could move to quash on grounds of relevance, and

18  that would be more appropriately handed in Connecticut in my

19  view, of course.  But we will not raise the hundred mile

20  limit for the attorney witnesses in respect to that.  Now, I

21  don't have the power to do that for Ms. Hennessy whose

22  declaration says she can't remember a thing about this

23  basically, and you can read her declaration, which I put in

24  with my papers that are going to be heard on April 19th.  She

25  is a low-level bankruptcy specialist.  That's lower than an

1    advisor in the local insolvency unit, and she gave a

2    declaration in 1998 that the other side is saying she was

3    deliberately misleading in them, consistent with all their

4    accusations and she gave another declaration now and tried to

5    explain what happened and try to disabuse the other side and

6    I just wanted to also let the Court know what was really

7    going on.  So, I don't - Since she's retired, I cannot make

8    that kind of a concession without talking to her and I

9    haven't had time, but I will say this, the government will

10   not - if the Court believes her testimony is necessary and

11   allowable and relevant, the government will not oppose a

12   trial deposition of her in Wilmington if she won't travel,

13   and I'll do my best to get her to travel, but if she won't,

14   if she refuses personally to travel because it is her

15   personal right as a retired IRS employee, to travel to

16   Connecticut, we will agree to have, to stop the trial if we

17   have to and have a trial deposition or even a video

18   deposition in - to video trial with the Judge if we have to

19   in Connecticut presiding.  I'm sure I can get her to agree to

20   that.  I don't see why she wouldn't do that.  We have had

21   situations where the government has had - I know this judge

22   from Boston always visits in New York, and when he does he

23   conducts the trial from Boston by video and all the witnesses

24   appear in the New York courthouse, but the judge is sitting

25   in Boston.  So, I don't see a problem with that with Ms.

1    Hennessy.  I think one way or another we can bridge that gap,

2    and I pledge to make sure that the hundred mile limit is not

3    the obstacle because I think it would be unfair for me to get

4    the case transferred and then go, Ha, ha, you can't get our

5    witnesses if they're relevant or something like that.  So

6    we're not going to do anything like that.  We do reserve the

7    argument, of course, there's no relevance and no need for

8    them.  So, that was the only other thing I wanted to make and

9    Mr. Shapiro is signaling to me that he'd like me to say one

10   other thing.  May I, Your Honor?

11          THE COURT: Why don't you just say what you have for

12   rebuttal.  Go ahead.

13          MR. SKLAREW: Okay, thank you, Your Honor.

14          THE COURT: All right.

15          MR. SKLAREW: It's important to make now so they can

16   respond to it?  With your permission, Your Honor?

17          THE COURT: Go ahead.

18          MR. SKLAREW: I need to defer to Mr. Shapiro as the

19   trial attorney on the substance of this matter since I've

20   been handling procedure things.  He disagrees with my

21   suggestion that we - it doesn't matter to us which court

22   decides the expert motions *in limine*.  He thinks the whole

23   thing should be decided up there.  Now, of course, if this

24   Court disagrees and feels that in the interest of speed it

25   has to go ahead and reach those and it reaches a decision

1  before the transfer, I guess that will be the way it goes,

2  but our official position is that the transfer should be

3  decided first.  That was the only ones I thought I said might

4  not matter.  So, all motions *in limine* I guess is what we're

5  talking about.

6         THE COURT: I'm going to decide the transfer motion

7  first, and if it goes, everything is going to go, and if it

8  stays, everything is going to stay.

9         MR. SKLAREW: Okay, thank you, Your Honor.

10        THE COURT: All right.  Let me hear from others.

11        MR. SCHWARTZ: Good afternoon, Your Honor.  Andrew

12  Schwartz for Media Communication Partners, Chestnut Street

13  Partners, Milk Street Partners, and TA Investors who are

14  collectively known as the Media defendants in the vernacular

15  of the case.  I actually want to start at the end with the

16  concession that Mr. Sklarew made to make available the IRS

17  witnesses in Bridgeport if the case were to be transferred.

18  In a sense, that's really just offering us ice in the winter.

19  It's already been established as the law of this case by

20  Judge Walsh that the parties need to make available the

21  witnesses they control for the trial.  So this is a non-

22  issue, and it's no concession at all.  Wherever the case is

23  tried, to the extent that you don't grant the motion *in*

24  *limine* to prevent these witnesses from testifying, the

25  government has to make them available, the ones who still

1    work for the government.  With regard to Ms. Hennessy, the

2    one as to whom Mr. Sklarew needed to equivocate, the

3    information we have as to her whereabouts before she retired

4    was that she was based in Wilmington.  So, if there's any

5    possible issue about her willingness to appear anywhere and

6    it is necessary to subpoena her, which I'm not conceding

7    because she may well be controlled by the government, but the

8    last available information we had is that she's here.  So,

9    this is really no concession at all, and I just wanted to

10   make that clear at the beginning.  To start where I intended,

11   when you view this motion in the context of the various other

12   motions the government recently has filed, there's no

13   mistaking that this is a delaying tactic, and if there was

14   any doubt about that, and I can't see how there would have

15   been, you heard Mr. Sklarew say, he doesn't want to see this

16   case go to trial until a motion to convert the case that was

17   filed in the year 2000, I believe, is resolved.  That motion

18   has been languishing.  It's not a matter of any great

19   interest to any of the courts as best we can tell, in which

20   it has been litigated.  The appeal concerning that which has

21   been consolidated with some of these cash collateral and fee

22   appeals that are really unrelated to the merits of this

23   dispute has been pending roughly for a year awaiting

24   argument.  There's no indication it's going to be scheduled

25   for argument.  Judge Thompson, the District Court to whom the

1   appeals have been assigned in Connecticut, as best we

2   understand it, has now presided over not one but two

3   mistrials in the Big Cendant litigation and there's reason to

4   think that this long languishing motion to convert is not on

5   the front burner in his court.  So, the suggestion that the

6   trial can't go forward until that gets resolved, is in effect

7   a request for indefinite delay beyond these rolling 45-day

8   periods that the government is asking for in the second

9   motion we're going to argue.  So, this is no mistaking that

10  what they're seeking fundamentally is delay, and there are a

11  variety of motions that have that objective as their common

12  purpose.  Now, the governing statute here establishes that a

13  motion like this should turn on the interests of justice and

14  the convenience of the parties, and with regard to the

15  interest of justice, we think it is quite critical to focus

16  on how this motion has come to be filed, the history of this

17  motion and how it is now pending before you, and what we find

18  most remarkable with regard to the interests of justice prong

19  of the governing statute is that on December 1st of 2005, the

20  government told Judge Walsh it had no objection to this case

21  being reassigned to another bankruptcy judge in the District

22  of Delaware.  And three weeks later, on December 23rd, 2005,

23  it specifically requested that this adversary proceeding be

24  reassigned by Judge Walsh to another bankruptcy judge in the

25  District of Delaware.  On neither of those occasions did the

1   government disclose that if Judge Walsh complied with its

2   request and reassigned the case to another bankruptcy judge

3   in this district, the government would turn around and file a

4   second motion to retransfer the case.

5        THE COURT: Neither did it waive any argument that

6   it had the right to do so.

7        MR. SCHWARTZ: Well, not expressly, but in our view

8   it certainly did impliedly because it is quite hard to

9   believe that Judge Walsh had the slightest inkling when he

10  reassigned the case saying it was important that it go to

11  trial sooner rather than later that he had any idea that if

12  he granted that request this motion would follow, and there's

13  no, I think, other way to state it then that the government

14  sandbagged Judge Walsh, and I say that after having given

15  very careful consideration to the papers that the government

16  has filed since the last time we were here and pre-argued

17  this motion to some extent.

18       THE COURT: Let me stop you there.  Even assuming

19  that's true, okay?  The government hasn't given up its right

20  to make this argument.  You may say it was an underhanded

21  tactic.  You may say other things, but we're here now on the

22  motion to transfer, and I think, as far as I can tell,

23  rightfully so, and there are standards I need to apply in

24  determining whether I should grant or deny the motion.  And

25  I'd rather focus on them.

1          MR. SCHWARTZ: That's fine.  My point, and I don't

2     want to lose sight of it, and I'll move on, is that the

3     standards as set forth in the statute are the interests of

4     justice.

5          THE COURT: Well, but there's been decisional law,

6     as you know and the parties have discussed it, specifically

7     enunciating standards that courts are to consider in

8     determining whether venue should be transferred.  You know,

9     PWS Holdings, Safety-Kleen, Enron, and the Third Circuit's

10    decision in <u>Heckinger</u> which talks about another venue

11    provision but with identical language to the bankruptcy venue

12    transfer provision and setting out twelve factors to look at.

13    So, these are the things I'd like to focus on.

14          MR. SCHWARTZ: That's fine.  As we read the cases,

15    the critical elements are timeliness and fairness.  These are

16    the open-ended criteria, but that is the teaching of the

17    cases as we read them.  As to timeliness, this is not the

18    first retransfer motion that's been filed in this case, and

19    it's otherwise not the first time that the transfer issue has

20    been litigated.  On the contrary, the government sought a

21    retransfer in 2001, and actually it opposed - In the first

22    instance it opposed the transfer here.  It lost.  I appealed

23    to Judge Thompson and sought interlocutory - an opportunity

24    to file an interlocutory appeal.  It did, lost again.  It got

25    here and sent to Judge Walsh notwithstanding that two judges

1    have said it should come here in Connecticut, we want you to

2    send it back.  It lost the third time.  All of this happened

3    four, four and a half years ago.  The government, with regard

4    to timeliness then sat on the recusal issue that has led to

5    this motion being filed, if you follow the chain of events,

6    for endless amount of time.  It was invited in 2001, twice,

7    by Judge Walsh to go ahead and file a recusal motion.  It did

8    not accept the invitation.

9         THE COURT: Well, this case didn't come to me, as I

10   understand it, because of Judge Walsh's having ruled on the

11   recusal motion.  It came to me as a result of a scheduling

12   conflict.

13        MR. SCHWARTZ: Well, I think it's fair to say it

14   came to you for a combination of reasons.

15        THE COURT: Well, let's put it this way, that's not

16   what the order transferring the case to me said, and I don't

17   intend to look behind it.

18        MR. SCHWARTZ: All right, that's fine.  If that's

19   the way the Court construes it, we will live with your

20   construction which frankly I think is more favorable to me

21   than other alternative constructions.  If it came here in

22   your view because it was necessary to have the trial start on

23   May 8th and Judge Walsh couldn't do it, it is abundantly clear

24   that if you transfer this case to Connecticut, it is not

25   starting anywhere near May 8th.  It is, I think, infer able as

1   we sit here at the end of March, especially having been

2   foreclosed from your attempting to call Judge Schiff up until

3   maybe now.  That a judge who's been sitting in the Bankruptcy

4   Court of the District of Connecticut as long as Judge Schiff

5   has is not going to easily be able to drop what he's doing

6   and set aside the time to deal with all the pre-trial motions

7   which are now queued up here for several weeks from now, and

8   then to conduct the trial for a three-week period which the

9   government says is not even enough time, mind you.  And I say

10  with the utmost respect to Your Honor, having recently

11  arrived in this district, and undoubtedly having other things

12  to manage, it's a safe assumption that you're in a better

13  position to proceed with that three-week period starting May

14  8th, because you've already known in advance that was the

15  case.  Much better chance that that would happen here than

16  with a judge who has no inkling that this may be arriving at

17  his doorstep.  So, again, the cases talk about timeliness.

18  Judge Walsh emphatically pointed to timeliness as the ground

19  for reassigning the matter to you.  We want this trial to go

20  forward on a timely basis just like Judge Walsh thought it

21  should and to keep the matter in perspective, this case was

22  filed in November of 1998.  We're now talking about a trial

23  in May of 2006.  That's an extraordinarily long time to get a

24  case to trial no matter what's happened in the meantime.  And

25  a transfer is going to have the effect almost inevitably of

1    occasional and substantial delay.  The other factor beyond

2    timeliness I want to address is the prejudice to the

3    defendants from any further delay.  The defendants have been

4    waiting for over seven long years, and we're finally on the

5    verge of a trial.  The defendants have had their

6    distributions held up for that period of time, and while they

7    have been dismissed as just being institutional investors who

8    can hang around indefinitely waiting for their money, that's

9    not an easy thing for a fund manager to explain with respect

10   to people who have made investments.  These are persons who

11   have due process rights.  These are persons and entities

12   whose money has been tied up, and who just want to have the

13   case resolved on a timely basis.  It would be greatly

14   prejudicial for there to be any additional delay before the

15   matter gets tried in this Court.  There's other reasons why

16   it would be prejudicial.  The cases don't make the

17   convenience of counsel necessarily a factor, but that's been

18   introduced into the mix of the arguments.  It would be

19   prejudicial to the defendants.  A number of us have made

20   investments in our local counsel here.  We've been very ably

21   served by them, and we'd have to go find new local counsel in

22   Connecticut and get them up to speed.  The government has

23   suggested, well, you could just use the Indenture Trustee's

24   counsel, that's a very convenient suggestion by the

25   government, but the parties' interest are not completely

1    aligned on the defendant's side of the table.  There are

2    different emphases in the defenses, and that's not just a

3    workable solution.  I'd rather come here, to be honest with

4    you, than to ride the Amtrak to Bridgeport, but that's sort

5    of a neutral factor.  What's not a neutral factor is that all

6    of the counsel, at least on the defendant's side of the

7    fence, have arranged their personal and professional lives -

8    and this is not a simple thing to do to be able to

9    participate here in a three-week trial on the road.  That

10   takes a lot of advance preparation.  You have to get coverage

11   for all of your other cases.  You have to get various other

12   things in line.  You've got to set aside a substantial amount

13   of time before the trial starts, is a considerable amount of

14   advanced preparation that goes into this type of activity,

15   and we have been acting in reliance on the fact that there

16   will be a trial in this Court and this district on May 8th,

17   since the time that trial date was set roughly eight months

18   ago.  Everybody has known it was going to be happening on May

19   8th, and the government on numerous occasions since the time

20   that trial was set has acquiesced in the trial going forward

21   on that date including as recently as February 13th, standing

22   here in front of Your Honor we all sat down and hammered out

23   a pretrial schedule that presupposed the trial was going

24   forward on May 8th.  Nothing has happened in the meantime that

25   would warrant any change in that schedule, and it would be

1    prejudicial to our side at this point, and there's no telling
2    when all the planets could be caused to realign perfectly so
3    that the witnesses for all the parties, the counsel, the
4    government, and the Court, in whichever jurisdiction, could
5    set aside the time necessary.  I want to talk, if I might,
6    about the witnesses who were more accessible if the case goes
7    to Connecticut, that's one of the issues that Mr. Sklarew
8    alluded to.  First of all, and I think you were on to this
9    with one of the questions you asked, hasn't the discovery
10   period ended.  It did end, for all intents and purposes, in
11   2004 and in the summer of 2004 the government told Judge
12   Walsh all the discovery was completed except for two minor
13   exceptions, one of which it chose not to pursue.  That was a
14   long time ago already.  And the government has known since
15   the case was transferred here in 2001 that it had to conduct
16   itself as though there was going to be a trial in this court,
17   and if there were witnesses located outside the subpoena
18   power, it was incumbent upon the government to take the
19   testimony of those witnesses the way anyone does in that
20   situation and the government did that.  It took 19 different
21   fact depositions, nearly double the allotment under the
22   Federal Rules, including depositions of some of the people it
23   now says could be hailed into court if the trial is conducted
24   in Bridgeport.  For example, Mr. Block and his law firm was
25   mentioned.  First of all his law firm, as I understand it,

1  has imploded, so I don't think there's going to be a

2  deposition of the former Bear Marks & Uppum (phonetical).

3  I'm not sure how Mr. Sklarew could manage that, but with

4  regard to Mr. Block, he's already been deposed twice.  So the

5  government's had two bites at that apple.  They want to take

6  a third.  That's one of the so-called trial deposition

7  motions, but that's a separate matter.  So, there's no

8  prejudice to the government.  They've already deposed Mr.

9  Block twice.  With regard to Mr. Goldman who is the Sidley

10  Austin lawyer who represented the Committee in a 1996 case.

11  There's a privilege issue there that Allstate has raised

12  which is not really my hunt, and I'll leave that to Allstate,

13  but if that were somehow overcome by the government, Mr.

14  Goldman is not a critical witness in the case.  He wasn't

15  even on the government's top 19 list of deponents.  Nor did

16  the government make an issue of Mr. Goldman's memoranda when

17  it first moved for summary judgment.  It was not until the

18  reply brief that it got around to that.  So, if this was so

19  central to the case, you would have expected it to be part of

20  a 166 page summary judgment presentation.  It wasn't.  Mr.

21  Flanigan has also been mentioned.  He was the debtor's CFO

22  and he was a director, as I understand it, in the mid to late

23  nineties.  He also was not on the top 19 list, and the

24  document that they apparently want to get authenticated

25  through Mr. Flanigan, again was not filed as part of the 166-

1    page original - it wasn't referenced, I should say, in the

2    original 166-page summary judgment motion.  They also talked

3    about Mr. Simmons as being located in New York.  He's been

4    deposed already.  They talked about Mr. Blumenthal, he's been

5    deposed already.  So the government knew that witnesses who

6    were located in or around New York City could not be

7    subpoenaed into Delaware for trial, and adjusted accordingly,

8    took the appropriate steps to take testimony knowing that the

9    trial was going to be here.  So, to show up now, four and a

10   half years after the case was transferred and say, Ah, it

11   would be more convenient because those witnesses are located

12   in Bridgeport.  It's already had its shot with many of them,

13   and it knew well enough to take its shot with others if it

14   thought it was important.  It didn't include them in the

15   first 19 deponents whose depositions they took, and then, the

16   government didn't file any supplemental motions for a long

17   period of time up until March 1st of this year saying they

18   need more discovery.  Discovery effectively closed July 2004.

19   For a long period of time they knew the case was going to be

20   tried here.  There was no suggestion it was going to go

21   anywhere else, and these people were not viewed as that

22   important that Mr. Shapiro was in here filing a motion then

23   specifically identifying these people and saying we want to

24   depose them.  And as for this phantom six deposition motion

25   that you asked Mr. Sklarew about, that motion asked for leave

1    to take depositions within some short period of time after

2    any dispositive motion was adjudicated.  The dispositive

3    motion was ruled on in July of '05, and there was no movement

4    by the government to revive that six depositions motion in

5    the immediate aftermath of that decision, and in fact, there

6    were other occasions on which the government failed to

7    mention it when inquiry was made by the Court as to whether

8    there was anything else that needed to be addressed.  So

9    that's only been revived here at the last minute as a

10   desperation measure to either derail the case or at least

11   delay it.  So, I think when you take a particularized look at

12   these various witnesses, the government's argument does not

13   hold water, and the government does bear the burden of proof

14   as the moving party seeking the transfer from this Court to

15   Delaware.  The last thing I'm gong to say, Your Honor, with

16   respect to this motion, again, is that I think this really is

17   very much material to the interests of justice.  This motion

18   arose by accident.  When you're being asked to do something

19   radical long into a case when the parties are on the eve of

20   trial and there is no denying it arose by happenstance.  If

21   Judge Walsh had not developed a scheduling conflict, the

22   government has admitted, it would not have been reminded that

23   it had earlier made some noise to the effect there was a

24   recusal issue, and it was the recusal issue that set in

25   motion the series of events that led to the case being

1    assigned to you, and now this opportunistic attempt to get it

2    re-transferred to Connecticut it is really a fluke.  By the

3    government's own admission, they had forgotten about the

4    issue, and they only got reminded of it when the scheduling

5    conflict arose.  To take the radical step of transferring a

6    case right on the eve of trial after all the investment

7    that's been made in this Court by the parties, by Judge

8    Walsh, and by you, we would think is unwarranted in these

9    circumstances.  Thank you.

10            THE COURT: Thank you.

11            MR. NEAL: Your Honor, Guy Neal, Sidley Austin LLP,

12    counsel for Allstate Insurance Company.  I'll be extremely

13    brief.  As Your Honor may have gleaned from reading the

14    papers, it is a frequent occurrence whereby we along with

15    Media Partners join in the briefing together where our

16    interests are aligned and to spare this Court for having to

17    read cumulative briefing that is not additive to the

18    discussion.  So I join fully in the brief, of course, which

19    is what we did also join fully in Mr. Schwartz' argument and

20    the points he raised.  There is one brief point that Mr.

21    Schwartz did not address that I believe Your Honor did at the

22    very outset in the opening argument of Mr. Sklarew, and that

23    is we consider it a fundamental issue of why this case was

24    transferred here in the first instance by Connecticut.  It

25    was not transferred here solely because of Judge Walsh.  We

1   maintain, and for that reason, the fact that Judge Walsh has

2   transferred this case to Your Honor does not obviate the need

3   for why this case should indeed be tried here.  This case,

4   again, to state what is perhaps very obvious, but it's worth

5   repeating on the record - This case arises out of the

6   findings of fact and conclusions of law of the United States

7   Bankruptcy Court for the District of Delaware in a confirmed

8   1996 plan of reorganization.  The facts and circumstances

9   that this Court is going to have to address, have to analyze,

10  have to look behind, I would even say, all arise out of facts

11  and circumstances, events, negotiations, oral arguments,

12  briefing, all made in this Bankruptcy Court back in 1996.

13  Predating the filing, perhaps, of a 1996 bankruptcy case but

14  certainly involving the facts, circumstances, and

15  negotiations during the case in this Bankruptcy Court leading

16  up to the approval of the disclosure statement, which we as

17  the defendants claim gives great weight and great

18  transparency to what in fact has happened in those

19  negotiations reflecting, in fact, every significant and major

20  deal point going after the disclosure statement through the

21  confirmed plan of reorganization.  So, Your Honor, the fact

22  that Judge Walsh is no longer sitting on this case, I would

23  submit, Your Honor, is not relevant to the inquiry.  Stated

24  differently and perhaps more clearly and hopefully better,

25  the fact that Judge Walsh no longer has the case does not

1    change the fact that this case is in the appropriate forum

2    for adjudication.  Thank you.

3           MS. POLLIO: Good afternoon, Your Honor.  Marie

4    Pollio of Shipman & Goodwin on behalf of U.S. Bank National

5    Association as Indenture Trustee.  The Indenture Trustee

6    agrees with the argument set forth by Attorney Schwartz and

7    the subsequent argument by Attorney Neal, and we will not -

8    we will attempt not to repeat those arguments here for Your

9    Honor.  We would like to make, however, some brief comments.

10   As Your Honor is aware, the Indenture Trustee is a fiduciary

11   for all of the holders of the junior subordinated secured

12   notes, and that includes the A-holders like the Media

13   defendants and Allstate and the B-holders which are the 15

14   percent of the notes held publicly by the Depository Trust

15   Company on behalf of beneficial holders.  The Indenture

16   Trustee came into existence in December of 1996 when it was

17   appointed as trustee for those secured notes pursuant to a

18   confirmed plan of reorganization in the Scott K. Bowler over

19   the ACE-Texas bankruptcy.  Most of the factual disputes that

20   will be heard by this Court relate to the events that

21   occurred before the Indenture Trustee came into existence.

22   Since the day this adversary proceeding was filed, the

23   Indenture Trustee has maintained that the fact that the

24   secured notes were issued out of a bankruptcy is a critical

25   factor that must be considered, and I believe that Attorney

1    Neal addressed this.  It is a critical factor that must be

2    considered when this case is heard on the merits.  It's the

3    Delaware Bankruptcy Court that confirmed that plan of

4    reorganization.  Because of that, Judge Schiff transferred

5    the case to the Delaware Bankruptcy Court.  We agree that

6    this is the appropriate forum to resolve this dispute.  Judge

7    Walsh recognized that it's in the parties' interests to

8    proceed to a trial sooner rather than later.  We agree.

9    There is a significant amount at stake in this case.  The

10   holders of the secured notes, the A-holders and the B-holders

11   have been waiting for more than seven years for this dispute

12   to be resolved.  All the defendants are ready to proceed to a

13   trial on the merits, and if this case were to be transferred

14   back to Connecticut we believe that it is inevitable that

15   delay will result.  And just to address the issue of the fact

16   that the counsel to the Indenture Trustee is located in

17   Connecticut, it is true, our offices are in Connecticut.  The

18   Indenture Trustee itself, however, is not in Connecticut.

19   And while it may be true, arguably, I guess, that Connecticut

20   is a more convenient forum for us, our law firm, Shipman &

21   Goodwin, it is not more convenient for our client, and it is

22   not more convenient for the interests for which our client is

23   a fiduciary.  The Indenture Trustee firmly believes that any

24   costs associated - excuse me, that the cost associated with

25   delay will far exceed any costs incurred by its counsel's

1    travel to Delaware.  The Trustee notes that on a number of

2    occasions the government has made it clear that it intends to

3    appeal any adverse rulings and adverse judgments.  With seven

4    years already behind us, we believe that the time to proceed

5    to a trial has now come.  In our view, further delay would be

6    an injustice.  In light of these considerations, we

7    respectfully request that Your Honor deny the government's

8    motions.  Thank you.

9          THE COURT: Thank you.

10         MR. QURESHI: Good afternoon, Your Honor.  Abid

11   Qureshi, Akin, Gump, Strauss, Hauer & Feld on behalf of the

12   debtor.  Your Honor, the debtor too filed a joinder to the

13   oppositions filed by the other defendants.  I will not

14   belabor the record by repeating any of that.  Suffice it to

15   say we wholeheartedly support the position that it is time

16   for this trial to proceed in this district on May 8th.  Your

17   Honor, I would just like to point out one fact, and that is,

18   that among the reasons that was raised by Mr. Sklarew to, in

19   his view, justify a transfer was the conversion motion that

20   is pending for apparently the only purpose of getting a

21   waiver of the attorney/client privilege.  Your Honor, I would

22   just like to remind the Court that in proceedings before

23   Judge Walsh, the debtor withheld from production certain

24   documents over which it claimed a privilege.  The government

25   moved to compel the production of those documents, of some of

 1   those documents that were withheld.  Judge Walsh granted the

 2   government's motion. The debtor was required to produce those

 3   documents that in our view were privileged, and the second

 4   deposition of Stanley Block, one of the debtor's former

 5   attorneys was for the expressed purpose of allowing the

 6   government to examine Mr. Block on documents that had

 7   previously been withheld and that were unavailable to the

 8   government at the time of the first deposition.  So, Your

 9   Honor, on that one point, it is entirely a red herring to

10   suggest that one justification for transfer here is to give

11   the government the benefit of a waiver of the privilege that

12   might result if the conversion motion is ruled upon prior to

13   trial.  Thank you, Your Honor.

14        THE COURT: Thank you.

15        MR. SKLAREW: I'll try to be brief, Your Honor.

16   Unfortunately, at least Mr. Schwartz' comments have a good

17   many errors of fact in them and misrepresentations of

18   procedural history which is typical of the briefs in this

19   case, unfortunately.  Reply briefs become very important by

20   the way in all of our motions, we believe.  The first thing

21   actually, I'm going to jump before I go to the errors and

22   take care of what Mr. Qureshi addressed for the debtor at the

23   very end.  I think it's the easiest one to deal with.  What

24   you didn't hear was a waiver of the privilege.  What you

25   didn't hear was they will turn all of their attorney/client

1  files over to us for history for us to go through and look at

2  them and see what we want and see what else is in there.

3  What you didn't hear is that if there is a trial at which

4  anyone shows up who's an attorney from the debtor, assuming

5  that might only happen if there's a transfer to Connecticut,

6  admittedly, since both of their attorneys are in New York,

7  you didn't hear that they will not assert the privilege in

8  respect to any questions asked of them.  You didn't hear that

9  they will not assert the privilege in respect to any

10  questions if there's a further trial deposition to

11  authenticate documents, and you certainly didn't hear that

12  the files would be turned over.  So, I think that's rather

13  telling in this case.  And I would invite Mr. Qureshi to at

14  least move that part of the issue by agreeing to take the -

15  all the former debtor's attorneys for the history of the

16  debtor and turn all their files over to us for us to look

17  through at our leisure and for us to decide what's relevant

18  and what we want to look at because that's what a Trustee

19  should do and we believe will do.  So, with respect to the

20  notion of - there's a related point also with Mr. Schwartz.

21  He mentioned that where the parties control witnesses, Judge

22  Walsh said that the witnesses should appear and that's his

23  rule, and I think I mooted that with respect to the IRS

24  witnesses in one way or another including Ms. Hennessy by

25  agreeing to make her available if necessary through a video

1    deposition or a trial deposition and have the others appear

2    in either place if they're deemed relevant, but what we don't

3    hear is that the persons that Mr. - excuse me, Judge Walsh

4    was referring to certain persons that Mr. Shapiro was talking

5    about at the time that he made that comment, and they were

6    the debtor's former attorneys.  That's what the comment was

7    made in, and notwithstanding that Judge Walsh seemed to think

8    at the time that he was going to be able to get the debtor's

9    former attorneys, like Mr. Block and Mr. Blumenthal, to

10   appear here, they, as far as we understand it, are not going

11   to appear here, and I suggest to Your Honor, it's a no small

12   part because the debtor's current counsel is not making them

13   appear here because they would have the power to do that, I

14   suspect, if they asked them to do it and pay their fare.  We

15   would pay their fare if they're our witnesses and we wanted

16   to subpoena them actually.  We would get them here for our

17   expense, obviously, subject to a motion for costs at the end

18   of trial.  And that I mean by routine, you know, witness fee

19   type costs.  I'm not talking about sanctions or anything like

20   that.  With respect to the second block deposition, that was

21   a required followup with respect to the objections that Mr. -

22   excuse me, the objections and attorney/client privilege and

23   Mr. Block's second deposition was specifically limited to

24   certain of those issues that were raised and now, there was a

25   negotiation as part of that to obtain a declaration from him

1    to avoid the need for a further deposition, and now, having

2    given us that declaration, they're now taking the position or

3    at least some of the defendants are taking the position that

4    Mr. Block may not have had personal knowledge of some of the

5    things he attested to.  One of the issues, for example, is a

6    date that appears on a document and how their computer system

7    re-dated it at a certain time, and whether that's the

8    accurate date, and now they're saying he doesn't have

9    personal knowledge of that so that's not admissible.  That's

10   one of the reasons Mr. Shapiro's asking to go back and get

11   further testimony to resolve that issue if we can't resolve

12   it through a stipulation or a finding.  So, with respect to

13   the - I do want to comment quickly on what's going on in

14   Connecticut.  There were two mistrials in the Cendant

15   litigation.  What was not commented here is that Judge

16   Thompson has reassigned that case.  He will not hear the

17   third trial.  There will be a third trial, is my

18   understanding, and he will not be hearing it so, that part of

19   his docket, which he did say was troubling him is gone, and

20   he did say before that trial that he expected to put this on

21   his front burner when that trial was over.  Now, that was

22   awhile ago, and we haven't made an inquiry since then, but

23   that is what he did say on the record at a status conference

24   the last time we had a status conference in front of him.

25   Additionally, while the appeal has been pending for a long

1    time, the motion to dismiss the appeal by the Indenture

2    Trustee and the debtor on a conversion was not resolved and

3    denied until March of 2005, so it's not like - and an appeal

4    is only fully briefed, therefore, on the merits of the appeal

5    after it was consolidated with the other appeal I believe in

6    April/May of 2005.  So, it hasn't really been fully briefed

7    and available that long.  There's been a suggestion that oral

8    argument hasn't been held.  I'm not sure we're going to get

9    oral argument, that doesn't always happen up there for a

10   bankruptcy appeals.  We might, and I'd certainly like to have

11   oral argument, but, you know, if Judge Thompson is ready to

12   decide the case without oral argument that may happen.  So,

13   with respect to, I guess, the more important thing is a

14   notion that we're doing this as some sort of tactical delay.

15   It's offensive.  It's insulting.  The United States of

16   America is here because it believes it has a right to have

17   those documents that a Trustee would give us.  The United

18   States of America has made this point and has been making it

19   for four years now as part of our motion to convert and the

20   arguments, and had the debtor not opposed the motion to

21   convert, saying they have no conflict of interest even though

22   their management holds 21 percent of the secured notes that

23   are issue here, personally, and will get $8 million if they

24   win, they have no conflict of interest.  If they hadn't made

25   that ridiculous argument, we would have had conversion four

1   years ago.  So the delay in that regard is their fault.  This

2   is an absurd situation, and we're gong to win conversion

3   eventually.  Judge Walsh once commented, as I said at the

4   beginning of the hearing, There can't be a reorganization

5   plan here.  Everyone agrees.  Why isn't this converted?, he

6   said, and he said he was going to make a telephone call to

7   Judge Schiff to find out why it wasn't converted, and then we

8   told him, well, actually, he denied conversion already, and

9   it's on appeal.  He wasn't aware of that at the time.  So,

10  and he denied conversion because of a ruling that you made,

11  Judge Walsh, which was that you let the debtor intervene and

12  somehow Judge Schiff thought that meant the law of the case

13  prevented conversion because that's what the debtors argued.

14  So, we're getting bounced back and forth in that regard.

15  With respect to - I do have to - This is an aside in light of

16  what Your Honor already said, but I do have to respond on the

17  record to this, is an argument that we sandbagged the Court,

18  while Your Honor has - I appreciate, has said that we're here

19  and we have to make the decision, it is not quite accurate of

20  what happened, they said.  It's not that we forgot about the

21  motion for recusal and then we're reminded of it when Judge

22  Walsh said that the case might have to be reassigned for a

23  timing issue.  What happened was, it's true that we admitted

24  we wouldn't have made the motion for recusal but for the

25  events that that triggered.  But what happened was, was that

1    Judge Walsh then when we noted that, when he said the case

2    might have to be reassigned that that would moot one of our -

3    one of the arguments for transfer.  Judge Walsh then said, in

4    the words of my opponents, fish or cut bait, and it meant to

5    us, and we had a pow-wow in the Department of Justice that we

6    were going to be hit with an argument that if we didn't now

7    move to recuse, we were going to forever have waived the

8    argument that it shouldn't have been transferred here to get

9    it to Judge Walsh.  And so we had to make the motion to

10   preserve it for appeal.  Having made the motion, admittedly,

11   I got involved, again because Mr. Shapiro was too busy with

12   other things for trial, and I went back and read what had

13   happened in 1996 and what Judge Walsh said he, you know, what

14   was completely contradictory to what he said was obvious

15   later in 2002.  So that led one thing to another and we

16   decided that coupled with new Third Circuit law required us

17   to have - to make a motion to recuse at this point or cut

18   bait, essentially, and we did not want to cut bait.  Having

19   made the motion we're here, and I appreciate the Court does

20   not want to look behind the order as a scheduling conflict.

21   I would only note that I probably am closer to Mr. Schwartz'

22   view on this because I think that Judge Walsh also did say in

23   his letter that it would avoid an issue for appeal.  So that

24   has a little tinge of a possibility, at least, avoiding a

25   recusal issue there.  So, but in terms of delay, it wouldn't

1    have saved anything because we were prepared to take an

2    interlocutory appeal on the recusal issue if he wasn't

3    recused at that point, if he wasn't off the case the one way

4    or another.  We made that clear on the record.  That was

5    something we had decided to go for all the way in light of

6    Third Circuit case law essentially favoring interlocutory

7    review once you do make a recusal motion and it's denied, you

8    really should take it up right away and not wait for the case

9    to go to trial.  With respect to the fund manager argument

10   that I believe was made first by Mr. Schwartz and then

11   seconded on behalf of the Indenture Trustee, the 85 percent

12   of the notes, as I understand it, are held by the

13   institutional investors who are now parties to this

14   proceeding.  Fifteen percent of the junior notes were given

15   to the former public bondholders, a higher level class in the

16   prior case, and those are the ones who may be held by some

17   fund managers for others and things like that.  I think it's

18   important to point out that that 15 percent, they recovered

19   their entire public bond investment with a huge amount of

20   interest on the senior secured PIC notes that were given as a

21   security interest in the prior bankruptcy when the assets

22   were sold.  This is completely gravy.  Now, admittedly, if

23   they're entitled to this, they'll eventually get it, but they

24   have 100 percent of their investment with 16 percent

25   interest.  All the interest they got was caught up to the

1    1996 bankruptcy and then it was elevated from I believe 12

2    percent or maybe 10 percent to 16 percent for the next two

3    years, and they got all that as well.  And all we're trying

4    to stop is to get them the additional gravy 15 percent of the

5    bonds that they extracted from the non-public bondholders as

6    part of the deal in 1996.  I believe in light of that -

7        THE COURT: It strikes me that that's an argument

8    that - As it strikes me, delay hurts everybody including the

9    taxpayers -

10       MR. SKLAREW: Yes.

11       THE COURT:  - that you're representing here, so

12    from both sides' standpoint, expeditious resolution seems to

13    me on that issue to be indicated.

14       MR. SKLAREW: I agree, Your Honor, and I won't

15    belabor that.  The fact is that our - the reasons we do

16    things is because we believe that we are entitled to them for

17    a fairer trial.  We believe that it's appropriate.  We're not

18    doing things for hidden motives.  I don't know what we would

19    gain from hidden motives of delay.

20       THE COURT: Look, in terms of the merits of the

21    underlying dispute, the government has taken, in my view

22    anyway, a principled stand, and I'm assuming that's why it's

23    fighting as vigorously as it is on all the fronts on which

24    it's fighting, and I, you know, that's what I assume the

25    motive is.

1          MR. SKLAREW: Right.  And there was a statement

2    about the witnesses, and how some of these witnesses we've

3    deposed.  We've deposed Mr. Block twice.  What's not caught

4    in all of that argument is that, as I said earlier, things

5    come up at trial and things come up in further discovery that

6    you want to go back and ask your witnesses questions at a

7    trial.  That is one of the reasons why it's better to have

8    witnesses than to have trial depositions of witnesses who you

9    simply took the deposition of in discovery before you knew

10   all the facts.  You normally want to first learn the facts,

11   get your discovery, and then go to trial and question your

12   witnesses when you've learned more things, and that did

13   happen with a lot of things including Mr. Goldman.  There's

14   one absolutely untrue statement that Mr. Schwartz made about

15   the summary judgment history with respect to Mr. Goldman and

16   all the documents.  He said that we only introduced those in

17   our reply brief.  In fact, we had not introduced them in our

18   case in chief because they weren't relevant to our case in

19   chief, but what happened is, not Media Communications, but

20   the Indenture Trustee filed a cross-motion for summary

21   judgment against us and took the position that the public

22   bondholders they represent, that 15 percent again, are

23   totally innocent people who don't know anything about this.

24   Mr. Goldman's testimony is relevant because he represented

25   those people and our position is what he represented.  He was

1    the Unsecured Creditors Committee and the Committee

2    represented it so indirectly he represented the public

3    bondholders.  So we came back with not a reply brief, it was

4    a reply, we filed a brief in reply that was never allowed

5    because it was 74 pages.  It was considered too long to Media

6    Com and Allstate, but we also filed a within page limit

7    response brief to the cross-motion that referred to the

8    Goldman documents at that time.  And no one in reply to that

9    said that those documents were unavailable, and not allowed,

10   and we couldn't bring that stuff in.  So, that's why we're

11   here where we are today.

12        THE COURT: Well, let me ask you this question: The

13   government's obviously taking the position that if I ruled on

14   one or more of the motions in such a way that I permitted

15   additional depositions of these persons to be taken, you're

16   telling me that you could reach them through process even

17   though they couldn't be compelled to come to Wilmington for

18   trial; correct?

19        MR. SKLAREW: We could reach them through process by

20   taking their depositions in New York.

21        THE COURT: Okay.  Now, could I also order that

22   their trial testimony be taken by live video?  Why couldn't

23   they testify at trial by video?

24        MR. SKLAREW: I don't know the answer to that, Your

25   Honor, possibly.  I, you know, there is a - it strikes me on

1  the one hand as logical, and maybe you could.  On the other

2  hand, it also strikes me as sort of the rules haven't changed

3  to come up with the modern times essentially, and you'd be

4  changing the rules essentially because that would be a basis

5  to essentially have anybody testify at any trial anywhere in

6  the country as long as it was done by video.

7          THE COURT: Well -

8          MR. SKLAREW: Maybe we should do that.

9          THE COURT: It just strikes me that there's not a

10  functional difference in ordering a trial deposition and in

11  arranging or permitting testimony at trial by video.  Now,

12  maybe somebody could argue to the contrary.  But let's say,

13  just for sake of argument, that I couldn't do that.  I could

14  still order a trial deposition, and I could sit here while

15  it's conducted by video and deal with any objections as they

16  arise then.  It would save the laborious exercise which I've

17  been through of having to go through a deposition transcript,

18  trial deposition transcript at trial, and then one by one

19  address the objections, you know, weeks or months after that

20  occurred.  It would not, however, provide the government the

21  advantage that you're arguing having the witness at trial,

22  and that would be to kind of go with the flow depending upon

23  how other evidence develops.

24          MR. SKLAREW: It would be a second-best solution and

25  I urge you to consider it if the case is not transferred.  In

1    fact, I was going to make - and I asked Mr. Shapiro this, and

2    he agreed I should make the suggestion at least, I hope the

3    Court doesn't find it offensive, but I did mention that judge

4    in Boston who tried a case by video as a visiting judge in

5    New York, so one other solution here is to arrange to have

6    the case be transferred, and if Judge Schiff cannot hear it,

7    maybe Your Honor can ask to hear it as a visiting judge in

8    Connecticut by video.

9        THE COURT: Like I said, if this case goes, it goes

10   and all with it.  If it stays -

11       MR. SKLAREW: I hope I haven't offended the Court

12   with that, Your Honor.  I'm just trying to come up with

13   another solution.  Go, get it tried, you know, whenever it

14   can be reasonably tried, and we don't think it's May 8th

15   anyway, but assuming it's 45 days thereafter or a couple of

16   months thereafter, and Judge Schiff can't do it, I'm trying

17   to come up with ways to do it, and since you mentioned video

18   that seemed to me a possible alternative solution.  So, the

19   point I was making before this colloquy started though was

20   that I believe that in negotiating for the witnesses and how

21   we would get these declarations, it was clear to us at least,

22   from our perspective that these gentlemen, notwithstanding

23   they are the former attorneys of Scott Cable, control these

24   witnesses, and if they really wanted to move this issue, just

25   like they're asking us to bring the IRS witnesses, they could

1    volunteer to have these people come here at trial, and I

2    think this Court should consider that when it considers the

3    motion to transfer, but they haven't done that.  If they want

4    to do that, I invite them to do it, but if they haven't done

5    that and they're not going to bring these people here to

6    trial, I think you would be well within your discretion to

7    consider that as part of the elements here of whether or not

8    this case should be transferred to Connecticut.  There was a

9    mention of the burden of proof, that it's our burden to

10   prove, obviously there's no real evidentiary issues here, but

11   I guess in some sense it's our burden to persuade the Court

12   that we're entitled to the transfer in the interest of

13   justice, and I just want to put on the record, I disagree

14   with that.  This is essentially a motion to reconsider the

15   transfer here in the first place because it no longer has the

16   reason it was transferred here.

17          THE COURT: No, no.  I cannot view it that way.

18   That decision was made and then upheld on appeal, and I will

19   not consider it in that vein.

20          MR. SKLAREW: Well, I understand, Your Honor, but

21   that's how we have to preserve that position, that it's

22   essentially their burden to prove that it should stay here at

23   this point.

24          THE COURT: I disagree.  You are the moving party.

25   You've asked the Court to move it elsewhere.  You carry the

1    burden and -

2           MR. SKLAREW: All right, I won't belabor that.  I

3    don't think it's a burden of proof though, Your Honor,

4    because I don't think there's evidentiary issues here.  It's

5    maybe a burden of persuading you that the interests of

6    justice require a transfer to the extent that we are the

7    movant, and that is the correct decision.

8           THE COURT: I understand your position.

9           MR. SKLAREW: I'll move on to Mr. Neal's comments.

10   There was a comment, and I think this is seconded by Ms.

11   Pollio, I'm not sure I'm pronouncing that correctly, for the

12   Indenture Trustee, and that was the argument that this case

13   really always belonged in Delaware irrespective of -

14   regardless of whether or not Judge Walsh is the presiding

15   trier of fact because the events leading up to it arose in

16   Delaware and the plan was confirmed in Delaware.  First of

17   all, the government disagrees that that's why it was really

18   transferred here, but putting that aside, I don't think

19   that's really accurate, and I don't think it's a valid point

20   to the extent it is accurate for the following reasons:

21   First, the companies that were in bankruptcy here were not

22   headquartered in Delaware.  They are transactions and what

23   they did leading up to the bankruptcy in some of the

24   documents that we have did not happen in Delaware, at least

25   prior to the filing of the petition.  I don't know why this

```
 1    venue was selected.  I assume it was an appropriate venue.

 2    Maybe one of the corporations among the various consolidated

 3    entities I assume was incorporated here.  I don't believe

 4    they all were.  The operating company was not headquartered

 5    here or doing its operations here, and so the events that

 6    took place, the negotiations with the informal Creditors

 7    Committee, did not - prior to the bankruptcy and some of the

 8    things that we're relying upon to assert equitable

 9    subordination did not occur in Delaware.  To the extent the

10    plan was approved in Delaware, we have the record.  The

11    record as here in this Court is a written record.  If Judge

12    Walsh is not doing it, the case, he's certainly not going to,

13    and it would have been in my view impermissible for him to

14    try to remember what he remembered from 1996 anyway.  So we

15    have a cold, dry written record that is in official documents

16    of a U.S. Court.  They can be looked at in any other U.S.

17    Court.  They are admissible in any other U.S. Court as public

18    records.  They're on the record.  They are transcripts.  They

19    are filings.  They are transcripts of the arguments that

20    they're talking about, and I find it somewhat odd that

21    there's a suggestion - I'm not sure where this is going, and

22    I'd have the Court ask, Why?  Let's analyze their argument.

23    Why would that make it more important to have the case here,

24    and I submit to you, the only answer you could come up with

25    is an improper one.  That somehow they're hoping because it's
```

1   the Delaware Court, that somehow there will be an

2   embarrassment factor, and the Delaware Court would rather not

3   come up with a ruling saying, Oh, we approved a tax avoidance

4   scheme or we - I don't think that's really true, by the way,

5   and I'm not making that argument, but I think there is - The

6   fact that they're essentially making that argument, and

7   that's essentially what this boils down to, is really a

8   reason to transfer it, to get out of that argument and to get

9   out of that position.  It's not appropriate.  It's related a

10  little bit to why we moved to recuse Judge Walsh, although

11  that was much more central to Judge Walsh himself and the

12  fact that he was at the prior hearings and participated in

13  1996.  But, you know, there's a notion here that somehow this

14  Court is the right court to do it because if it made a

15  mistake it's the only one that should correct that mistake.

16  And I find that to be exactly a wrong argument, and I don't

17  think it's appropriate for Your Honor to consider that as a

18  reason not to transfer the case.

19          THE COURT: And I wouldn't, and by the same token, I

20  don't give any weight to the government's argument that this

21  Court would be reluctant to correct the mistake that it

22  alleges Judge Walsh may have made.  So I don't think that

23  argument cuts either way.

24          MR. SKLAREW: Okay, Your Honor.  I think we're on

25  the same wavelength there because I don't really - I don't

1    really mean to say the Court would be reluctant to correct a

2    mistake.  There are - other things could come up in the case

3    that it looks like so far are not, so I won't go there, but

4    the - Mr. Shapiro does point out there is this element and

5    this is what was lying behind the government's concerns it

6    had pointed out.  We have on the record taken the position

7    that what essentially happened was the Court was duped in

8    this case, and while I appreciate Your Honor maybe

9    essentially - would probably, and I can anticipate would

10    probably say, well, you have no hesitation in admitting that

11    the Court was duped if the Court was duped.  It seems to be

12    that the extent that there is any effect there, it counts in

13    favor of having a different court do it.  There was - There

14    is a suggestion now that I'm reminded of a case called <u>Kodeks</u>

15    (phonetical) in the First Circuit where basically that

16    position is outlined, that it's not appropriate to transfer a

17    case to a judge or to a court that already has ruled on the

18    issue with a different party so that a new party is getting a

19    crack at essentially rearguing what the Court has already

20    decided against another party that was in a similarly

21    situated situation.  So, I think that to the extent that it's

22    First Circuit law in that it supports our argument that it

23    would be more appropriate not to have this Court - I don't

24    view that a major factor here because I -

25            THE COURT: As I said, I don't view it as any factor

1    here because I would be deciding this issue on whatever

2    record is made before me.  I don't know how much of a record

3    Judge Walsh had before him when he entered the confirmation

4    order.  Maybe none.  Maybe some.  Maybe a lot, but I make my

5    decisions based upon the record that's made before me,

6    period.

7            MR. SKLAREW: I understand, Your Honor.  If I can

8    just have one moment to look at my notes?

9            THE COURT: Certainly.

10            MR. SKLAREW: Ah, there is one point that I didn't

11    address which is a timeliness issue.  Mr. Schwartz emphasized

12    that he thought the two most important things, and I think

13    we've probably beat into the ground a second one which is

14    fairness, that the two most important things were timeliness

15    and fairness.  And in that regard, I don't believe that in

16    light of the fact that we did move to retransfer the case as

17    soon as it was transferred here and preserve that that any

18    timeliness can be held against us in terms of dilatoriness

19    until Judge Walsh did transfer the case, because that's

20    essentially where we're saying there's no longer the ground

21    that there was.  So to the extent that we still may have the

22    burden of proving what's in the interest of justice, and many

23    things have changed, not just that, there is at least that

24    element that I think starts the clock ruling again.  It was

25    not incumbent upon us to make another retransfer motion

1  sometime between 2001 when we lost and 2005 before the

2  principal ground that was ruled to get the case here was

3  removed.

4          THE COURT: I might ultimately decide against you,

5  but - and one of the reasons might be that we've come so far

6  down the road it's just time to get to trial, but I don't

7  consider your motion untimely.

8          MR. SKLAREW: Right.  With respect to the

9  convenience, one other point, of local counsel for the

10  parties having to come up to speed.  I think it's clear to

11  this Court that the people who are really trying this case

12  and involved in the briefs are the out-of-state people.

13  Local counsel are acting as facilitators locally, and to the

14  extent that there's been a suggestion that counsel for the

15  Indenture Trustee can't do that because they don't have

16  perfectly the same interests, I think the Court ought to

17  reject that.  The Indenture Trustee has repeatedly argued

18  that it has a fiduciary duty to all the note holders.

19          THE COURT: See, here's the problem with that

20  argument that the government's making, and when you look at

21  the factors that the Court should consider in determining

22  whether to grant or deny such a motion, that's really the

23  defendants saying collectively and uniformly that to the

24  extent there's some inconvenience and we might be better

25  served in the other forum, we don't care.  We need to -

1   They've in effect waived any argument that they might be able

2   to make in favor of moving this case elsewhere.

3        MR. SKLAREW: But I'm the one wanting to move it

4   elsewhere, and they're saying that it's inconvenient for them

5   to move it to Connecticut because they might have to hire new

6   local counsel.  So what I'm really addressing is that they

7   have a fiduciary with a local attorney who can at least ferry

8   papers to the Court for them.

9        THE COURT: I understand, but it triggered in my

10  mind the overall - I think the greater issue with respect to

11  convenience generally to the defendants and their counsel.

12  They're basically saying, you know, we're here, let's stay

13  here.  That's one factor.

14       MR. SKLAREW: Right.  Your Honor, with that, I

15  believe I'm through, Your Honor.  Thank you very much.

16       THE COURT: Okay.  Thank you.  All right.  I'm going

17  to take a short break, like ten minutes, and then I intend to

18  give the parties my ruling on the motion.

19       (Whereupon at 3:36 p.m. a recess was taken in the

20  hearing in this matter.)

21       (Whereupon at 3:50 p.m. the hearing in this matter

22  reconvened and the following proceedings were had:)

23       THE CLERK: All rise.

24       THE COURT: All right.  On consideration of the

25  motion and all the written submissions and argument today,

1    I'm prepared to rule on the government's motion to retransfer

2    this adversary matter, and I think that it's not all that

3    unusual, but the matter's been well argued, and I don't think

4    either party left a stone unturned.  So, in terms of the

5    completeness of the arguments and the record, I think you

6    have about as good a record as I could have.  For the reasons

7    that follow, I intend to deny the motion.  Here's why: I look

8    at the factors provided by the Third Circuit in its decision

9    Jamar Evers (phonetical) vs. State Farm, it's reported at 55

10   F.3rd, 873, relied upon by the Delaware Bankruptcy Court in

11   its Heckinger decision reported at 296 Bankruptcy Reporter

12   323.  Other decisions, like PWS Holding reported at 1998

13   Bankruptcy Lexis 549, and Safety-Kleen, 2001 Bankruptcy Lexis

14   1296, the Enron decision which the parties discussed in their

15   papers, all pretty much agree on what the factors are.  Now,

16   the four main factors that most courts talk about are - that

17   courts should consider are proximity of the court to

18   interested parties, location of the debtor's assets,

19   efficient and economic administration of the estate, and the

20   relative economic harm to the debtor and other interested

21   parties.  The parties here focused largely on the efficient

22   and economic administration of the estate.  The Third Circuit

23   in its Jamar decision expanded those really to twelve

24   factors.  And in running through those, I look at them this

25   way: Number one, the court should consider the plaintiff's

 1    choice of forum.  That here weighs in favor of the plaintiff,

 2    the movant.  But most of the other factors are either of no

 3    applicability to this situation or weigh in favor of the

 4    defendants.  The defendants have indicated that this is their

 5    form of preference.  The claim arose - well, it arose here

 6    basically coming out of what the government claims was an

 7    improperly, among other things, confirmed plan.  No one's

 8    argued about the location of books and records or anything of

 9    that nature.  The defendants say it's more convenient for

10    them here.  Frankly, I don't see it as inconvenient for the

11    plaintiff to be here.  There's a possible issue with respect

12    to convenience of the witnesses or availability of the

13    witnesses, but there may be some way for the Court to

14    ameliorate that.  I won't consider that until the next round

15    of arguments on the various pretrial motions.  Other factors,

16    like enforce ability of the judgment, public policies of the

17    fora, familiarity of the judge with applicable state law,

18    local interest in deciding local controversies, I don't think

19    those are really factors here.  Despite the argument that the

20    plaintiff makes here about the law of the case, I don't view

21    that as something of really any weight in favor of the

22    plaintiff here.  When I come down to practical considerations

23    that would make the trial easy, expeditious, or inexpensive,

24    or the relative administrative difficulty in the two fora

25    regarding the respective court's dockets, I think that weighs

1   in favor of trying the case here.  So, for all of those

2   reasons, I am going to deny the motion.  Now, I haven't

3   looked at the forms of order that the defendants have

4   provided, if any, with respect to their responses, but I'd

5   specifically like counsel to confer and submit a form of

6   order that doesn't repeat the ruling that I've made on the

7   record today, but that refers to the motion having been

8   denied for the reasons that I stated on the record today.

9   So, if you'd submit that under certification, I would

10  appreciate it.  Let's turn now to the government's next

11  motion.

12          MR. SHAPIRO: Good afternoon, Your Honor.  My name

13  is Alan Shapiro, and I represent the United States.

14  Defendants' objections to a motion for continuance of the

15  trial all boiled down basically to their desire to deprive

16  the government of the use of evidence.  Their objections are

17  based on manipulating facts and history of the case and

18  ascribing reasons and motives for the government's actions

19  that are simply not true.  And, as you review the papers, you

20  will ultimately see that for the fact to the extent that you

21  have not already read all of the applicable papers.  And I

22  think, really, this point is best emphasized by my opponent.

23  This point being that what's important is that all the

24  evidence come into the record.  At a hearing in this case on

25  July 16th, 2004, Andrew Schwartz, counsel for the Media

1   Communications Group made the following statement in

2   opposition to a government motion: "Let me sum up, Your

3   Honor, by saying this is an important case, as you know.  It

4   involves a lot of money.  The trial should not be a game of

5   gotcha, and that's really what this motion is.  It's supposed

6   to be a search for the truth.  I know that's trite, but it's

7   true."  That's what Mr. Schwartz said.  In addition, what Mr.

8   Schwartz was really arguing at that time, was that the fact

9   that it took a few extra months, and I'm quoting again, I

10  guess from the record here, at Docket No. 260: "The fact that

11  it took a few extra months to communicate the facts, to find

12  the facts from the expert and communicate them to Mr.

13  Shapiro. . ." and then there were some more information on

14  the record, picks up, "that should not have any impact on the

15  presentation of evidence at the trial of this case, and it

16  certainly shouldn't prejudice our clients."   And by the same

17  token, it certainly shouldn't prejudice the United States to

18  have a small amount of additional time to make sure that it

19  can put in all of the evidence so that, as Mr. Schwartz says,

20  This process can be a search for the truth, and that is

21  really what we're really talking about here.  Now, I'm just a

22  lowly line attorney, trial attorney.  I'm at the bottom of

23  the totem poll, and my superiors, they may decide that it's

24  necessary or appropriate to make a lot of procedural motions,

25  some of which, quite frankly, I'm just not smart enough to

1    fully appreciate, but as a trial attorney, what I worry

2    about, what I concern myself with is, making sure that I have

3    the evidence and that I have the ability to use the evidence,

4    and that I have enough time to prepare my case for trial so

5    that my client gets a fair shake at the trial, and that's

6    really what most of my efforts have been aimed at.  My

7    briefs, which I believe earlier today, Judge Carey, that you

8    said that you've read all of the papers including the reply

9    papers.

10          THE COURT: I've read the papers.

11          MR. SHAPIRO: And my briefs lay out what the

12   government contends is an accurate account of the history and

13   procedure leading up to today's motion for continuance, as

14   well as probably some other motions as well.

15          THE COURT: Mr. Shapiro, isn't the heart of your

16   argument though, because so many motions have now been filed,

17   and until I know what it is, is going to happen as a result

18   of the next series of motions to be decided, I just can't

19   prepare for trial on time.  But what if I were to at the

20   conclusion of the next argument simply say, there's just no

21   more discovery.  We're going to trial.  I mean, what if any

22   additional time would the government need then?

23          MR. SHAPIRO: Well, first of all, we're not asking

24   for discovery, and I recognize that the Court has not taken

25   up our motion papers which are to be argued on April 19th, but

1    we already have the evidence.  I'm not going to go into great

2    lengths on another motion that has yet to be set up for

3    hearing or for which a hearing has not yet come about.

4         THE COURT: Well, all the pretrial motions that we

5    were supposed to have filed were, according to the terms of

6    my scheduling order, were already to have been filed.  I

7    mean, is there something new that needs to be anticipated?

8         MR. SHAPIRO: We did file our motions for the

9    additional depositions or rulings that we requested in a

10   timely manner, as we've indicated in our papers.

11        THE COURT: Right.  So there's everything in the way

12   of pretrial motion that was to have been filed, has been

13   filed.  There's nothing new I should be expecting; is there?

14        MR. SHAPIRO: I'm not sure I understand what you

15   mean by "new".  I mean, we filed all of the motions *in*

16   *limine*.  We filed them on time, and some of them will be

17   heard on April 19th, and I guess I'm not understanding your

18   question.

19        THE COURT: Well, my question is, if as a result of

20   those hearings I don't permit any trial depositions, I don't

21   permit any additional pretrial activity, what need, if any,

22   would there still be for the government to seek a delay in

23   the commencement of trial?

24        MR. SHAPIRO: Are you referring to just the

25   government's motions or also the defendant's motions *in*

1    *limine*?

2            THE COURT: Anybody's motions.  I want to make it -

3    I guess I'm trying to frame the question in such a way that

4    gets to the heart of the issue, and that is, if as a result

5    of that series of - that hearing on the series of motions,

6    whoever filed the motion, I determine there's nothing further

7    in the way of pretrial activity to be permitted other than to

8    say the filing of the joint pretrial statement, would there

9    still be a need for the government to have a delay in the

10   commencement of trial?

11           MR. SHAPIRO: Yes.

12           THE COURT: Tell me why.

13           MR. SHAPIRO: Because if you look at the order as it

14   presently exists, I am not going to be able to work on trial

15   preparation until April 8th at a minimum.   That is the date

16   that we're supposed to - either April 7th or April 8th, we're

17   supposed to exchange joint pretrial orders or each party's

18   version or half of their joint pretrial order with the other,

19   and I'm going to be committed to working on that, just as I

20   was committed to working on all of these pretrial motions,

21   which I'll discuss in a moment, right on through.  So, I

22   haven't had the time that I needed to start preparing

23   examinations of witnesses, opening arguments, other

24   evidentiary issues for trial and other things that I'll get

25   to with the rest of my presentation during the months of

1    January through March as I expected to, and I have reasons

2    for that which I'll provide.  In addition, there were the

3    additional witnesses that we would have to prepare for

4    testifying from the IRS assuming that you deny certain

5    motions that you've just laid out in your hypothetical, that

6    otherwise wouldn't be anticipated.  You're talking about a

7    30-day period of time.  That's what it boils down to, April

8    8th to May 8th, and what I'm going to describe in greater

9    detail in my presentation is why that 30-day period of time

10   is inadequate for the government to prepare for trial, even

11   if you denied all of the motions.

12          THE COURT: Okay, please proceed.

13          MR. SHAPIRO: All right, as I segued off from when I

14   was addressing your question, I'm not going to attempt to

15   waste your time or even to test my memory of everything that

16   I wrote more carefully when I was writing my original motion

17   papers.

18          THE COURT: No need to.

19          MR. SHAPIRO: Pardon?  Thank you.  But, essentially,

20   since this trial date was set, I believe on July 22nd, 2005,

21   when Judge Walsh issued his ruling from the bench on cross-

22   motions for summary judgment, we had discussion about a trial

23   date, and I told the Judge, I've got a trial that is set up

24   for November.  It's in a case that I've worked on for several

25   years, and he specifically built that into that trial date.

1    There was a tacit understanding from everybody that was in

2    that courtroom at the time that I was going to be preparing

3    for, trying, and then writing, you know, post-trial briefs in

4    that other case.  And I did exactly what I told the Judge.

5    In November I tried the other case.  Of course I spent a lot

6    of time preparing for it, and there was, you know, plenty of

7    work there, and afterwards, I had post-trial findings of fact

8    and conclusions of law that had to be prepared.  Those had to

9    be filed in January, and then after that, by order of the

10   Court, we were to file reply briefs to each other's - each

11   party's proposed findings of fact and conclusions of law, and

12   those were due in February.  Now, as I'm sure the Court's

13   well aware, on November 28th, 2005, while I was in the midst

14   of writing the proposed findings of fact and conclusions of

15   law in the other case and working on other cases on my

16   docket, the Judge set up a conference call, Judge Walsh set

17   up a conference call, and he wanted to talk about his

18   scheduling conflict and the possibility of transferring the

19   case to another judge here in Delaware.  And, as part of that

20   process, he also scheduled another status conference, I

21   believe on December 5th, and at that December 5th status

22   conference, I specifically discussed the fact that the

23   government would need some trial depositions, and we

24   discussed Mr. Goldman's deposition and I believe Mr. Block's

25   deposition, and, you know, it was clear to Judge Walsh that

1   we needed some additional discovery - sorry, I worded that

2   poorly.  We needed some additional depositions not in the

3   nature of discovery but depositions so that we would have no

4   disputes which we were now beginning to find that there was

5   going to be disputes from our opponents about the foundation

6   and other bases for moving into the record documents and

7   testimony that we already had, documents like the Goldman

8   documents, which you'll get to when you're on one of the

9   motions that's coming up for hearing on April 19th.  And, the

10   Judge listened to us, and Judge Walsh said, Well, I'm

11   inclined to give you those additional depositions.  And at

12   that point, Mr. Neal, who represents Allstate said, We would

13   like an opportunity to work out some trial stipulations that

14   would obviate the need for the trial depositions that the

15   government's talking about.  I believe I may have even -

16   before Mr. Neal made his statement, may have even suggested

17   the possibility of trial stipulations in lieu of taking

18   additional trial depositions.  The point of all of this is,

19   we wanted to make sure that there would not be any disputes

20   about the foundation for being able to move documents we

21   consider relevant and testimony that we obtained in

22   declarations that we consider relevant into the record.  We

23   were not trying to deprive the defendants of their right to

24   argue that the documents are irrelevant or that maybe they

25   contain what would be double hearsay or that they could even

1    perhaps find other evidence to contradict what was in the

2    evidence the government wants to move in.  But it wasn't a

3    request for discovery in the nature of trying to find

4    information, find documents, or find facts that we didn't

5    already know of.  And quite frankly, this was information in

6    evidence that all of the defendants knew of too because we

7    had produced it to them years ago.  Now, after that

8    conference broke up, I spent time putting together a very

9    significant proposed trial stipulation package with all the

10   underlying declarations and documents that related to the

11   things we were trying to establish, and we mailed it to all

12   of our opposing counsel, and we asked them to consider

13   entering into these trial stipulations based on Mr. Neal's

14   representations, and then we, you know, waited for the

15   response, and we got back in January, I believe, a response

16   that was from Media Communications which essentially agreed

17   to stipulate to public documents.  I apologize, I left out a

18   detail.  In addition to sending off in that package of

19   proposed trial stipulations and the documents and things that

20   relate to them, things having to do with witnesses who would

21   otherwise have to be subjected to a trial deposition, we also

22   put in a bunch of public documents.  They were copies of

23   public documents.  We wanted to essentially avoid a situation

24   where somebody would say that's not an accurate copy.  Things

25   that you could basically have a court take public notice of

1    or we could get a certified copy if there was some sort of

2    objection or documents that the opponents had given us during

3    discovery so there really wasn't any anticipated likelihood

4    of them, from our perspective, objecting to them.  The Media

5    Communications Group wrote back saying, you know, we'll

6    stipulate to a lot of these things that I, personally, am

7    referencing as so-called public documents or otherwise

8    unobjectionable documents, but to categorically refuse to

9    enter into any trial stipulations that would obviate the need

10   for the trial depositions the government had been talking

11   about.  So even though I was busy working on this other post-

12   trial filings from another case and other matters,

13   nevertheless I went ahead and took some more time, and I

14   wrote them all a letter on February 1st, 2006, and I sent it

15   to all defendants' counsel, and I, quite frankly, was very

16   candid about the fact that I thought Media Communications'

17   response was unacceptable and that what really should happen

18   is all the defendants should get together and they should

19   give me a unified response instead of piecemeal responses so

20   that they are all consistent instead of, you know, one side

21   is agreeing to one stipulation and another one is not,

22   especially since some of the stipulations were built on top

23   of other stipulations that one party may have previously

24   agreed to.  And, in response to all of this, I got back

25   letters from all of the defense counsel, all consistently

1  refusing to enter into any stipulation that had anything to

2  do with eliminating the need for a trial deposition the

3  government would otherwise need.  So, that cost me months.

4  That's what happened.  I waited to try to resolve the

5  situation with them.  I spent time, considerable amounts of

6  time trying to put forth what I considered to be a reasonable

7  proposal, and but for Mr. Neal's representations on December

8  5th, 2005, having then heard there was going to be some

9  objections and having seen some other indications of that in

10  the summary judgment process, I went ahead - I'm sorry, I

11  would have in December of January simply filed a motion for

12  trial depositions at that time.  I could have done it.

13  Alternatively, I also had the right, I believe, you can

14  differ with me because you're the Judge, I had the right to

15  treat my motion for trial depositions much like just another

16  type of motion *in limine*.  It is a preliminary motion, and in

17  my mind, would have been timely filed when this Court set the

18  deadline for filing motions *in limine*.  So, we went ahead and

19  got involved - at that point, we're up to early March.  March

20  1st was the deadline for filing the preliminary or pretrial

21  type motions, motions *in limine*.  Just before then, I believe

22  in the middle of February, you had a status conference.  Your

23  first one on this case, and the parties agreed to a one-week

24  extension of that motion deadline for filing pretrial

25  motions.  So, that's how it became March 1st, and what we

 1  ended up having at that point was, far more preliminary

 2  motions in far greater depth and detail and raising so many

 3  more issues than, quite frankly, I ever could have

 4  anticipated.  I want to point something out, Your Honor.  I

 5  have in front of me here a box that contains numerous files

 6  which the Court can see is almost about a foot thick.  These

 7  are printouts from the Pacer docket of all of the motions

 8  that were filed on March 1st and everything else that was

 9  filed thereafter.  I acknowledge that there may be some other

10  materials that were filed after March 1st that my secretary

11  put in here that are on the Pacer docket and aren't

12  technically a motion *in limine*.  But I also point out that

13  the attachments for many of these documents are not in here,

14  and if you would have included those, you'd probably be well

15  over a foot of paper.  There's probably, from my mind, my

16  memory about eight motions *in limine*, some filed by the

17  government and some filed by the defendants' counsel.  So the

18  Court can take notice or the record can reflect that I'm

19  showing the Court a box of many manila folders filled with

20  filings, and if the Court wants to check them or defense

21  counsel wants to check them, they're welcome to do so, but

22  the bottom line is, I could not have possibly anticipated

23  receiving the level and depth and amount of arguments.  These

24  briefs each page of them raises a couple of issues, and I

25  want to point something else out as well -

1          THE COURT: One moment.  I'm looking at the docket

2    and with the exception of *pro hac vice* motion, it's pretty

3    much what you say.

4          MR. SHAPIRO: All right.  Well, this brings us to

5    the point that I was trying to get to a little bit earlier

6    where I felt that during January through March, in addition

7    to writing a couple of motions *in limine* for the government,

8    which I thought I would have been able to have done during

9    that period of time and still have time left over to start

10   preparing witness examinations and things of that nature,

11   things got a lot more convoluted than that, and they

12   continued that way into March, well into March.  One of the

13   biggest problems that I had that sucked up so much of my time

14   was this repeated process of having to not only make my

15   motions or respond to arguments but having to identify dozens

16   if not tens and tens and twenties and twenties of

17   misrepresentations on the record from my opposing counsels'

18   briefs which made the whole brief writing process much

19   longer, much more time consuming, and of course, it papered

20   the Court, but I want to point something out on this regard.

21   I want to give you three very brief examples, because I think

22   this is very important to understanding how I spent my time

23   and why I say I need this extension.  For example, one of the

24   arguments that I had to respond to from my opposing counsel

25   is, and I'm reading from their brief.  I'm reading from

1    Docket No. 384, page 5, quote, "It can hardly be said then

2    that the Veridis (phonetical) report, which is based on the

3    unverified opinions of an individual with little experience

4    in Chapter 11 reorganizations and who traded junk bonds for

5    the long defunct Drexel, Burnham, Lambert during most of the

6    eighties enjoyed widespread acceptance within the financial

7    community.  Well, they made a similar argument to this in

8    responding - during summary judgment to one of my summary

9    judgment briefs, and we wrote back in our reply brief and

10   with our filings that in fact what should have been obvious

11   all along was, Mr. Veridis, the government's financial expert

12   in this case, has considerable experience in Chapter 11 and

13   restructuring work, and more importantly, despite the fact

14   they're trying to paint him as some sort of Michael Milken

15   illegal bond trader of junk bonds, the reality is that we

16   also filed during the summary judgment proceedings, the

17   declaration of George Veridis on this very point where he

18   pointed out in Docket No. 314, Attachment 3, that he was

19   never involved in the trading of bonds, period.  So, not only

20   did they make up a statement out of whole cloth to try to

21   tarnish the reputation of our expert witness without having a

22   single basis to do so, in fact, if they had looked at his

23   report, which they had for years, it shows all of his

24   experience as a restructurer and a Chapter 11 practitioner,

25   and if they looked at the transcript at pages 27 through 52

1    of Mr. Veridis deposition, which they took, they would have

2    seen all of his experience doing Chapter 11 work and

3    restructuring work.  They would have known that if they

4    didn't realize what they were writing was total falsehoods at

5    the time they were writing their reply brief in the summary

6    judgment process, to write it again in response to a motion

7    during these preliminary matters, these preliminary motions,

8    is just, you know, words fail me now to come up with some

9    polite way of saying what I think about what they've done.

10   But it forced me to have to respond to it.  In addition, they

11   make the claim in one of their other briefs that Chanin

12   Capital documents were not authenticated, and Chanin Capital

13   was a party that was the financial advisor for Scott Cable in

14   the 1996 bankruptcy, and we pointed out that we got a

15   subpoena served on them.  They produced documents.  They

16   produced the documents with a declaration from Carlos

17   Martinez, and officer of that company, authenticating them as

18   business records.  We produced those documents with the

19   declaration to our opponents in the past.  We filed these

20   documents during the summary judgment process.  We filed the

21   Carlos Martinez declaration during the summary judgment

22   process.  For them to go ahead and write in a brief that we

23   submitted - that these documents are unauthenticated, is

24   just, you know, beyond the pale.  And finally, I will note

25   that in their same brief, the defendants also argue that the

 1    government, quote, "failed to apprise the Court that Mr.

 2    Sansone is a colleague of one of the government's expert

 3    witnesses, George Veridis.  I believe this is Docket No. 369,

 4    page 19.  And that was one of their most recent March

 5    preliminary motions or motions *in limine*, and yet, Mr.

 6    Sansone, who did give a declaration to the government, which

 7    the government did file in support of its summary judgment

 8    motion, stated right in his declaration which was filed in

 9    the summary judgment process, the following two paragraphs:

10    "Since February of 1999, I have been employed by Alvarez and

11    Marsal, 101 East 52nd Street, 6th Floor, New York, New York,

12    10022, a firm that provides specialized debtor management and

13    advisory services to troubled companies and their

14    stakeholders.  Since December 2002, I have served as a

15    managing director of the firm."  Paragraph (4) of the same

16    declaration: "George Veridis is an employee of Alvarez and

17    Marsal, Inc.  Mr. Veridis did not participate in or provide

18    any work or services for or relating to Integrated Health

19    Services, Inc."  So, they had a declaration that had been in

20    the summary judgment process in response to some of their

21    arguments during the summary judgment process.  And yet,

22    despite the fact that this document, this sworn testimony is

23    in the record, we see again in March that they are making

24    these types of arguments all over again, even though they

25    know they're not true.  Now, I could go on, literally, I

1    could spend eight hours today or probably more going through

2    all the different papers they filed pointing out to you all

3    the different misrepresentations that they've made, but it

4    takes a lot of time when you have to protect your client by

5    protecting the record to identify when you're writing these

6    motions and responses and oppositions, that something they've

7    said is not true.  Here's what the truth is.  And here's why

8    it does or doesn't have an effect on whatever the real

9    substantive argument or procedural or evidentiary argument is

10   that you were originally talking about.  And, in addition to

11   that, aside from just outright false statements, I also had

12   to deal repeatedly with the defendants' briefs leaving out

13   important information, such as beginning a quote and then

14   leaving dot, dot, dot, and leaving off what was another part

15   of the quote, which would show that the reason for which they

16   cited their partial snippet of language from the document

17   they were quoting, in fact, does not support the thing that

18   they are citing it for, and then I have to go through the

19   process of explaining all of this to the Court.  There is

20   just countless examples of them taking things out of context,

21   attributing motives and reasons to the government that they

22   just made up as some fantasy in their own mind or some way to

23   try to show that the government has done something deceitful

24   when they don't have anything to show it, and the evidence

25   itself doesn't prove it.  But I can't just leave those things

1    out there.  I can't just hope that the Court will read every

2    shred of evidence and every scrap of paper in this case just

3    like I've had to do, and realize the falseness of what

4    they've done.  I have a duty to my client, to make a record

5    to protect it, and I've had to do that repeatedly and it's

6    sucked up a tremendous amount of time, and I'm not going to

7    go down the road of trying right now, today, to do what I've

8    accused the defendants of doing, what the record proves that

9    they've done, but I will just nicely say that it seemed to me

10   that since I'm the only trial attorney really working on this

11   case for the government and the defendants have an army of

12   attorneys from six or more law firms working on this case.

13   It was likely that it was going to take a lot of my time,

14   that I could have otherwise used for trial preparation, to

15   have to respond to all of this while they can have all their

16   associates writing all the stuff out and let their partners

17   go get ready for trial.

18           THE COURT: Mr. Shapiro, in the status conference

19   that we had last month, you made some reference to this in

20   greater detail, and I will tell you, one reaction I have to

21   that is, it's the government that picked the fight here, and

22   I'm not saying it's not without merit, and I'm not saying you

23   might not eventually prevail, but when the government picks a

24   fight and then for whatever reason doesn't staff it

25   sufficiently, and I'm not saying that you're telling me that,

1    but I'm telling you that's part of what I'm hearing, I can't,

2    you know, I can't look to anyone other than the government to

3    blame for that circumstance.  Now, that having been said, as

4    I told you the last time, I understand what the circumstances

5    are, and I understand why these things happen and how they

6    happen, and that there may be absolutely nothing that you can

7    do about it, and I will take that into consideration, I

8    assure you, in disposing of this motion and the other motions

9    that are coming up for hearing in April, but I want to convey

10   the thought that it's the government that initiated this

11   adversary, and with that comes a responsibility to staff its

12   pursuit appropriately.

13            MR. SHAPIRO: Can I respond to that?

14            THE COURT: Certainly.

15            MR. SHAPIRO: I'll do it very briefly.  Number one,

16   even if your point was based on true facts, meaning that we

17   didn't staff the case properly, which I will dispute with

18   you.  Number 2, it doesn't make acceptable what the

19   defendants' counsel have done.

20            THE COURT: And I don't mean to condone any behavior

21   that might have been inappropriate.

22            MR. SHAPIRO: And now to address the other point.

23   If we didn't have to spend so much time responding to all of

24   this stuff, as well as motions which we believe are

25   frivolous, but nevertheless are enormously dense, and I had

1    to spend a lot of time writing.  You saw the box of

2    documents.  Let's assume that both parties, in good faith,

3    filed all of their motions when you get to the ones that are

4    due on April 19th as well as the ones you've already seen, and

5    you noted, both parties well argued and well briefed what

6    they wrote, you can see that they simply were time consuming,

7    even without any suggestion of bad faith by anybody.

8              THE COURT: Well, there's -

9              MR. SHAPIRO: And I had to participate in the ones

10   that Mr. Sklarew has argued this morning.

11             THE COURT: And there's a lot at stake for both

12   sides here, and I'm assuming that's why so much energy is

13   being expended.

14             MR. SHAPIRO: All right.  Now, if I could go to the

15   next point, if that's all right with Your Honor?

16             THE COURT: Yes, please proceed.

17             MR. SHAPIRO: I think to finish up this one section

18   here that what I'm counting on, what I expect is that the

19   Court will not necessarily just take my word for what I've

20   said here today.  What I expect is that the Court is going to

21   read not only the cases that are cited, but the actual bits

22   of evidence that are throughout all the briefs, not only

23   those today but the ones coming up on April 19th, where there

24   is far more citation to the evidence in the record, in order

25   to give us rulings on these preliminary motions because I

1    submit that the government spent a considerable amount of

2    time, both to address the things I suggested earlier, as well

3    as to make its arguments and respond to what I will call non-

4    illegitimate arguments or non-offensive arguments that our

5    opponents made but nevertheless are without merit, to

6    continue to show the Court specific pieces of evidence from

7    the record, frequently from the summary judgment record, that

8    support our points.  We don't feel that our motions can be

9    adequately addressed unless the Court does all of those

10    things.  So, that's as much as I'm going to say on that

11    point, and I'll move onto the next point.

12            THE COURT: Well, let me make this comment: I

13    understand the government's position.  I don't bargain with

14    parties about which part of the record I look at or don't

15    look at or which cases I read or don't read.  I do in every

16    case what I think is appropriate, sometimes a little more and

17    never a little less.

18            MR. SHAPIRO: Okay, now I want to move onto another

19    topic in support of my motion for continuance of trial, and

20    that has to do with just the very nature of this case.

21    There's a tremendous amount of facts.  It's a very detail-

22    oriented case.  As I guess you picked up in your short time

23    on this case, there's contentions about virtually everything

24    that anybody says or anything anybody even reads from

25    documents that already exist.  So, that places a great burden

1    on the parties, in particular, from my perspective, the

2    government, so that it will be able to word questions and get

3    answers that are very specific so that there won't be all of

4    these contentions or we can minimize them but, at a minimum,

5    the government will be able to support all of the different

6    factual things it has to provide the Court for the many

7    different factual criteria that the large bodies of

8    substantive case law require for determination in this case.

9    Even if we put aside the debt versus equity issue where the

10    government's contending there's lots of factors and our

11    opponents are contending that there's something totally

12    different involved in the test, and just look at equitable

13    subordination.  I think, I'm not going too far out on a limb

14    here when I would say that probably every attorney in this

15    courtroom today would acknowledge that equitable

16    subordination, at least in this case, is a very fact-

17    intensive matter.  It's going to require a tremendous large

18    evidentiary amount of information be put into the record by

19    the government and probably by the defendants also.  And when

20    you look at the deposition transcripts that each party's

21    counsel have to use to get ready for trial, and I brought two

22    examples for you - I'm showing these to my opposing counsel.

23    May I approach the bench?

24            THE COURT: Yes.

25            MR. SHAPIRO: I don't expect you to read them all

1   today.

2           THE COURT: I assure you, I will not, today.   Thank

3   you.

4           MR. SHAPIRO: All right, let the record reflect that

5   what I've done is I've given Judge Carey a copy of the

6   Armstrong deposition, the Bruce Armstrong deposition

7   transcript together with the exhibits and the Richard Dapple

8   (phonetical) deposition transcript together with exhibits.

9   As you can see, Your Honor, these depositions were of Mr.

10  Armstrong being a CEO and president of the management company

11  for Scott Cable and then later I guess for the company

12  itself, and Richard Dopel being the key or chief witness for

13  Allstate, the investment manager over its investment in Scott

14  Cable during the relevant period of time, and in looking at

15  those deposition transcripts some of which are double sided

16  and four pages to one, you're looking at literally at

17  hundreds of pages of complex questions and answers with many,

18  many exhibits, and the exhibits being very complex, lengthy

19  financial documents, Cable Television documents, tax related

20  documents, bankruptcy and restructuring related documents,

21  financial advisor type documents, stock in, you know,

22  corporate securities oriented documents, and lots of

23  questions that had to do with a great many technical things

24  and probably hundreds of objections on those pages as well.

25  And that's jut an example of the type of deposition

1    transcripts that I and I'm assuming my opponents will have to

2    spend time going through the process that a trial attorney

3    does, converting what's on those pages into an examination of

4    questions to ask of the witnesses at trial, and this is not a

5    car accident case.  It's not a simple contract claim case.

6    It's a very sophisticated piece of commercial litigation

7    involving witnesses who are also very sophisticated people

8    who have a personal financial stake like Mr. Armstrong, Mr.

9    Simmons, Mr. Churchill, who have an actual personal financial

10   stake on the outcome of this case, and I'm not making any

11   disparaging remarks about them, but as you can imagine,

12   intelligent people will not be the easiest person to question

13   on the stand, just like they weren't the easiest people to

14   question during the depositions.  They're not just giving

15   up, you know, their case when they have all of this riding on

16   it.

17          THE COURT: And my guess is the experts will be even

18   more difficult.

19          MR. SHAPIRO: Good guess.  So, they've mentioned 19

20   depositions that have already been taken or something to that

21   effect.  It takes time.  You can't just sit down and blow

22   through an examination outlined in a day.  At least I can't.

23   I'll be candid with you.  Maybe they'll stand up here and

24   say, Oh, I can get ready for the trial in a week.  Well,

25   that's great, you know, then they're super-attorney or

1    something.  I'm not.

2              THE COURT: If I could have done that, I'd probably

3    still be in practice.

4              MR. SHAPIRO: But you did mention this thing about

5    experts.  Their expert is a guy named Ronald Greenspan.  I

6    deposed him for two days.  Deposition transcript for Mr.

7    Greenspan, which I did not bring with me today, is 600-some

8    pages long.  He's an attorney and a financial advisor, and

9    you can bet, as you just indicated earlier, he was not an

10   easy witness to question.  He's literally a professional

11   witness.  He's testified as an expert witness numerous times

12   as you will hear when we eventually try this case at some

13   point in time.  But the point of all of this is, given that

14   there's so many complicated financial calculations and

15   spreadsheets and arguments about the facts that existed in

16   the cable television industry at various points in time in

17   the past that all interrelate and the effect and impact of

18   different capital improvements that would be made to a

19   company and its cashflow and its income projections in the

20   future, and what different financial companies thought of as

21   advisors for the Unsecured Creditors Committee or for Scott

22   Cable, this isn't something that you just sit down again for

23   a day and get ready for.  Now I told you I had a 30-day

24   window, assuming that I can really finish up my share of the

25   pretrial order on April 7th or 8th, and to address the point

1   that you got to me earlier in my presentation to the Court,

2   Mr. Shapiro, if I denied every single one of these motions *in*

3   *limine* or whatever we want to characterize them as, you know,

4   would you still need a continuance?  Well, the answer is,

5   absolutely yes.  Now, I'm not asking for a year.  I'm not

6   asking for something like that.  I just want a reasonable

7   period of time so that when all the dust settles from the

8   decisions that you ultimately do make based on the motions

9   that come in on April 19th, even if you deny them, that I have

10  some reasonable block of time to get ready for whatever

11  witnesses we're going to get to examine live - and that might

12  change also based on some of the suggestions that you were at

13  least thinking about or suggesting you were thinking about

14  with video depositions, which possibly will resolve some of

15  the issues that will come up in my motion for advanced

16  rulings or alternatively for trial depositions.

17          THE COURT: And that's one of the reasons why

18  despite your request I did not change the schedule that had

19  been discussed at the February hearing, because I wanted the

20  flavor before today's hearing of what all the issues were

21  going to be and all the parties' respective positions.  It

22  gave me a chance to anticipate some things.  So it was

23  useful.  Okay, anything further?

24          MR. SHAPIRO: Yes, Your Honor.  I'm just finding my

25  place in my argument.

1            THE COURT: Go ahead.

2            MR. SHAPIRO: Okay, also one of the other things

3    that we have to deal with is the fact that we're going to

4    have to potentially prepare expert witnesses for testifying

5    that as you pointed out earlier, maybe they're not going to -

6    sorry, maybe they're not going to have to testify, maybe they

7    will, but assuming that you deny all the motions, then most

8    definitely the government's two expert witnesses would have

9    to be prepared for testifying.  Now, that's not to say that I

10   wasn't aware of that or I was waiting to see the outcome of

11   your motion so that, Oh, if they denied the government the

12   right to use one of their experts I won't have to spend time

13   preparing for him, so I guess I shouldn't do that now and see

14   how it turns out.  I didn't do that, but nevertheless, you

15   have two experts who being businessmen themselves are working

16   on other cases, and it's going to take them time to refresh

17   their memory.  I mean, Mr. Veridis, whose name came up

18   earlier when I was discussing testimony, is our financial

19   expert, the government's financial expert.  He had cartons of

20   documents that he had to, you know, review, and he's going to

21   need time to get ready for that which should not effect my

22   preparation, but I ultimately will have to meet with him a

23   couple of times before trial, as would any attorney meeting

24   with an important expert witness to get them ready for trial,

25   and I have another expert witness Paul Kagan who lives in

1    California and Mr. Veridis lives in New York.  But,

2    regardless of where they live, suppose they lived next door

3    to me, I still have to spend time working with them, and

4    that's going to consume some of the 30-day window that we

5    presently have.

6            THE COURT: Mr. Kagan is an expert for what purpose?

7            MR. SHAPIRO: Valuation of cable television systems

8    in the relevant period of time.

9            THE COURT: I think I've heard some of these experts

10    before.

11            MR. SHAPIRO: Okay.  There's also going to be a need

12    to prepare what I refer to as files for evidentiary

13    objections.  Any trial attorney knows that not every

14    evidentiary objection can be resolved by motions *in limine*,

15    and I guess from your perspective you're probably thinking,

16    Wow, that's a great thing because otherwise it would be

17    nightmare.

18            THE COURT: And often what I do with the motions *in*

19    *limine* is address them by saying, I'm going to deal with it

20    at trial and not in advance of trial, and that's a

21    possibility for some of the results that may be coming up.  I

22    can't say I've reached any yet, but that is a possibility.

23            MR. SHAPIRO: Well, very briefly, you're the judge,

24    you can do whatever you want, but I would suggest that it

25    would really have a negative impact on everybody's ability to

1  prepare for trial if they didn't have significant rulings on

2  those motions beforehand.

3          THE COURT: Well, and sometimes it's appropriate to

4  give the rulings and sometimes it isn't.

5          MR. SHAPIRO: It's your call.

6          THE COURT: But I'll wait till I hear what the

7  parties have to argue before I make that decision.

8          MR. SHAPIRO: That's right, but what I was really

9  getting to was not the motions *in limine* but the other things

10  that you can anticipate as a trial attorney that you need to

11  get ready for, and you get a file together and you put a case

12  or two in there and it's sort of like, if this issue comes up

13  you'll have this case ready to respond for your position.

14  And what I've learned from looking at all of these

15  preliminary motions, these motions *in limine* we've briefing

16  for the last couple of months, is that the number of files

17  that I will be having to prepare for anticipated evidentiary

18  objections will probably be larger than the box that I showed

19  you full of all the pleadings that we've already filed since

20  March 1st of this year.  So that will take time.  That was the

21  point of bringing that up.

22          THE COURT: Yeah, but not all of these are

23  crystalized necessarily as a result of the most recent string

24  of pretrial motions.  I mean, the trial was set months and

25  months ago.

1          MR. SHAPIRO: Yes, it was.

2          THE COURT: So that not all of the work that you

3    have to do and maybe not most of it is precipitated by the

4    recent flurry of motions, although, you know, I acknowledge

5    that the recent flurry would have created a substantial

6    amount of work for you.

7          MR. SHAPIRO: Right, and on that note, while I would

8    agree with you that you could say, Alan, you know, some of

9    these things you're calling non-preliminary motion type

10   evidentiary issues.  You could have spotted them after July

11   22nd, 2005 when your motion for summary judgment was denied,

12   and you could have started putting together the files you're

13   telling me that you need to put together, but then I still

14   have to bring you back to my initial point.  The trial date

15   that was set in this case assumed, certainly from my

16   perspective and with notice to the Court and other parties,

17   that I was going to be engaged at least through January

18   working on another case.  I had no expectations, personally,

19   of getting involved in preparing heavily for this trial in

20   this Scott Cable case until that time, and as I said earlier

21   today, I won't belabor it, I've accounted for other events

22   that happened as a result of the representations that Mr.

23   Neal made in December and that I then spent a considerable

24   amount of time on during the months of December, January, and

25   February trying to resolve trial stipulations and trial

1    depositions with them, and that segued right into the

2    briefing process for all these preliminary motions which then

3    became much larger than I thought, and as you know, it became

4    so large that I filed an emergency motion for an extension of

5    the briefing schedule, and the Court denied it and then you

6    can see the hardship that we had to go through whether you

7    feel it was deserved or not on our part.  That's the reality.

8    I mean, you know, we work, Mr. Sklarew and I, unbelievable

9    hours to just try to make the deadline.  There wasn't time to

10   start dealing with evidentiary issues that might come up at

11   trial or any of the other things that I've discussed.

12        THE COURT: Mr. Shapiro, I take you at your word.

13        MR. SHAPIRO: Thank you.  Then there's the next

14   topic which is preparing opening and closing arguments.  I

15   think that you, even in the two short times that you've been

16   with us on this case, can see that whether you agree with the

17   things I say or not, when I come to court, I come to court as

18   prepared as I can be, given whatever my limits are as a man

19   and as an attorney.  And when I do an opening and closing

20   argument, I try to do my best to be prepared for it as well.

21   You know, when you deal us with a small, you know, simple

22   case, you can do an opening or closing argument outline in a

23   relatively short period of time, but when you're dealing with

24   a fact pattern that spans more than ten years with a docket

25   that has almost 400 items in it with the amount of density of

1    information that's involved in this case, the amount of

2    issues that are involved, and quite frankly, whether you

3    grant trial depositions to us or not, I think everybody in

4    this room will agree the government is still going to have to

5    present some of its testimony in the form of deposition

6    transcripts.  So we're going to have witnesses that you may

7    or you may not have read their transcripts before trial.

8    Only you can know and decide that.  But the live witnesses

9    who will be testifying will not be the whole universe of

10   witnesses whose testimony will be introduced into the record.

11   And as a result of that, I believe that places an even larger

12   burden and necessity on me to make sure that my opening and

13   closing arguments encompass those - that evidence as well as

14   the evidence that you'll actually get to see live in order to

15   make sure the Court really understands, that's my one chance

16   to show the Court what I think all of this evidence will show

17   and then ultimately what it did show.

18            THE COURT: Well, you'll likely have post-trial

19   opportunities.  So don't be too concerned about that.

20            MR. SHAPIRO: I understand what you're saying and

21   you're suggesting that we'll get some post-trial briefs.  I

22   think everybody knew that, but still, we have a right to try

23   to put together a good presentation for you for opening and

24   closing arguments.

25            THE COURT: And I normally find that to be very

1    helpful.

2            MR. SHAPIRO: And getting to the point, it takes

3    time to do that.  So, you know, these are the types of things

4    that I say are going to create a situation where no matter

5    what you rule on April 19th, I just don't have enough time to

6    get ready for the trial on May 8th, and I'm not really, you

7    know, this may be deemed as an aside or whatever, but maybe

8    it will be helpful to you.  There's a lot of suggestions

9    about, you know, what the government's trying to do.  It's

10   some evil delay.  It wants the case to go on forever and

11   ever.  You know what?  Without naming names, I really don't

12   like some of my opposing counsel, and I can't wait to be done

13   with this case and them.  So when they say, I'm trying to

14   delay this thing forever, it's just not true.  I mean, you've

15   got to know in your gut that that is not true.

16           THE COURT: I'm sorry you feel that way about

17   opposing counsel and hopefully you won't feel a need to

18   express that view again.  I understand that sometimes

19   feelings run hot in vigorously contested litigation, and this

20   is one of them.  It's not the first one I've had.

21           MR. SHAPIRO: Well, maybe it has something to do

22   with some of the other points I made at an earlier time

23   today, Your Honor.

24           THE COURT: I understand, and I'm assuming it won't

25   be the last matter -

1           MR. SHAPIRO: I'll move on from that.

2           THE COURT: Well, how much more do you have.  Can

3   you wind up?  Because I think I have a pretty good flavor for

4   your argument.  I have read the papers.

5           MR. SHAPIRO: Not too much longer.  I think I'm

6   getting to it.

7           THE COURT: Okay.

8           MR. SHAPIRO: Okay, and I'll try to speed through

9   this one as well.  You know, we've all in this room been

10  involved with enough litigation to know that preparing for a

11  trial of this nature from the government's perspective and

12  from, I assume, the defendant's perspective as well as trial

13  attorneys, not the Court, but as trial attorneys, we would

14  all benefit from having learned what the Court's rulings are

15  on the motions that are coming up on April 19th with enough

16  time to be able to adjust our trial strategy.  I can't give

17  up my work product and trial strategy, tell you specifically

18  what I would do differently depending on what rulings you

19  might make on some of the matters that are coming up on April

20  19th, but I'm not going to wait until you decide those

21  motions.  As soon as I can, I'm going to start working on

22  things that I mentioned earlier about exam outlines and

23  opening arguments, but nevertheless, you're going to make

24  some decisions on April 19th or shortly thereafter or

25  sometime, whenever you're ready, and I'm going to probably

1    have to adjust my trial preparation accordingly.  I'm going

2    to have to do something more and different than what I might

3    have otherwise anticipated or what I might have anticipated

4    if I thought I would be successful on all of my preliminary

5    motions and my responses to my opponents' motions.  All

6    right, I do want to reserve the right to make a brief

7    rebuttal or response to the extent it's necessary.

8            THE COURT: Sure.

9            MR. SHAPIRO: Thank you, Your Honor.

10            THE COURT: You're welcome.

11            MR. SCHWARTZ: Again, Your Honor, Andrew Schwartz

12    for the Media defendants.  The Media defendants are opposed

13    to any further continuance of the trial that's now set for

14    May 8th.  This case has been pending as I mentioned earlier,

15    since November of 1998, and to pick up on what I apparently

16    said to Judge Walsh in July of 2004, the parties have been

17    searching for the truth for over seven years.

18            THE COURT: Well, let me ask you this, Mr. Schwartz.

19    What difference does it make if this case gets tried in May,

20    June, July, or August?

21            MR. SCHWARTZ: Well, it makes a considerable

22    difference to the schedule of counsel and the parties and the

23    witnesses who have made many adjustments to be able to

24    conduct the trial on the schedule that set a long time ago.

25            THE COURT: And I acknowledge that that may be so.

1         MR. SCHWARTZ: That's a significant factor.

2         THE COURT: But in terms of the overall -

3         MR. SCHWARTZ: The grand scheme of the universe?  It

4    probably doesn't make all that much difference if it goes to

5    trial within that time frame.

6         THE COURT: Okay, and that was my point.

7         MR. SCHWARTZ: Yes, it's difficult to argue in a

8    cosmic sense in a case that's been going on this long, but

9    that's, you know, going to have enormous implications, but we

10   have considerable concern about the ability to get everybody

11   in the same place at the same time.  This is a large crowd,

12   and you're only looking at counsel, not necessarily all

13   counsel.  We have expert witnesses, they're busy, they have

14   other cases.  We have parties.  We have our own cases and

15   schedules.  We've made adjustments in order even to be here

16   today in other case schedules, and in my particular case, I

17   was scheduled to be in Moscow today to be either taking or

18   defending depositions, I can't even keep it straight any

19   more, but we make adjustments.  As trial lawyers, you have to

20   make adjustments all the time, and that's within a structure

21   that has been set.  We know if things are going to come up

22   between now and the time of trial and at the trial and after

23   the trial.  We can't choreograph it all, but we have been

24   acting in reasonable reliance on the schedule that was set

25   quite some time ago by Judge Walsh which was one of the main

1    reasons why the case was sent to you, if not the main reason,

2    and which the government repeatedly agreed it would be ready

3    to deal with.  In fact, it originally told Judge Walsh it

4    could try the case in April 2006.  When Judge Walsh -

5         MR. SHAPIRO: I object on the record to the

6    statement, Your Honor.  It's not accurate.

7         MR. SCHWARTZ: The transcript speaks for itself,

8    Your Honor, and it's before you.  When the scheduling

9    conflict arose at the end of November, the government said it

10   couldn't go forward in April, but it did agree to go forward

11   in May.  It told that to Judge Walsh in December of 2005,

12   that was three months ago, and it stood here before you,

13   there's no denying this, they don't need a transcript for

14   these purposes.  On February 13th, of this year, and

15   participated in a scheduling conference, where the trial date

16   was reaffirmed.  Nothing has happened of some order of

17   magnitude since February 13th that warrants any change in the

18   schedule.  Now there's been some suggestion that there's been

19   some welter of motions *in limine* that were unanticipated.  We

20   filed four motions collectively and the government filed

21   three.  Two of the four were foreshadowed, which are the two

22   motions concerning the government's reported experts, those

23   motions were foreshadowed at the time of the summary judgment

24   briefing just as the government motion *in limine* with respect

25   to Mr. Greenspan was foreshadowed.  I can tell you, we knew

1    that one was coming, and I have to believe the government

2    knew the motions directed to Mr. Kagan, and by the way, I

3    doubt he's testified before you based on what we've learned,

4    and Mr. Veridis.  They had to know those were coming.

5    Likewise the motion to compel the production of one single

6    document, one document that the government has been

7    withholding was also the subject of correspondence, and it

8    was clear a motion to compel was coming, and by the way, the

9    lengths to which the government has gone to try to prevent

10   the production of one document raised some questions about -

11   how can I say it, the prioritization of its resources, if

12   they're as scarce as they say and they're really concerned

13   about being prepared for trial.  Now, we don't think they're

14   going to be unprepared.  They told you that they needed five

15   weeks to respond for the pretrial motions.  All four of them

16   that we filed, as though that's some enormous burden in a

17   case of this significance and duration, and they ask for five

18   weeks, and you said, no, they can only have two.  And so they

19   took the two weeks.  I'm sure they worked hard.  They did a

20   professional job, and they submitted thorough comprehensive

21   motion papers.  Maybe they got them in just under the wire,

22   but they did it.  And now they're telling you they're not

23   going to be ready for the trial.  It's the same argument all

24   over again.  We think they will be ready for the trial.

25   Everybody would like to have more time, especially if you're

1    the plaintiff, and you're now staring at the abyss of having

2    to carry the burden of proof.  You can always use more time,

3    and work always expands to fill the time that's allotted.

4    It's a cardinal rule at least of litigation, many other

5    endeavors as well.  But, we think they can be ready, and if

6    you'll look at the amount of time that's left, it's still

7    nearly six weeks until the time of trial.  That's quite a

8    long period of time.  And even after April 19th, there will be

9    a number of weeks, and we will be preparing between now and

10   then if the date doesn't change with various contingency

11   plans.  That's what you do in litigation.  The Court may rule

12   one way on the motion; the Court may rule another.  If it

13   rules one way, you go with plan A; if it rules another way,

14   you go with plan B.  You have to prepare this way for a

15   trial.  We don't require of the Court any particular approach

16   or rules.  We will deal with whatever rulings you render when

17   you render them in the manner in which you're comfortable,

18   and it's our job to adjust on the fly and represent our

19   clients in the context of the trial.  There's also been a

20   suggestion that the government can't start, quote, "preparing

21   for trial until the pretrial order is submitted sometime

22   between April 7th and 12th."  I don't understand that argument.

23   People prepare for trial in a gradual process.  Everything

24   you do in a case ultimately points toward the trial.  The

25   government in this case in 2004 filed an enormous summary

1   judgment motion that was very much a roadmap if not an Atlas

2   for trial.  That's trial preparation in and of itself.  All

3   this work that we have done, briefing, the motions *in limine*,

4   I regard that as trial preparation.  That's taken me

5   personally up the learning curve of certain aspects of the

6   case that I hadn't visited quite as closely.  I'm something

7   of a latecomer to the case, but I've been around at least

8   since 2004 in appearing in the Court, and this is trial

9   preparation in a sense.  It's not writing out an opening

10  argument; it's not writing out cross-examination of an

11  expert; it's not designating deposition testimony; but it is

12  familiarizing yourself, amercing yourself really in the facts

13  of the case.  So this is all trial preparation.  It's a

14  continuous process, and once the pretrial order is done, then

15  you can focus more exclusively on some of these other things,

16  but everyone has known since this trial was scheduled a long

17  time ago that it was going to happen on May 8th, and it's been

18  reaffirmed several times, as recently as February 13th, and

19  it's significant that Judge Walsh when presented with

20  arguments from the government to the effect that they were

21  short-staffed, I know I'm paraphrasing now, I'm not quoting,

22  that basically told the government in no uncertain terms do

23  whatever is necessary to be ready to try the case, and that's

24  consistent with the comment that you made.  The government is

25  the plaintiff.  It brought the case.  It has the

1   responsibility to prosecute it in a timely fashion.  And it's

2   not as though we're dealing with some indigent *pro se*

3   litigant.  You can lose sight of that when you hear all these

4   arguments about the strain on the government's counsel.  I

5   don't mean to be insensitive to that.   We're all working

6   pretty hard also, but this is the United States of America,

7   that's the plaintiff, and we've often been reminded.  It's

8   not the Internal Revenue Service.  This is the United States

9   of America, that's the plaintiff, and it's the Department of

10  Justice that's prosecuting the case.  There's only so much

11  sympathy you can have for that litigant when it brings a case

12  of this magnitude and seven plus years has gone by.  So, we

13  think that the trial schedule should stick, and the

14  continuance that's being sought, if you read the papers

15  carefully, is not a continuance of any specific or limited

16  duration.  It's some kind of ambiguous request of 45 days

17  after the later of one or two things and one of those things

18  is the granting of the so-called trial depositions, a concept

19  we think doesn't exist, as you've probably gleaned by now.

20  And there's an unlimited number of those they want to take,

21  and we don't know when that will start or end if it ever

22  happens.  We don't think it should start at all.  By the way,

23  I want to make one thing very clear, at least on behalf of my

24  clients, we are prepared to go to trial with no additional

25  discovery whatsoever.  Yes, we have filed a conditional

1    motion that says, if you let the government take the so-

2    called trial depositions, well there are certain things that

3    we would do as well, but we would forego that if the

4    government would forego it and start the trial on May 8th.

5    We also think if there's limited additional discovery it can

6    get done between now and May 8th, and if not during, in

7    certain respects there are breaks in the trial, but, we don't

8    think you need to really go there because, as you'll hear in

9    greater detail on April 19th, we don't think there's any merit

10   to this notion of trial depositions, and we think that the

11   government had plenty of opportunity to take discovery during

12   the discovery period, and I may be mentioning something that

13   I said earlier, but in 2004, at the same hearing where my

14   comments have been quoted about searching for the truth, the

15   government told Judge Walsh at that same hearing, July 16th,

16   2004, that discovery in the case was complete with two minor

17   exceptions, one of which they chose to abandon and the other

18   of which concerns Mr. Block, which is still a live issue.

19   That was 20 months ago.  Twenty months ago, they said,

20   discovery is complete with two exceptions.  So, in those

21   circumstances, Your Honor, we think the case should go

22   forward.  I make the same arguments, I'm not going to make

23   them, I'm just going to incorporate them by reference with

24   regard to the prejudice to our clients if this case is

25   delayed, and once you start down the process of delay, it's

1    very difficult to say where it ends, with this number of

2    parties and trying to get everybody set for one particular

3    three-week period, and it's really not just the three-week

4    period you have to keep in mind because everybody has to set

5    aside time in the period immediately before the trial, so

6    it's more like six or seven weeks.  You really have to block,

7    you know, two months of your life out, that's not the easiest

8    thing to do for any particular professional never mind

9    everybody doing it the same time.  We know this date is one

10   for which people have been planning a long time, and it

11   should stick.  I want to just respond to a couple of other

12   points, and Mr. Shapiro handed you depositions, I think, of

13   Mr. Armstrong and Mr. Dopel that's evidence of the fact that

14   there's some significant work to be done with witnesses,

15   designating transcripts or whatever.  I didn't look closely

16   enough when he flashed them before me, but I think you'll

17   find the dates of those depositions are in the spring of

18   2003?  That's when the discovery was taken for the most part,

19   in that general time frame, 19 different depositions.

20   There's some suggestion that this exercise in an attempt to

21   obtain trial depositions somehow set the government back

22   weeks or months, and the defendants are somehow at fault for

23   not being cooperative.  We have a very different perspective

24   on that as you might imagine.  These papers are all in the

25   record, I'm quite certain, before you, if you care to look at

1   them, but on December 1st the government told Judge Walsh

2   there were three procedural issues that required attention in

3   the nature of this trial stipulation exercise, and then they

4   sent a letter to us that was vastly broader in scope than the

5   three minor matters that had been mentioned to Judge Walsh.

6   We looked at the letter very carefully.  We agreed to

7   stipulate to quite a few of the requested stipulations to be

8   sure they largely involved documents, documents the

9   government should have authenticated during the 19

10  depositions but didn't, but they weren't controversial.  We

11  weren't going to fight about them.  We stipulated to the

12  authenticity with regard to the evidentiary stipulations

13  where the government was trying to obtain some type of a

14  scent to have all kinds of hearsay admitted and have

15  documents created by one defendant chargeable to another.

16  We didn't agree with those.  We're not required to agree to

17  stipulations that concern inadmissible evidence or other

18  evidence the government chose not to develop during an

19  extensive fact discovery period.  The government's got it

20  wrong.  They don't have an entitlement to have the defendants

21  come in, roll over, and say, you win.  It is a hard fought

22  case, as you've picked up on.  We're fighting back.  Our

23  clients have been sued, and like many defendants, they're

24  fighting back.  They think that that money sitting in the

25  escrow account is theirs.  It doesn't belong to the

1   government, and we intend, consistent with the rules of this

2   Court and other professional responsibilities, to defend our

3   clients vigorously, and we'd like to see the trial take place

4   as soon as reasonably possible, and we have a very strong

5   preference that it start on May 8th, a date when we know

6   everyone's available.  Thank you.

7           THE COURT: Thank you.

8           MR. NEAL: Your Honor, Guy Neal from Sidley Austin

9   for Allstate Insurance Company. I'll limit my argument to

10  about five minutes.  Your Honor, to respond to the two main

11  points and to Your Honor's question - First, Your Honor's

12  question of what difference does it make for a brief delay,

13  and I would echo the sentiments of Mr. Schwartz.  It does

14  make a material difference.  It does make an economic

15  difference for the defendants, who have for the past four

16  years picked up and put down this file on repeated occasions

17  with the thought that trial was imminent.  This case, and I

18  don't mean to be glib, you can analogize to a certain flesh-

19  eating bacteria.  You can't stop its progression.  You cannot

20  stop its growth.  It has expanded.  Let me turn to what Mr.

21  Shapiro said, that was the second point for why he has

22  requested a continuance, and that is the nature and the of

23  the case.  It is complex, and as he says, it is fact

24  intensive.  Again, I want to bring the Court back to the

25  record.  The complaint on file, and I regret I didn't bring

1    my copy, I can assure you it is not as big as that box.    In

2    fact, Your Honor, I may be off by a page or two, but the

3    complaint is about seven pages in length.    The complaint is a

4    two-count complaint that brings forward what I would

5    characterize in bankruptcy parlance fairly generic claims.

6    One for re-characterization. One for equitable subordination.

7    Something bankruptcy attorneys deal with in almost every

8    Chapter 11 case.

9            THE COURT: Well, these days anyway.

10            MR. NEAL: These days, very good, Your Honor.    In

11    those six to seven pages, and again, I might be off by a page

12    or two, if you strip the jurisdictional allegations and you

13    strip the averments of the names of the parties, you will

14    reduce to about eight or nine factual averments that are in a

15    two-count complaint.    I won't get into argument how there's

16    no precedent in the circuit or any other for the two claims.

17    I'll reserve that for later, perhaps at trial, but the nature

18    and the, quote/unquote, "complexity" of this case has not

19    changed in eight years.    It has remained a six to seven-page

20    two-count complaint of re-characterization and equitable

21    subordination.    Never amended at any time.    Not only has it

22    not changed in eight years, the nature and the complexity of

23    this case hasn't changed since February 13 when the

24    government stood up here and agreed to the discovery schedule

25    - excuse me, the pretrial schedule and the order that we

1    agreed on during a recess that Your Honor took.  I will close

2    with I think really the first argument of the government in

3    the last point addressed by Mr. Schwartz concerning whether

4    or not certain statements that were made, specifically by Mr.

5    Neal, who is standing here before you right now, to Judge

6    Walsh in early December.  This was a chambers conference

7    call.  There is no transcript.  I will do my best in full

8    candor and pursuant of my ethical obligations before this

9    tribunal and every other that I appear in to reconstruct what

10   I said.  What I said was, we will try to work with the

11   government on the government's proposed stipulations.

12   Implicit in that was the government would send us proposed

13   stipulations.  The government did so.  We worked with the

14   government consistent with the representations I made to this

15   Court which were accurate, which were factual, and which

16   expressed my intent at the time and the intent that I carried

17   through.  We worked with the government, and I would say,

18   this is a rough math on my part, a non-math major, that we

19   agreed to substantially all of the stipulations.  This is the

20   second stipulation that Allstate has worked with, with the

21   government in this case.  We've a detailed factual

22   stipulation that in fact was incorporated in the second

23   stipulation.  So on two occasions, we have worked

24   cooperatively with the government.  The idea, Your Honor,

25   that that would have caused a three to four month delay or a

1 two to three month delay in government counsel's preparation

2 should be flatly rejected.  Finally, the parties have placed

3 great emphasis on the fact - Mr. Schwartz rightly placed

4 great emphasis on the fact that in July of 2005, we got the

5 May trial date.  There is a statement on the record that

6 government counsel said, I said, that I believe in April of

7 2006 he could be ready for trial on that date.  Let's not

8 lose sight of the fact that we first obtained a trial date in

9 February of 2005, thirteen months ago, for the October time

10 frame.  So that trial period was already delayed.  It has

11 been delayed.  So, again, closing where I opened up, Your

12 Honor, to your question of what difference does it make.  We

13 had an October date.  We lost it.  We think we have a May

14 date, we intend and want to keep it, but we lose dates

15 regrettably for reasons that are not new found, and I would

16 submit and close, not compelling.  Thank you.

17    MS. POLLIO: Your Honor, Marie Pollio for U.S. Bank

18 as Indenture Trustee.  The Indenture Trustee doesn't have

19 much to add except we do want to state that with respect to

20 the trial stipulations that Mr. Shapiro's referring to, we

21 believe that he is lumping the defendants into one box, and

22 there are three distinct defendants here that cannot be -

23 actually there's more than three, but counting Media

24 Communications as one, that cannot be in one box.  The

25 government has requested some defendants to stipulate to

1    aspects and facts that are not in their control that other

2    defendants didn't stipulate to, and we believe that's

3    improper.  And as I stated earlier, the Indenture Trustee is

4    most concerned with delay, so we oppose this motion for that

5    reason.  Thank you.

6            THE COURT: Thank you.

7            MR. SHAPIRO: I'll respond first to what Mr.

8    Schwartz said.  What it all boils down to in the end, it's

9    nothing about convenience of the counsel and their schedules.

10   We all have schedules and we all end up having to change

11   them.  That's what happens when you're in the business world

12   and it certainly happens a lot in the world of litigation.  I

13   don't mean to sound flip about that.  Nobody likes to have

14   their schedules moved, and the government would be affected

15   too if the trial date was moved and I've already made my more

16   guttural explanation of the trial date, and I won't repeat

17   it.  But what this really boils down to is when you cut

18   through all of the clever arguments and the twisting of the

19   record and all of that is, the government has told you that

20   it needs more time to prepare and they don't want us to have

21   it because they like the advantage of having us unprepared at

22   trial, and as a related point, what you'll see throughout all

23   of this is, it's not just a question of trying to vigorously

24   defend themselves or fight, they've engaged in obstructive

25   behavior throughout the course of discovery in this whole

1    case and twisting around the record and manipulating facts
2    and everything else.  They don't want us to get the evidence.
3    They don't want us to be able to use the evidence that we
4    already have.  That's what this boils down to.  They don't
5    want us to have enough time to prepare, and they don't want
6    us to be able to use evidence that we already have by making
7    a bunch of slick attorney arguments that deprive you of what
8    you need to know the truth of what happened in this case.
9    And, the truth is, if you don't stop the trial from occurring
10   on May 8th, and instead go ahead and deny some motions for
11   trial depositions or advanced rulings on evidence, what
12   they're also really hoping is, they'll say, Ah, let's put
13   this all off until trial.  I'll rule on things as they come
14   up at trial because underlying that is the reality that then
15   the government would have to prepare as if, you know, we're
16   going to go into a trial hoping that we get evidence that we
17   feel that we should be able to get, and we have to prepare
18   all these different contingency plans in case we don't get
19   it, and more likely, the reality that most people, I'm not
20   suggesting this is how you would do things, but most judges
21   faced with a notion of having to stop a trial in the middle
22   of trial and say, Gee, I guess I really do need to order a
23   couple of trial depositions now.  We'll just put this whole
24   trial in recess and you can go fly around the country with
25   the army of defendants' counsel, and now I'm going to let you

1   take all those trial depositions, and not only would there be

2   the psychological potential reluctance to that -

3         THE COURT: That decision I'm not going to postpone.

4         MR. SHAPIRO: Okay, but the reality also is, is that

5   we would have already performed part of the trial without

6   really knowing how those rulings are going to go, and then it

7   might be too late as a matter of reality to try to redo or

8   fix the trial based on now suddenly getting evidence that we

9   hoped we were going to get.  We didn't know if we were going

10  to get.  We presented evidence without knowing whether we

11  were going to get it or thinking we might not get it, and

12  then we do get it, and it's - you know, you can't really

13  prepare for a trial like that.  That's why you really do need

14  to have rulings on the motions that are before you and then a

15  little bit more time to get ready.  So, moving on to the next

16  point here.  There's a big distinction between taking

17  depositions for purposes of discovery where you don't know

18  what the evidence is, and you're trying to find out what it

19  is, and what we're trying to do here, which is just be able

20  to have our evidence in an admissible form.  Contrary to what

21  Mr. Schwartz said, the depositions we were permitted to take,

22  many of which, almost half of which were permitted only in a

23  very limited basis as follow-ups for a motion to compel where

24  we got more documents based on the crime fraud exception,

25  those weren't the witnesses that were even able to

1    authenticate a lot of documents, and in addition, a lot of

2    problems came up at some of the depositions we did take, for

3    example, of Mr. Block, and we tried to work things out with

4    them in an economical manner, by getting a declaration, and

5    then they sandbagged us, basically by now objecting to what's

6    in that declaration.  So, the other suggestion that Mr.

7    Schwartz makes that these are simple motions *in limine,* it's

8    simply belied by the box of documents that I showed you that

9    have been filed since March 1st.  If it was that simple, there

10   wouldn't be literally hundreds and hundreds of pages of

11   briefs with a whole bunch of attachments to them.  It's just

12   not that simple.

13         THE COURT: Well, sometimes it is, but I'm not

14   saying that it is in this case.

15         MR. SHAPIRO: There's also the suggestion that, you

16   know, the government didn't staff the case properly.  And

17   we've heard this before, and it's just not true.  We staffed

18   the case the way we could staff the case, what we thought was

19   a reasonable way to staff the case during the period of time

20   leading up to January of 2006, and a lot of stuff happened

21   since January of 2006, which we've already discussed, and I

22   will no belabor it again, and which is also in our briefs.

23   So for them to manipulate and start sitting here telling you,

24   Oh, well, the government agreed to a trial in October, and

25   then it agreed to a trial in May.  The reality is what's

1     happened since January.  I realize what's really happened

2     since December 5th when Mr. Neal made a statement to me which

3     is exactly the way I described it, and he made it because

4     Judge Walsh was about to grant the depositions we wanted and

5     he wanted to get off of the phone call before he did grant

6     that.  That's the only reason he made that, and his

7     suggestion that he's not good at math, but he thinks the

8     parties have agreed to stipulations the government proposed

9     of a great percentage, is misleading because the reality is

10    the ones that mattered the most were the ones that had to do

11    with trial depositions being obviated by stipulations and

12    none of the defendants agreed to any of those.  Mr. Schwartz

13    also made a staffing remark about how the government is the

14    United States of America, and it should somehow have

15    unlimited resources.  Perhaps Mr. Schwartz has forgotten that

16    a lot of our money presently is gong to Homeland Security to

17    protect him.  We don't have unlimited resources.  We have

18    what we have.

19              THE COURT: The courts know the feeling as well.

20              MR. SHAPIRO: The other thing that Mr. Schwartz

21    fails to point out in showing how they're so ready with their

22    army of attorneys to get ready and the government is not is,

23    the government is the one that really has to produce most of

24    the evidence in this case.  Their position essentially is

25    that - did you want me to stop, Your Honor?

1          THE COURT: No.

2          MR. SHAPIRO: Okay.

3          THE COURT: I'm listening.

4          MR. SHAPIRO: All right.  Basically, the government

5     is the one that has to put on much of the evidence in this

6     case.  I'm sure they'll call witnesses.  I'm sure they'll put

7     on some testimony.  Certainly they'll have an expert witness,

8     but most of their arguments really are legal arguments.  In

9     fact, what I tried to get Judge Walsh to focus on when he

10    didn't read our reply brief was if you really look at what

11    they're saying, they say no matter what evidence the

12    government puts into this case, we should win because our

13    interpretation of the law is such that the government simply

14    can't win.  So it's a hollow statement to say that we can get

15    ready so why can't the government.  The government has a lot

16    more that it has to do without even getting into the issues

17    of staffing or how many attorneys or whether attorneys would

18    spend more or less time getting ready for the examination of

19    a given witness.  There was a comment also about how the

20    government only mentioned one person's deposition or another

21    person's deposition at various points in time that it might

22    need.  The examples that we gave to Judge Walsh at the

23    December 5th, 2006 (sic) status conference are just that.

24    They were examples and that's how they were explained.  There

25    were others, and it's just misleading to suggest that somehow

1    we've limited ourselves in trying to put forth what we feel

2    that we need to do to protect the record and get the proper

3    evidence we already have in form, that we can at least admit

4    it, subject to all of their relevance objections and other

5    things I mentioned earlier today, and we couldn't do that

6    with the ten depositions that we have, but if you look at the

7    way the case as an organic thing evolved, if you really look

8    through step by step, as I pointed out in briefs that you'll

9    see for the April 19th hearing and to a more limited extent in

10   our reply brief in the motion that we're arguing right now,

11   you know, litigation doesn't really follow all the time this

12   perfect exact course.  That's why, unfortunately, reality-

13   wise, adjustments have to be made.  Mr. Neal said that much

14   of the delay is due to the government or something to that

15   effect.  What he left out is that years' worth of delay was

16   due to two merit-less motions for summary judgment that they

17   filed having to do with *res judicata* and the finality of the

18   confirmation argument.

19         THE COURT: Okay.  That's past history.  I don't

20   think it's relevant today.

21         MR. SHAPIRO: Okay, okay.  Mr. Neal also makes some

22   points about the complaint being of limited length or limited

23   content -

24         THE COURT: That -

25         MR. SHAPIRO:  - it's noticed pleading and the

1   substantive law indicates that this a very fact intensive

2   case.

3           THE COURT: I don't accord any weight to that

4   argument.

5           MR. SHAPIRO: Again, even with Allstate, what you're

6   really - their objections to my open oral argument today.

7   What you really see is, there's no bonafide reason for a

8   small continuance of this trial.  What they're really saying

9   is, we want an unfair advantage.  We want the government to

10  be unprepared, and we want them to not be able to have

11  evidence that they obtained during the course of discovery,

12  that they provided to us during the course of discovery, that

13  they submitted on summary judgment during the course of

14  discovery, and that we did not object to during the course of

15  the summary judgment proceedings and then they go ahead and

16  sandbag us and throw up a whole host of objections to it and

17  intimate more in the motions *in limine* that they filed on

18  March 1st.  Bottom line is, we've asked for what the

19  government contends is a reasonable and limited continuance

20  of the trial so that we will have adequate time for us to

21  prepare and for the Court to rule however it chooses to rule

22  on our motions and us to have a little bit of time to adjust

23  to whatever the Court decides.  Thank you, Your Honor.

24          MR. SCHWARTZ: Your Honor, may I have one more brief

25  point.

1                    THE COURT: Very brief.

2                    MR. SCHWARTZ: It will be very brief.  Having been

3        accused of various, you know, misrepresentations, I do have

4        to correct one thing Mr. Shapiro just said, and I'm not

5        suggesting that it was any deliberate misrepresentation, but

6        he apparently has failed to recall that when we briefed the

7        summary judgment motion, we made very clear, expressly, that

8        we were reserving all our rights to object to any of the

9        summary judgment evidence at the time of trial, and I have

10       one such illustration of that in my hands.  When we filed a

11       joint motion to strike the declaration of Mr. Shapiro filed

12       on February 4th, 2005, the closing footnote said, quote, "The

13       moving defendants reserve all of their rights to object on

14       any grounds to any or all of the, quote, evidence" - End

15       quote - "improperly proffered by the Shapiro declaration to

16       the extent any effort is made to resubmit it on summary

17       judgment or introduce it at trial."  So we made very clear at

18       the time of summary judgment that we were not going at that

19       point argue evidentiary issues with respect to the enormous

20       volume of paper that was dumped on Judge Walsh.  The

21       government was on notice as of that time that we were

22       reserving all evidentiary objections, and they appear to have

23       forgotten that which, given all the paper that's been

24       submitted may be excusable, but the Court should know about

25       it.

1            THE COURT: Okay.

2            MR. SHAPIRO: One quick brief response to that, Your

3    Honor.  What Mr. Schwartz failed to include in his last

4    remarks was in the summary judgment papers on two occasions

5    they specifically laid out what factual objections and

6    evidentiary objections they had paragraph by paragraph to the

7    summary judgment factual statement the government supplied

8    indicating to the government what it was going to contest or

9    what it found to be not a undisputed fact.  And so, while

10   their boilerplate statement may have been in their brief,

11   what I recall was again, responding paragraph by paragraph to

12   the things that they claimed were disputed facts and then

13   showing the Court why they were not in fact a material fact

14   issue but that if you look at the evidence what they're

15   saying is either untrue or that there, for other reasons,

16   simply is no fact issue here.  So I focused on what they

17   specifically said that they were contesting, and I stick to

18   what I told you earlier today, Your Honor.

19           THE COURT: Very well.  Okay.  It's inevitable that

20   prior to trial deadline, it having been set a month ahead of

21   time or eight months ahead of time, that things happen, and I

22   think both sides have acknowledged that, although they

23   disagree about what the impact of that should be or of the

24   significance of recent developments.  Here's what I'm going

25   to do.  I am going to reserve ruling on this motion.  What I

1    would like to do is to advance the date of argument on the

2    motions that were otherwise scheduled for argument on April

3    19th.  And to maybe soften what inconvenience I'm about to

4    cause to the parties, I will permit anyone who wishes to

5    participate by telephone instead of having to travel - you're

6    still welcome to travel, but anyone who would care to

7    participate by telephone can do that.  The papers have all

8    been filed, and, you know, actually in pieces some of them

9    have been at least partially argued today.  And I was

10    wondering whether we could reset argument for a time perhaps

11    as early as next week.

12            MR. SKLAREW: Your Honor, may I say something on

13    that.  This is the second time I think you asked Mr. Shapiro

14    too about anything else that might be coming and might be

15    filed, and you said the papers have all been filed.  There is

16    one other thing the government anticipates filing and it's

17    not a new motion.  You have before you and I've been a

18    principal responder of this, one of the motions the

19    defendants filed on March 1st was a motion to take depositions

20    of four IRS witnesses, three of them are attorneys.  They've

21    since essentially in their reply brief, which was filed only

22    a few days ago, expanded that by implying that they now want

23    to take depositions of additional people, and that anyway,

24    additional people are implicated and that we failed to

25    produce the declarations of additional people, and what's

1    most important is they added even more new evidence that they

2    never referred to again and tried to argue that all of our

3    declarations that I submitted to you six declarations by five

4    attorneys, one a Department of Justice attorney, four IRS

5    attorneys, and an IRS employee that all of them are liars,

6    and they produced more evidence that we never had a chance to

7    respond to, and I will be moving for leave to file a sur-

8    reply to that.  Now how quickly can I do that?  Can I do it

9    within a week?  I have an argument in a bankruptcy appeal on

10   April 3rd, I believe, in Ann Arbor, Michigan, and I probably

11   need two days to write it after that, but I need to get back.

12   I mean, April 3rd is what day of the week?

13          THE COURT: Monday.

14          MR. SKLAREW: Monday.  So my argument is Monday.  I

15   will return hopefully on Monday.  I hope I can get a flight

16   back, and I believe that I need at least Tuesday and

17   Wednesday.  I'd like to have till Thursday to file it

18   basically, to be safe, to respond to that.  I will be filing

19   it with a motion for leave, explaining why unless the Court

20   wants to grant why now, but is that there are brand new

21   arguments in their reply brief.  There's brand-new evidence

22   that they've held back until this last minute that they've

23   had for four years that was produced to them in 2002, and

24   they've concocted a bunch of new accusations about government

25   lawyers lying deliberately and all conspiring together and

1   why their declarations all sound alike and why they all

2   should be disbelieved.

3           THE COURT: Mr. Sklarew, one moment.  One moment,

4   please.

5           MR. SKLAREW: Thank you, Your Honor.

6           MR. NEAL: Your Honor, I do not make it a practice

7   to interrupt counsel but this appeared to be a timing

8   concern, and I think that can be addressed very easily on two

9   fronts with respect to the sur-reply, we have no objection to

10  a sur-reply, and I don't know what date you were proposing

11  for that sur-reply, but I think it's readily agreed with.  We

12  cannot do the scheduling issues for both Media Partners and

13  Allstate.  I'm not even sure about the Indenture Trustee.

14  Next week does not appear to work for us for argument.  I

15  believe Mr. Schwartz - I'm going to steal his thunder, was

16  going to recommend Tuesday the 11th.  I can represent to the

17  Court my only available date next week would be the 7th, but

18  it appears the Mr. Schwartz is out of the country on that

19  date, so the 11th, Tuesday the 11th which would be eight days

20  in advance to the prior date could be the date that we can

21  do.  I don't know if the Indenture Trustee or the debtors

22  would have a different view.

23          MS. POLLIO: That's fine, Your Honor.

24          MR. SCHWARTZ: If I may be heard briefly, Your

25  Honor, on this point of scheduling?

1              THE COURT: Yeah.

2              MR. SCHWARTZ: It is true that I will be out of the

3    country next week on a continuation of the same trip that I

4    had to rearrange in order to be here today.  And then on

5    April 10th, the Monday, I have an evidentiary hearing also in

6    another matter, so the earliest I could be here would be the

7    11th.  My preference, frankly, would be the 12th only because I

8    will not have had any time from the time I return from Russia

9    and then I have this other hearing on the 10th, so I'd like to

10   have at least a day to think about what I'm going to say to

11   you on the 12th, if that's possible.

12             THE COURT: Is everyone available on the 12th?

13             MR. SHAPIRO: Is that a Wednesday, Your Honor?

14             THE COURT: Yes, it is.

15             MR. SHAPIRO: I think I am available.  Can I ask for

16   permission to at least go back to Washington and check my

17   calendar.

18             THE COURT: Can you make a call?

19             MR. SHAPIRO: I could do that if you'd let me go out

20   in the hall and I could call somebody and see if they'll read

21   me my calendar off the wall.

22             THE COURT: That would be great.  Do you have a cell

23   phone?

24             MR. SHAPIRO: I gave it to the guard outside.

25             THE COURT: You can tell him I asked you to have it.

1          MR. SHAPIRO: Okay.

2          THE COURT: Nancy, do you need to go with him?

3    Okay, make the call.

4          MS. CALOWAY: Your Honor, I'm Mary Caloway for the

5    debtor.  I'm going to make a similar call to my co-counsel

6    who had to leave this hearing a little bit early to confirm

7    his availability for that date.

8          THE COURT: All right, well -

9          MR. SKLAREW: I'm okay on the 12th if Mr. Shapiro is.

10         THE COURT: Okay.  Hopefully that will work out.

11   That will advance the argument by a week.  Let me tell you

12   what I'm trying to do here, and since the government's still

13   represented I'll go ahead and you can catch Mr. Shapiro up.

14   Based on my ruling to keep the trial here and the fact the

15   trial date's been set for so many months, I'd like to make

16   every effort to try to keep the trial at its present

17   schedule.  But I'm open to considering a short continuance

18   if, based upon my rulings on the motions yet to be argued,

19   and on the arguments made today, I think that not to grant

20   the continuance would be unfair to the government, but I want

21   to hear the motions before I make that determination.  To the

22   extent that the defendants while not obligated might wish to

23   agree to some of the things that the government's asking, it

24   seems to me it might militate in favor of sticking with the

25   May date.  The government may argue that's still not enough,

1    and Mr. Shapiro I think basically did, but I may disagree

2    with that.  I don't know.  I haven't made up my mind yet, but

3    I did want to give the parties three different three-week

4    blocks that if I decided to move the trial date, these are

5    ones that I would be considering, and I forget who said it,

6    one of the defendant's counsel said it, it's strictly as a

7    result of the fact that I am new here and have some open

8    dates.  Now, I do have things scheduled at all these times,

9    but I would move them to accommodate this trial.  And don't

10   give me answers today, but between now and April 12th if that

11   turns out to be the date, you should have vetted your

12   schedules and your witness schedules and your expert

13   schedules to see whether something can be done, and I don't

14   mean to give you these dates to give you more time to think

15   of reasons why these dates aren't good.  I give you these

16   days in advance so that you can figure out reasons why they

17   might actually work if that's what I order.  They are the

18   weeks of June 12th, 19th, and 26th.  The weeks of July 10th,

19   17th, and 24th.  And the weeks of August 14th, 21, and 28.  I

20   know nobody likes the end of the August for lots of reasons.

21   But, at least based on my initial review today, those would

22   be the most likely dates, and as I think the parties have to

23   admit, at least in the cosmic sense, they've got to be almost

24   as good as the May date, and I don't mean to make light of

25   the other arrangements that the parties have already had to

1    make in anticipation of the longstanding trial date.  And I'm

2    not saying I'm going to continue the trial date.  All I'm

3    trying to do is cover all the bases now so that we're

4    prepared to - so that I'm prepared to the extent that I can

5    make every ruling I need to make from the bench at the

6    conclusion of the various arguments so that the parties know

7    when they leave here on April 12th, assuming that would be the

8    date, what to expect.

9             MR. SKLAREW: I have a question for clarification on

10   that?

11            THE COURT: Yes.

12            MR. SKLAREW:  Is that necessarily a three block

13   each time or is it possible that you would entertain just -

14   and I don't know what my calendar is on this, but just for

15   example, if we weren't free June 12th but were free the 19th

16   and 26th of those weeks and it had to be picked up on July 17th

17   if we weren't free on the 10th is that a possibility to have

18   the trial interrupted and then re-continue?

19            THE COURT: Well, I guess -

20            MR. SKLAREW: Bearing in mind that perhaps trial

21   depositions could take place in the interim if necessary?

22            THE COURT: Well, and I will tell you that's one of

23   the things that I've considered even if we start in May, but

24   with every interruption of every nature, and I've been on the

25   bench long enough to know this, when you disrupt the flow, it

1   not only makes it harder for the parties, it actually makes

2   it harder for the Court too to pick up the thread.  Not that

3   I would anticipate making the decision from the bench in this

4   case, because I'm assuming that whichever way I go, I won't

5   be the final word.  And that's not an invitation, but I think

6   just kind of a common sense feeling I have as a result of

7   what I've seen so far, and that's not a criticism of either

8   party; well, either side of the caption.  So, the answer is,

9   I suppose those things are possible but I don't want to

10  encourage parties to think that's the route that the Court

11  would prefer to take.

12          MR. SCHWARTZ: Your Honor, I assume Mr. Shapiro will

13  want to hear this point, but I'll mention it with Mr. Sklarew

14  here.  The first question I have is whether we're going to

15  keep the April 19th date for any purpose, and a related

16  question concerns the submission of the joint pretrial order.

17          THE COURT: I would - I'm sorry, I forgot to mention

18  that.  That deadline would be out the window, and I think

19  under the circumstances while I normally like to have them

20  before the pretrial conference, I think in this case what

21  we'll do is let's dispose of the motions and then set a new

22  date for the filing of the joint pretrial statement, and it

23  will be - I'm thinking I'd have it, you know, due like a week

24  before trial.

25          MR. SCHWARTZ: All right.  We'll defer to whatever

1  the Court wants to do having the opportunity to hear from

2  whoever wants to speak about it, but from our standpoint, I

3  don't think we'd like to see it go, quote, "out the window"

4  so much as have it extended a week or two.  You may choose to

5  reassess that on April 12th, but if it gets thrown out the

6  window, then people stop working on it entirely perhaps, and

7  the same restart process occurs, so -

8        THE COURT: I know.  I'm aware of that.

9        MR. SCHWARTZ: So, again, our request would be don't

10 have it come due on April 12th when we're all going to be

11 convening here and have plenty to do, but perhaps, you know,

12 two weeks later, and set that date now so everyone starts

13 working against that date and if there's a reason to adjust

14 it, fine, but at least it's a marker.  I think my co-counsel

15 are indicating assent to this.  So I don't know about the

16 government, obviously.

17        THE COURT: I'd make it - Well, let's put it this

18 way: I'll be attending the Third Circuit Judicial Conference

19 on May 1st and May 2nd.  So, I wouldn't read it before May 3rd

20 anyway.

21        MR. SCHWARTZ: That's as good a day as any.

22        THE COURT: Yeah.  So we could move it to that date.

23        MR. SCHWARTZ: All right.

24        THE COURT: Mr. Shapiro?  How go we on the 12th?

25        MR. SHAPIRO: I can do the 12th, but I don't mean to

1    waste your time, but when I was up there doing what you told

2    me to do, I didn't get to hear what happened when I wasn't

3    here.

4            THE COURT: And Mr. Sklarew will fill you in.

5            MR. SHAPIRO: Okay.

6            THE COURT: What I've decided to do, I think you

7    heard this part, is reserve ruling on this motion.  We'll now

8    set the argument on the various motions that were previously

9    set for April 12th to April 19th.  I'm sorry, from April 19th

10   to April 12th.

11           MR. SHAPIRO: What time will that be, Your Honor?

12           THE COURT: Well, does anyone have a request?

13           MR. SHAPIRO: Yes, if it could be after 11, anytime

14   after 11 just because of train schedules.

15           THE COURT: Okay.  Morning/afternoon, do the parties

16   have a preference?

17           MR. SCHWARTZ: For those of us coming from Boston,

18   it's a little easier if it's earlier in the afternoon, if

19   your schedule permits, and that would be enough time.  We can

20   find our way here a little earlier.

21           THE COURT: How's 1:30?

22           MR. SCHWARTZ: That's fine for us.

23           THE COURT: On April 12th.

24           MR. SCHWARTZ: We could come a little earlier than

25   that without any difficulty also, if you wanted.

1          THE COURT: Okay, 1 o'clock.

2          MR. SCHWARTZ: Yeah, that's fine.

3          THE COURT: One o'clock on April 12th.  Okay.  The

4    joint pretrial statement will be due on May 3rd.

5          MR. SHAPIRO: Your Honor, when does that mean that

6    we're supposed to - I know from memory there's something

7    we're supposed to exchange before the final one is filed on

8    the 3rd, so, when do we exchange?

9          THE COURT: I think the way it reads, I think, I

10    don't think I changed this in what I put forward before and

11    that is at least, no less than 7 days prior to the time it's

12    due the plaintiff is obligated to send a draft to the

13    defendants.  And then we'll see what we do, if anything, with

14    the trial date, and we'll go from there.  I'd like counsel to

15    confer and submit an order revising the schedule as we've

16    just discussed it now and indicating that I've reserved

17    ruling on this motion.  Are there any questions?

18          MR. SHAPIRO: I have a question.  I know no matter

19    how I say this it's probably going to come out in a way that

20    makes you feel insulted, but I have to ask the question.

21          THE COURT: Oh, I have a pretty thick skin.

22          MR. SHAPIRO: Other judges that I've had dealings

23    with have had us go to oral argument on significant motions

24    and then literally say on the record that they haven't had a

25    chance to read some or even all of the papers.  Will I be

1    able to anticipate, I know you can't promise me this right

2    now, but will I be able to anticipate that when I come to

3    argument on the 12th, the you will have read all of the

4    pleadings that the parties have collectively filed on

5    whatever motions are up that day?

6            THE COURT: Well, let's put it this way: The next

7    time I come to the bench on dispositive motions or motions of

8    this nature without having read the papers ahead of time will

9    be the first time.

10           MR. SHAPIRO: Great, thank you.

11           MR. NEAL: One more point of order.   And I don't

12   think we've established a date for the sur-reply.

13           THE COURT: Oh -

14           MR. NEAL: If Mr. Sklarew could give us what he

15   thinks is a reasonable period.

16           MR. SKLAREW: In light of - let me say two things in

17   connection with that.  One, I only proposed since the hearing

18   date is Wednesday now, April 12th that the preceding Friday,

19   whatever that date is - the 7th being my deadline, but I do

20   want to just point out at least because there's been so many

21   arguments of waiver here.  I will be requesting an expedited

22   transcript of this hearing, and I will have to share it with

23   my superiors within the Department of Justice, and at least

24   discuss the possibility in light of the transfer issue of

25   whether to take an interlocutory appeal.  I don't want there

1    to be any implication that, because we've heard this before,

2    because we agreed to this schedule we're waiving the right to

3    do that.  I'm not saying we're going to do that -

4            THE COURT: I don't know why there would be.

5            MR. SKLAREW: Definitely something we will have to

6    consider, and I'd like to get an expedited transcript to

7    decide it first.  So, you know, that's something else I have

8    to work into that time frame so the Court understands that.

9            THE COURT: Very well.  Work the deadline for the

10   filing of the sur-reply into the order as well.

11           MR. NEAL: (Microphone not recording) . . . we'll be

12   happy to circulate the order by Friday.

13           THE COURT: Okey, now, I would like counsel to

14   provide me with a hearing binder with the next round of

15   motions let's say by April 10th.

16           MR. SHAPIRO: Your Honor?

17           THE COURT: Yes.

18           MR. SHAPIRO: In two days, do you really think

19   you're going to be able to read all of what's in this box

20   before that hearing?

21           THE COURT: I've read more than that in two days.

22           MR. SHAPIRO: All right.

23           THE COURT: And, by the way, what I often do is pull

24   the documents off line.  They've all been filed ahead of

25   time.  The hearing binder is largely for my convenience at

1    the time of hearing, but thank you for your concern.

2            MR. SHAPIRO: The reason I say that was because as I

3    mentioned earlier, we cited a lot of pieces of evidence from

4    the summary judgment record which you would then also have to

5    look at if you were reading these briefs.

6            THE COURT: I might or might not look at it.  Like I

7    said, I don't bargain with parties, Mr. Shapiro, for what I

8    review in advance of hearings.  But I will consider myself

9    sufficiently prepared and certainly if this is any example

10   after argument, I'm sure I'll be fully prepared to render the

11   appropriate rulings.

12           MR. SKLAREW: I have a clarification question about

13   the local proceedings and rules, something I wasn't totally

14   able to understand.  It seemed to me when I was reading the

15   rules that there's a binder required for a motion when the

16   motion briefing is completed, but then there's a hearing

17   binder that also requires the same pleadings be put in it,

18   and I wasn't sure if that's really true, or if the Court

19   really wants to -

20           THE COURT: I think the procedures probably do read

21   that way, and I really only need one.

22           MR. SKLAREW: So is it just the hearing binder or, I

23   mean -

24           THE COURT: Yeah, I just need it at that point.  To

25   the extent I need anything in advance of that, I can pull it

1    off line or my law clerk can.

2         MR. SHAPIRO: Judge Carey, you also mentioned at the

3    beginning of today that there were some other pending matters

4    and you wanted some discussion of that?

5         THE COURT: Well, you had indicated there were other

6    pending matters, and I guess my question is, what do we do

7    with them?  Did they need to be resolved?  Is anyone pressing

8    anything?  What are they, besides the one motion that was

9    discussed?

10        MR. SHAPIRO: Off the top of my head, I know that

11   there was some motion that we filed in the past regarding

12   Bunston (phonetical) Acid Management Company, and there was

13   obviously the motion that was discussed earlier about leave

14   to take up to six additional depositions.  Off the top of my

15   head, I don't know if there are more, and quite frankly,

16   while, you know, it's not - quite frankly, you know, we

17   practice in so many courts that while we try our best to

18   learn every single rule and local rule, most of the courts I

19   practice in take any motion up on their own without any

20   further activity.  So, you can put the blame on me.  You

21   know, I'm the attorney, but sometimes that might have been

22   why something didn't get attention.

23        THE COURT: Yeah, given the volume and magnitude of

24   the filings typically here, we rely primarily on counsel to

25   keep us advised of what's going on.  Occasionally, we find

1    something that, you know, falls between the cracks, but we

2    really do rely on counsel to keep us advised.  Let me just

3    leave it this way: To the extent somebody thinks there's a

4    pending motion that needs to be pressed, you need to somehow

5    bring that to my attention.

6         MR. SKLAREW: I think I'll defer to Mr. Shapiro - I

7    think it's fair to say that the motion we did talk about

8    today with respect to depositions, is essentially now going

9    to be subsumed in the motions that are before you and just

10   becomes a part of the background for that.  I don't think

11   really needs to be separately addressed from the ones that

12   are going to be heard.

13        THE COURT: All right.  Okay, anything further?

14        MR. SKLAREW: I just have one comment, and this is

15   an offer, if you want to ask a question.  I will be here, so

16   this doesn't have be done now since one of the motions at

17   least is one that I primarily have been responsible for the

18   briefing.  I'll be back on the 12th with Mr. Shapiro absent

19   something crazy happening and if that happens, I'll try to

20   participate by telephone as you indicated we could.  But, I

21   just want to let you know, I am an assistant chief in the

22   trial section.  There's about - it always varies and I always

23   forget, but it's between 25 and 30 attorneys in the trial

24   section for the Northern Region, Northern Region is handling

25   this Central Region case because it was transferred from

1    Connecticut.  So normally we're up in different states, but

2    if you want to ask me anything about the staffing I'm here

3    and I just wanted to throw that out because you had a

4    question for Mr. Shapiro before.  I don't know whether it was

5    adequately answered, but I might have a little more to - just

6    to let you know if there's anything that that comes up on.

7         THE COURT: No.  Thank you.  Anything further?

8    Okay, thank you all.

9         ALL: Thank you, Your Honor.

10         THE COURT: Court is adjourned.

11         (Whereupon at 5:42 p.m. the hearing in this matter

12    was concluded for this date.)

13

14

15

16

17

18         I, Elaine M. Ryan, approved transcriber for the

19    United States Courts, certify that the foregoing is a correct

20    transcript from the electronic sound recording of the

21    proceedings in the above-entitled matter.

22

23    /s/ Elaine M. Ryan                        April 3, 2006
      Elaine M. Ryan
      2801 Faulkland Road
      Wilmington, DE 19808
      (302) 683-0221

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE
Clerk of the Court
824 Market Street
Wilmington DE 19801
(302) 252-2900

Date:  **May 9, 2006**

To:    Peter Dalleo, Clerk
       U. S. District Court
       District of Delaware
       U. S. Courthouse - 844 King Street
       Wilmington DE 19801

Re: **United States of America, Plaintiff, v.**
    **State Street Bank and Trust Co., as Indenture Trustee for Junior Subordinated**
    **Secured PIK Notes**
    **Scott Cable Communications, Inc. As Debtor in Possesion (Chapter 11)**
    **Allstate Insurance Co.**
    **Media/Communications Partners, L.P.**
    **Chestnut Street Partners, Inc.**
    **Milk Street Partners, Inc. and**
    **TA Investors**

    **Adv. Case # 01-4605**
    **AP#-06-34**
    **Bankruptcy Case 96-166**

    Enclosed please find the Motion for Leave to Appeal and related docket entries (AP#06-34) appealing Order Denying United States' Motion to Re-Transfer Venue Bank to Connecticut.

                                    Sincerely,

                                    David Bird, Clerk

By: Mary Ellen Behornar
       Deputy Clerk

Counsel:

United States of America

Peter Sklarew

Attorney, Tax Division

U.S.Department of Justice

P.O.Box 55

Washington, D.C. 20044

(202) 307-6571

Fax: (202) 514-5238

peter.a.sklarew@usdoj.gov


Ellen W. Slights

Assistant United States Attorney

Chase Manhattan Bank Centre

1201 Market Street, Suite 1100

P.O.Box 2046

Wilmington, Delaware 19899-2046

(302) 573-6277

ellen.w.slights@usdoj.gov


State Street Bank and Trust Co.

Shipman & Goodwin LLP

One Constitution Plaza

Hartford, CT 06103

(860) 251-5603

    Kathleen M. Lamanna

    klamanna@goodwin.com

    Marie Pollio

    mpollio@goodwin.com


Monzack and Monaco, P.A.

1201 Orange St., Suite 400

Wilmington, DE 19801

(302) 656-8162

Francis A. Monaco, Jr.
Fmonaco@monlaw.com
Kevin J. Mangan
kmangan@monlaw.com

Scott Cable Communications, Inc.
Akin Gump Strauss Hauer & Feld, LLP
590 Madison Avenue
New York, NY 10022
(212) 872-8000
Daniel H. Golden
dgolden@akingump.com
Abid Qureshi
aqureshi@akingump.com

Klett Rooney Lieber & Schorling
1000 West St., Suite 1410
Wilmington, DE 19801
(302) 552-4200
Teresa K.D.Currier
currier@klettrooney.com

Allstate Insurance Co.
Sidley Austin, LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
Guy S. Neal
gneal@sidley.com

Ashby & Geddes
222 Delaware Ave
17th Floor
Wilmington, DE 19899

(302) 654-1888

William P. Bowden
wbowden@ashby-geddes.com
Joseph C. Handlon
jhandlon@ashby-geddes.com

Media/Communications Partners, L.P.
Chestnut Street Partners, Inc.
Milk Street Partners, Inc.
TA Investors

Foley Hoag, LLP
Seaport World Trade Center West
155 Seaport Blvd.
Boston, MA 02210-2600

Andrew Z. Schwartz
azs@foleyhoag.com
Euripides Dalmanieras
edalmani@foleyhoag.com

Zuckerman Spaeder LLP
919 Market Street, Suite 1705
Wilmington, DE 19801
(302) 427-0400

Thomas Macauley
vguldi@zuckerman.com