**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

_____

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
|       ) | |
|     Plaintiff,    ) | Adv. Proc. No. 01-4605 (KJC) |
|       ) | |
| v.    ) | |
|       ) | |
| STATE STREET BANK AND TRUST CO.,  ) | RE: D.I. 414, 415, 416 |
| as Trustee for Junior Subordinated Secured  ) | |
| PIK Notes, *et al.*,    ) | |
|       ) | |
|     Defendants.    ) | |

_____ )

**JOINT OBJECTION OF MEDIA/COMMUNICATIONS PARTNERS, L.P.,
CHESTNUT STREET PARTNERS, INC., MILK STREET PARTNERS, INC.,
TA INVESTORS, AND ALLSTATE INSURANCE COMPANY TO
UNITED STATES' MOTION FOR LEAVE TO APPEAL INTERLOCUTORY
<u>ORDER DENYING SECOND MOTION TO RE-TRANSFER VENUE</u>**

**Table of Contents**

**Page**

Table of Authorities ..................................................................................................................ii

I.      Introduction ..................................................................................................................1

II.     Background ...................................................................................................................3

        A.      The Government's Unsuccessful Arguments Against Transfer To Delaware ........3

        B.      The Government's Unsuccessful Attempts To Reverse  Judge Shiff's
                Transfer Order ..........................................................................................................4

        C.      The Government's Unsuccessful First Re-Transfer Motion ...................................7

        D.      The Government's Unsuccessful Summary Judgment Motion .............................9

        E.      The Government's Recusal Motion .......................................................................9

        F.      Judge Walsh's Order Reassigning This Adversary Proceeding ...........................11

        G.      The Government's Second Re-Transfer Motion ..................................................11

        H.      Judge Carey's Rulings On Pre-Trial Motions .....................................................13

III.    Argument ....................................................................................................................14

        A.      This Court Has Uniformly Applied The Standard Set Forth In 28 U.S.C. §
                1292(b) To Determine Whether To Grant Interlocutory Review Under 28
                U.S.C. § 158(a)(3), Including When Deciding Motions For Leave To Appeal
                Orders Denying Transfer Of Bankruptcy Cases ...................................................14

        B.      The Government Has Not Met Its Burden Of Showing That Interlocutory
                Review Is Warranted ............................................................................................19

                1.      Venue Is Not A Controlling Issue In This Adversary Proceeding ............20

                2.      There Are No Substantial Grounds For Difference Of Opinion ...............21

                3.      Interlocutory Review Would Not Materially Advance The
                        Termination Of This Litigation ................................................................23

        C.      This Court Should Not Exercise "Pendent Appellate Jurisdiction" Over
                Venue Decisions Issued In 2001 ..........................................................................23

IV.     Conclusion ..................................................................................................................27

# Table of Authorities

Page

## Cases

Beckley Coal Mining Co., United Mine Workers of Am., 98 B.R. 690 (D. Del. 1988) .............. 15

Bowie Produce Co., Inc. v. Magic Am. Café, Inc. (In re Magic Rests, Inc.),
202 B.R. 24 (D. Del. 1996) ................................................................................................ 15

Christianson v. Colt Indus. Operating Corp., 486 U.S. 800 (1988)....................................... 24, 25

Coopers & Lybrand v. Livesay, 437 U.S. 463 (1978) ................................................................ 16

Dal-Tile Int'l, Inc. v. Color Tile, Inc., 203 B.R. 554 (D. Del. 1996) .......................................... 15

In re Delaware and Hudson Ry. Co., 96 B.R. 469 (D. Del. 1989) .................................. 15, 16, 17

E.I. DuPont de Nemours & Co., v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.,
269 F.3d 187 (3d Cir. 2001)................................................................................................ 24

In re Emerson Radio Corp., 173 B.R. 490 (D. N.J. 1994) ........................................................ 20

First Am. Bank of N.Y. v. Century Glove, Inc., 64 B.R. 958 (D. Del. 1986)............................. 15

Gulf Research & Dev. Co. v. Leahy, 98 F. Supp. 198 (D. Del. 1951) ................................... 24, 25

Hayman Cash Register Co. v. Sarokin, 669 F.2d 162 (3d Cir. 1982) ................................... 24, 25

Hechinger Liquidation Trust v. Fox (In re Hechinger Investment Co.), 296 B.R. 323 (Bankr. D.
Del. 2003)....................................................................................................................... 20, 21

In re Jackson Brook Institute, Inc., 227 B.R. 569 (D. Me. 1998)......................................... 16, 17

Jumara v. State Farms Ins. Co., 55 F.3d 876 (3d Cir. 1995)...................................................... 22

In re Kaiser Group Int'l, Inc., 307 B.R. 449 (D. Del. 2004) ..................................................... 25

Katz v. Carte Blanche Corp., 496 F.2d 747 (3d Cir. 1974) ...................................................... 20

In re Land, 215 B.R. 398 (8th Cir. B.A.P. 1997).................................................................. 17, 18

In re Landmark Capital Co., 20 B.R. 220 (S.D.N.Y. 1982)....................................................... 17

Mishkin v. Ageloff, 220 B.R. 784 (S.D.N.Y 1998).................................................................... 16

In re Moix-McNutt, 215 B.R. 405 (8th Cir. B.A.P. 1997)......................................................... 16

Nascone v. Spudnuts of Pa., Inc., 735 F.2d 763 (3d Cir. 1984)...................................................26

Northern Pipeline Constr. Co. v. Marathon Pipeline Co., 458 U.S. 50 (1982)...........................18

In re Orange Boat Sales, 239 B.R. 471 (S.D.N.Y. 1999)............................................................16

In re Steel Cattle, Inc., 101 B.R. 263 (D. Kan. 1988)................................................................17

Swint v. Chambers County Comm., 514 U.S. 35 (1977).............................................................24

In re Trim-Lean Meat Prods., 11 B.R. 1010 (D. Del. 1981).......................................................18

United States v. Inigo, 925 F.2d 641 (3d Cir. 1991)...................................................................20

United States v. State Street Bank and Trust Co. (In re Scott Cable Communications, Inc.),
263 B.R. 6 (Bankr. D. Conn. 2001).........................................................................................4

Victor v. Edison Bros. Stores, Inc. (In re Edison Bros. Stores, Inc.), No. 96-177-SLR, 1996 WL
363806 (D. Del. June 27, 1996)........................................................................................15, 16

## Statutes

28 U.S.C. § 157 ......................................................................................................................17

28 U.S.C. § 158 ................................................................................................................. passim

28 U.S.C. § 1292 ............................................................................................................... passim

28 U.S.C. § 1334......................................................................................................................18

28 U.S.C. § 1412...................................................................................................................20, 21

## Federal Rules of Bankruptcy Procedure

Fed. R. Bankr. P. 7087.............................................................................................................20

Fed. R. Bankr. P. 8003 ..............................................................................................................1

# I.    INTRODUCTION

Pursuant to Fed. R. Bankr. P. 8003, Intervenor-Defendants Media/Communications Partners, L.P., Milk Street Partners, Inc., Chestnut Street Partners, Inc., TA Investors, and Allstate Insurance Company (collectively, "Intervenor-Defendants") submit this Joint Objection to the "United States' Motion That District Court Grant Leave To Appeal 4/10/06 Order Denying Motion To Transfer Back To Connecticut In Light Of Re-Assignment Of Judge."

Over the last five years, four different judges, in three different courts, located in two different circuits, have ruled that a trial on the merits of this now over seven and one-half year old adversary proceeding should occur in the United States Bankruptcy Court for the District of Delaware. With Delaware Bankruptcy Judge Carey recently having granted the government's request for a four week delay of the start of trial, until June 12, 2006, the government has chosen to use this additional time to seek a fifth bite at the transfer apple. This Court should not entertain an interlocutory appeal concerning venue of a long-pending case that is finally on the verge of trial. This case should go to trial next month as scheduled in the Bankruptcy Court for this District.

Connecticut Bankruptcy Judge Shiff transferred this adversary proceeding to this District in June 2001 over the government's objections, and Connecticut District Judge Thompson declined to reverse that transfer on appeal. After this case was assigned to Bankruptcy Judge Walsh in this District, the government in September 2001 moved for re-transfer back to Connecticut asserting, among other grounds, that Judge Walsh would have to recuse himself because he presided over the Debtor's 1996 bankruptcy proceeding. In denying the government's first re-transfer motion in December 2001, Judge Walsh advised the government twice that it was free to bring a recusal motion. The government declined to do so for four years, while it received a series of favorable discovery rulings from Judge Walsh. But having been

defeated on summary judgment in July 2005, and with Judge Walsh having stated in that context that this case presents a "close question" (Tr. of July 22, 2005 Hr'g, at 5), the government seized on what it perceived as an opportunity to shift the matter to a new judge by filing a recusal motion on December 23, 2005.

On January 27, 2006, Judge Walsh issued an order in which he stated that the government's recusal motion was untimely and lacked merit, but he nevertheless reassigned the case to Bankruptcy Judge Carey in this District in order to moot a potential appellate issue and to preserve a near term trial date. No sooner did this case get reassigned to Judge Carey than the government filed a second re-transfer motion. This was just one of several eleventh-hour efforts by the government to delay the trial of an adversary proceeding that it commenced in November 1998, but has no interest in trying anytime soon. Following extensive briefing, Judge Carey denied the government's second re-transfer motion at a hearing on March 29, 2006, thereby becoming the fourth judge to reject the government's arguments that this case should be tried in the District of Connecticut. Trial is now scheduled to begin before Judge Carey in this District in less than six weeks.

Against this backdrop, the government's motion for leave to take an interlocutory appeal of the denial of its second re-transfer motion should be denied for any number of reasons. Whatever the standard for deciding whether to grant leave to pursue an interlocutory appeal, the standard of review on an appeal from an order denying re-transfer is abuse of discretion, and there is no reasonable likelihood that the government will satisfy that standard here. Further, the District Court for the District of Delaware has applied the standard set forth in 28 U.S.C. § 1292(b) in determining whether to grant a motion for an interlocutory appeal in bankruptcy matters, and the government cannot satisfy that standard either: Judge Carey's denial of the

government's second re-transfer motion does not give rise to a controlling issue of law as to which there are substantial grounds for difference of opinion, and an appeal on the eve of trial would not materially advance the termination of this litigation.  The government cannot show that it will suffer an adverse judgment on account of this adversary proceeding being tried in Wilmington, which is over 150 miles closer to its headquarters than Bridgeport, Connecticut. Any belated contention concerning the location of non-party witnesses has been sufficiently addressed by Judge Carey granting the government leave to take last-minute depositions, years after the discovery deadline lapsed.

Moreover, this Court should not exercise "pendent appellate jurisdiction" of the venue orders which were issued in two different bankruptcy courts in 2001.  Judge Carey properly denied the government's second re-transfer motion based on the facts and circumstances before him, not based on the record before three other judges in 2001.  Judge Shiff's original order transferring this adversary proceeding to this District was left undisturbed by Connecticut District Judge Thompson five years ago.  The government failed to seek interlocutory review of Judge Walsh's denial of the government's first re-transfer motion when it had the opportunity to do so, four and one-half years ago.  The time has come to put an end to the government's procedural machinations and finally proceed to the upcoming trial on the merits in this District.

## II.    BACKGROUND

### A.    The Government's Unsuccessful Arguments Against Transfer To Delaware

The government commenced this adversary proceeding in the United States Bankruptcy Court for the District of Connecticut in November 1998.  Its amended complaint seeks unprecedented relief -- the recharacterization or equitable subordination of debt securities issued

pursuant to a Chapter 11 plan of reorganization that the Bankruptcy Court for the District of

Delaware confirmed in December 1996.[1]

On May 22, 2001, nearly five years ago, Connecticut Bankruptcy Judge Shiff issued an

Order To Show Cause Why This Case Should Not Be Transferred To The District Of Delaware.

On May 29, 2001, the government filed a response, asserting that Judge Shiff lacked authority to

transfer this adversary proceeding <u>sua</u> <u>sponte</u>; that transfer would be untimely in "that the

bankruptcy rules did not contemplate transferring this case to another venue after so much of the

estate has been administered in one forum"; and that Delaware Bankruptcy Judge Walsh might

have to recuse himself if he had personal knowledge of the events in the Debtor's 1996

bankruptcy.  (Docket No. 328, at Ex. A.)

On June 7, 2001, Connecticut Bankruptcy Judge Shiff issued a decision and order

rejecting the government's jurisdictional, timeliness, and recusal arguments, and transferring this

adversary proceeding to this District.  <u>United States v. State Street Bank and Trust Co. (In re</u>

<u>Scott Cable Communications, Inc.)</u>, 263 B.R. 6, 9 (Bankr. D. Conn. 2001).  Judge Shiff found

that the interests of justice would be served if the Delaware Bankruptcy Court "determine[d]

what it would have done had the IRS objected to confirmation of the Delaware Plan."  (<u>Id.</u>)

### B.    The Government's Unsuccessful Attempts To Reverse  Judge Shiff's Transfer Order

The government then filed a motion for leave to appeal Judge Shiff's transfer order to the

Connecticut District Court.  During an August 30, 2001 hearing before Connecticut District

---

[1] In moving for leave to appeal Judge Carey's order denying its second re-transfer motion, the government has been unable to resist the temptation to argue the merits of its claims.  The Intervenor-Defendants will not respond in detail to the government's assertions on the merits here, as they are largely irrelevant to whether the government has carried its burden of showing that interlocutory review of a procedural order is warranted.  Suffice to say that, for all the government's allegations of  a "schemes," "conflicts of interest," and "fraud," Judge Walsh determined that this case presented a "close question" when he denied the government's voluminous summary judgment motion in July 2005.

Judge Thompson, the government again advanced its jurisdictional, timeliness, and recusal arguments. In arguing for interlocutory review, the government was unequivocal that Judge Shiff's transfer order would **not** present an appellate issue following a decision on the merits:

> There is no way that the government could argue that this transfer somehow would result in a different outcome of what happens in Delaware on the merits. There is just no conceivable way that you could argue that it's reviewable if it's not reviewed now as a collateral order.

(Tr. of Aug. 30, 2001 Hr'g, at 29-30, attached as Ex. A hereto.)

The government also made clear that, as far as administering the Debtor's estate, resolution of this adversary proceeding was all that remained:

> But there is nothing to be administered [in Connecticut]. This is the heart of the case. The determination of this adversary proceeding will determine what happens in this bankruptcy case and that really is the heart and soul of what's at issue here.
>
> * * *
>
> There is nothing left to be done in this case other than to adjudicate the adversary proceeding and then to distribute the money according to the outcome of that adversary proceeding.

(Id. at 7, 32.)

Judge Thompson denied leave to appeal, ruling that Judge Shiff had the power to transfer the adversary proceeding sua sponte, and explicitly holding that Judge Shiff acted in the interest of justice in transferring the adversary proceeding:

> I'm going to deny the motion for leave to appeal and my reasons are substantially the reasons set forth in the oppositions by the debtor and the indenture trustee. I don't believe that the bankruptcy court's action was inconsistent with the district court's order on the last go around.
>
> Although when I read Judge Shiff's opinion, I don't see the analysis on interest of justice that I think is . . . in the record explicitly spelled out. It does seem to me that he acted in the interest of justice in deciding to transfer this case.

> As was pointed out by counsel for the trustee, this is an unusual situation. ***It is a situation where the affairs of what happened in Delaware will be attacked. I can see it as quite reasonable for a judge to conclude that it's most appropriate for the Delaware bankruptcy court to have a shot at making the decision.***

(Id. at 41-42) (emphasis added).

Judge Thompson also rejected each of the government's arguments that Judge Shiff's order was appealable (1) by writ of mandamus, (2) as a collateral order, and (3) under 28 U.S.C. § 158(a)(3), as informed by the standard set forth in 28 U.S.C. § 1292(b):

> I don't know that I really have to get into whether I have the power to mandamus the bankruptcy court whether it was acting outside of its jurisdiction because I think the interest of justice are clearly -- I'll say this: ***I think it's clear that Judge Shiff did not abuse his discretion in acting in what he perceived the interest of justice and there is more than a reasonable basis for him to transfer the case for that reason.***

> I don't think the requirements under the collateral order doctrine are satisfied. I really don't see this as being an important issue in the context of this case. I think trustee's counsel got it right when you say it's got to be decided by one competent bankruptcy judge or another competent bankruptcy judge. As to the third prong, I won't go into all the verbiage, but I think the government also fails to satisfy that prong as well.

> ***And as to the interlocutory appeal, 158(a)(3), I do not see how granting leave to appeal is going to advance the litigation. And I don't see how we are dealing with a controlling question of law either.***

(Id. at 42) (emphasis added). Judge Thompson also stated that he "didn't think that Judge Shiff's [transfer] order was inconsistent with my order remanding the case," referring to Judge Thompson's reversal of Judge Shiff's summary judgment decision dismissing the adversary proceeding on res judicata grounds. (Id. at 4.) Finally, as Judge Walsh of this District would do four and one-half years later when the issue was presented frontally to him, Judge Thompson found that the government's recusal arguments were "not persuasive." (Id. at 41.)

- 6 -

In its 49-page brief in support of the instant motion for leave to appeal, the government allocates only a single paragraph (Pl.'s Br., at 9-10) to Judge Thompson's August 30, 2001 decision, in which he denied leave to appeal and stated unequivocally that it was "clear that Judge Shiff did not abuse his discretion in acting in what he perceived the interest of justice and there is more than a reasonable basis for him to transfer the case for that reason."[2]

## C.     The Government's Unsuccessful First Re-Transfer Motion

On September 13, 2001, two weeks after Judge Thompson's ruling regarding transfer to this District, the government filed its first re-transfer motion, raising essentially the same arguments it raised in the Connecticut Bankruptcy and District Courts, albeit with different emphasis.  (Docket No. 57.)  First, the government argued that Delaware was not the correct forum, though it conceded that "many of the traditional factors regarding transfer of venue are not relevant to the question before this Court."  (Id. at 10-11.)  Second, the government reiterated its argument that Judge Shiff had no authority to transfer an adversary proceeding sua sponte.  (Id. at 11-12.)  Third, the government claimed that it did not "believe that the bankruptcy rules contemplate transferring this proceeding to another district after so much of the law of the case has been developed in one district."  (Id. at 13.)  At that time, discovery in this adversary proceeding had not yet commenced and six of the seven defendants had not yet intervened.  The government relegated its recusal argument, which had consumed the majority of its brief in the Connecticut Bankruptcy Court, to a footnote.  (See id. at 8-9 n.6.)

---

[2] The government claims that "[t]echnically, the transfer was not 'upheld on appeal,' but rather leave to take an interlocutory appeal was denied."  (Pl.'s Br., at 27.)  While "technically" that may be true, it is apparent that, in denying the government leave to pursue an interlocutory appeal in 2001, Judge Thompson considered the merits of the proposed appeal.  Judge Thompson's conclusion that Judge Shiff did not abuse his discretion in transferring the adversary proceeding shows that, had leave to appeal been granted, Judge Shiff's transfer order would have been affirmed on its merits.

On December 19, 2001, Bankruptcy Judge Walsh of this District denied the government's first re-transfer motion from the bench, rejecting the government's various arguments, and stating that he did not believe that he had the authority to re-transfer this adversary proceeding:

> [M]y understanding of the law is that an order transferring venue is not an appealable order.  But, in any event, you got a hearing before the District Court judge in Connecticut . . .  And the District Judge, I guess in effect, denied your request for an interlocutory appeal and basically said that Judge Shiff did not abuse his discretion in transferring the case.
>
> And, in that context, it would seem highly inappropriate for me to send the case back to Connecticut because it, in effect, would be saying to Judge Shiff that I didn't agree with what he did nor did I agree with the District Court, what the District Court did on appeal.  And I just don't think that the transferee court has that kind of discretion to send the case back.

(Tr. of Dec. 19, 2001 Hr'g, at 15-16, attached at Ex. B hereto.)  The government did not seek leave to appeal Judge Walsh's denial of its first re-transfer motion.

At the December 19, 2001 hearing before Judge Walsh, the government also explained its position on recusal:

> And there is another argument . . . that has to do with the appearance as opposed to actual partiality.  Again, that might be a fine distinction.  But it is a statutory distinction.  So I don't want you to be left with the impression that we were suggesting any actual bias or predisposition or even necessarily that these other things that I've indicated that we were concerned about are actually true.  We just wanted you to realize that we were thinking of them and hoped that you would think of them too.  I'm sure that we will be getting a good decision no matter what the decision is from you.  Thank you.

(Id. at 14.)  The Court responded as follows:

> With respect to the recusal matter, obviously that issue is not before me.  But I must confess, at this stage, the only thing I know about this case is I have a vague recollection about it.  It goes back to 1996.  And I've had probably several hundred confirmation hearings since then.  And I can safely say that I don't remember a thing about the confirmation issues in that case back in 1996.

- 8 -

> But I'm not -- if the Government wants to file a motion seeking recusal,
> they are certainly free to do so. . . .  But, in any event, that issue is not
> before me.

(Id. at 16-17.)  At the conclusion of the December 19, 2001 hearing, the Court reiterated that "the

Government can file whatever motion it deems appropriate regarding recusal."  (Id. at 25.)   The

government failed to do so for over four years.

**D.     The Government's Unsuccessful Summary Judgment Motion**

On December 1, 2004, after three years of discovery overseen by Judge Walsh in this

District, the government filed a 166-page summary judgment submission.  On July 22, 2005,

Judge Walsh denied the government's summary judgment motion from the bench, ruling that

there were disputed issues of material fact that precluded entry of summary judgment.  (Tr. of

July 22, 2005 Hr'g, at 5, Docket No. 318.)  After spending the "equivalent of four full days

reviewing the motion papers" (id. at 5-6), Judge Walsh concluded that the case presented a

"close question."  (Id. at 3.)  The Court then re-scheduled trial, which had been previously

scheduled for October 2005, to commence on May 8, 2006, without any objection from the

government.  (Id. at 13.)

**E.     The Government's Recusal Motion**

On November 28, 2005, Judge Walsh convened a telephonic status conference where he

advised counsel for the parties that, due to a conflict in the Court's schedule, trial would either

have to be rescheduled for April or October 2006, or be transferred to one of the four new

bankruptcy judges in Delaware, thereby preserving the previously scheduled May 8, 2006 trial

date.  "The government, of course, indicated that it was not available to push the trial ahead to

April 2006." (Docket No. 328, at 2.)[3]  The Court then requested that the parties submit their positions in writing as to whether to postpone the trial until October 2006, or to reassign the adversary proceeding to another judge.

In its December 1, 2005 letter to the Court, the government wrote that it had "no objections" either to postponing the trial or reassigning the case, but noted "that reassignment would eliminate, as a potential ground for appeal if the government does not prevail on the merits, one of the arguments the government made in opposing transfer of venue from Connecticut, and moving for re-transfer back to Connecticut." (Dec. 1, 2005 Letter to Judge Walsh from Alan Shapiro, Esq., Docket No. 319.) This was the first time that the government had alluded to recusal since December 2001. The government did not, however, indicate that it would seek Judge Walsh's recusal before trial, much less did it indicate that it would again seek re-transfer of this adversary proceeding if Judge Walsh reassigned this matter to another Delaware Bankruptcy Judge.

During a telephonic status conference on December 5, 2005, Judge Walsh gave the government twenty days to take a definitive position on the recusal issue. On December 23, 2005, four years after first raising the issue with Judge Walsh, the government filed a motion requesting that Judge Walsh recuse himself and that "the case [be] reassigned." (Docket No. 322, at 28.) The government said nothing at the time about filing a another re-transfer motion if the matter were reassigned. The defendants opposed the government's recusal motion.[4]

---

[3] In claiming in November 2005 that it was unable to try this case in April 2006, the government reversed the position it had taken in July 2005, when it advised Judge Walsh that it could be available for trial in April 2006. (Tr. of July 22, 2005 Hr'g, at 13.)

[4] The government has admitted that it would not have raised the recusal issue in 2005 but for the fortuity of Judge Walsh developing a scheduling conflict, claiming it had "overlooked" the issue until being reminded of it when Judge Walsh's scheduling conflict arose. (Docket No. 322, at 14 n.11.)

### F.    Judge Walsh's Order Reassigning This Adversary Proceeding

On January 27, 2006, Judge Walsh issued a letter informing counsel for the parties that he was reassigning this adversary proceeding to Judge Carey.[5]  Judge Walsh twice commented in his letter ruling that the government's recusal motion lacked merit because it was (1) untimely and (2) based on speculation.  (Docket No. 328, at 1-2.)  That notwithstanding, Judge Walsh reassigned the case to Judge Carey in the event an appellate court might view the recusal issue differently, and because it was "in the interest of all parties that [this case] be tried sooner rather than later.  The sooner can be achieved by sticking with the present trial schedule (starting May 8, 2006)."  (Id. at 2-3.)

### G.    The Government's Second Re-Transfer Motion

Two weeks later, on February 10, 2006, the government filed its second re-transfer motion seeking to have this case transferred back to the Connecticut Bankruptcy Court.  As noted above, at the time it moved for recusal and suggested reassignment to another Delaware Bankruptcy Judge, the government did not disclose that it would seek re-transfer if Judge Walsh reassigned the case to another Delaware Bankruptcy Judge.

On February 13, 2006, Judge Carey held a previously scheduled status conference during which, among other things, all parties, including the government, agreed to a pre-trial briefing schedule and reaffirmed their commitment to a trial commencing on May 8, 2006.  (Tr. of Feb. 13, 2006 Hr'g, at 35-38, Docket No. 334.)  During this conference, Judge Carey acknowledged that the government had filed its second re-transfer motion.  In advance of deciding the motion, Judge Carey asked the parties whether they would "have an objection to my calling Judge Shiff and asking whether if I were to decide to transfer, retransfer the case, whether the [May 8, 2006]

---

[5] Judge Carey is one of the four "new" Bankruptcy Judges in Delaware.  However, he is an experienced jurist, having previously been sitting as a Bankruptcy Judge in the Eastern District of Pennsylvania.

trial date could be preserved." (Id. at 38.) The government's counsel objected, asserting that the state of Judge Shiff's case load "should [not] impact your decision on the [retransfer] motion whatsoever." (Id.) Judge Carey then indicated that, absent the government's consent, he would not place the call.[6]

On February 24, 2006, defendants filed objections to the government's second re-transfer motion, arguing, among other things, that the motion was untimely, that allowing the motion would inevitably delay a long-scheduled trial in this already protracted adversary proceeding and cause all the parties further expenses. Defendants also argued that it would be contrary to the interests of justice for the Court to respond favorably to the government's judge-shopping, especially where the government had failed to disclose that it would move again for re-transfer if Judge Walsh reassigned the matter to another Delaware Bankruptcy Judge, as the government had requested. (Docket Nos. 335, 336, 337.)

Following extensive briefing and a hearing on March 29, 2006 that lasted almost four hours, Judge Carey denied the government's second re-transfer motion. An order to that effect was entered on April 10, 2006. Judge Carey rejected the government's argument that its motion be treated as "essentially a motion to reconsider the transfer here in the first place because it no longer has the reason it was transferred here," stating that that he would not reconsider the decisions by Judges Shiff and Thompson: "I cannot view it that way. That decision was made and then upheld on appeal, and I will not consider it in that vein." (Tr. of March 29, 2006 Hr'g, at 61, Docket No. 405.) Judge Carey also rejected the assertion that it was defendants' burden to prove that this adversary proceeding should not be re-transferred, explaining to the government

---

[6] The Intervenor-Defendants had no objection to Judge Carey calling Judge Shiff. (Docket No. 337, at 20 n.3.)

that: "You are the moving party.  You asked the Court to move it elsewhere.  You carry the burden -- ."  (Id. at 62.)

**H.    Judge Carey's Rulings On Pre-Trial Motions**

At a hearing on April 12, 2006 that lasted almost five hours, and again following extensive briefing, Judge Carey ruled on eight pre-trial motions, certain of which bear upon the instant motion for leave to appeal.  First, Judge Carey, at the government's insistence, "reluctantly" postponed the start of the three-week trial from May 8, 2006 until June 12, 2006.  (Tr. of Apr. 12, 2006 Hr'g, at 153.)  The government had claimed that it would be unprepared for a trial beginning on May 8, 2006, notwithstanding that Judge Walsh had set that trial date nine months earlier on July 22, 2005, and the government had represented to Judge Carey as recently as February 13, 2006 that it would be ready for trial on May 8.  Judge Carey explained that his ability to accommodate the government's request to delay trial was "strictly as a result of the fact that [he was] new [in this District] and ha[d] some open dates."  (Tr. of Mar. 29, 2006 Hr'g, at 134.)  The government had "recommended" that the start of the trial be pushed until July 2006 at the earliest.  (Tr. of Apr. 12, 2006 Hr'g, at 152.)[7]

Judge Carey also granted the government leave to depose up to four non-party witnesses prior to trial "for the limited purpose of establishing foundation" for certain documents.  (Id. at 103, 135, 166.)  Three of these non-parties live within 100 miles of the Bankruptcy Court in Bridgeport, Connecticut, and the government had argued that re-transfer was necessary in order to make these witnesses subject to compulsory process.  By permitting the government to take

---

[7] That was the government's fall-back position.  Its primary position was that the trial should be delayed until forty-five days after it had concluded taking an indefinite number of "trial depositions."  (Docket No. 357, at 2.)

these depositions, Judge Carey mooted the "most important factor," from the government's

perspective, allegedly favoring re-transfer to Connecticut.[8]

Additionally, Judge Carey granted, over the government's objections, defendants'

motions to exclude from trial one of the government's experts, granted defendants leave to

depose an IRS attorney prior to trial, and ruled that the government had to produce another two

IRS attorneys at trial.

Under Judge Carey's pre-trial scheduling order, the parties are required to exchange

witness lists on May 18, 2006 and a joint pre-trial order is due on June 7, 2006. A final pre-trial

conference is set for June 8, 2006, four days before the commencement of trial.

## III.    ARGUMENT

### A.    This Court Has Uniformly Applied The Standard Set Forth In 28 U.S.C. § 1292(b) To Determine Whether To Grant Interlocutory Review Under 28 U.S.C. § 158(a)(3), Including When Deciding Motions For Leave To Appeal Orders Denying Transfer Of Bankruptcy Cases

The government asserts that there are "conflicting legal standards for determining

whether to grant interlocutory appeal," (Pl.'s Br., at 30), but fails to cite a single Third Circuit or

Delaware District Court case that applied 28 U.S.C. § 158(a)(3) without reference to the standard

set forth in 28 U.S.C. § 1292(b). The government's inability to find evidence of such a

"conflict" in this District or Circuit is not surprising, as the overwhelming weight of relevant

authority shows that the standard for granting review under Section 158(a)(3) is the same as that

under Section 1292(b).

A long line of Delaware District Court decisions have utilized the standard set forth in

Section 1292(b) to determine whether to grant leave to appeal interlocutory orders under Section

---

[8] During oral argument before Judge Carey on the government's second re-transfer motion, the government's counsel stated: "So, proximity of the witnesses, I think, favors transfer on the availability of compulsory process. I think that's the most important factor." (Tr. of March 29, 2006 Hr'g, at 14, Docket No. 405.)

158(a)(3).  See, e.g., Dal-Tile Int'l, Inc. v. Color Tile, Inc., 203 B.R. 554, 557 (D. Del. 1996)

("Because section 158(a) does not provide criteria for determining when leave to appeal should

be granted, this Court has held that the standards set forth in 28 U.S.C. § 1292(b) governing

interlocutory appeals from district courts"; denying leave to appeal); Bowie Produce Co., Inc. v.

Magic Am. Café, Inc. (In re Magic Rests., Inc.), 202 B.R. 24, 26 (D. Del. 1996) (applying

Section 1292(b) standard and denying leave to appeal under Section 158(a)(3)) (Farnan, J.);

Victor v. Edison Bros. Stores, Inc. (In re Edison Bros. Stores, Inc.), No. 96-177-SLR, 1996 WL

363806, at *3 (D. Del. June 27, 1996) (Robinson, J.) (same); In re Delaware and Hudson Ry.

Co., 96 B.R. 469, 472-73 (D. Del.) (applying Section 1292(b) standard and denying leave to

appeal to order denying transfer of bankruptcy case to Northern District of New York), aff'd,

884 F.2d 1383 (3d Cir. ), and aff'd, 884 F.3d 1384 (3d Cir. 1989); Beckley Coal Mining Co., v.

United Mine Workers of Am., 98 B.R. 690, 692 (D. Del. 1988) (applying Section 1292(b)

standard); First Am. Bank of N.Y. v. Century Glove, Inc., 64 B.R. 958, 961-63 (D. Del. 1986)

(applying Section 1292(b) standard and denying leave to appeal under Section 158(a)(3)).

    These decisions hold that an appeal under Section 158(a)(3) will be granted only where

an interlocutory order (1) involves a controlling question of law as to which there is (2)

substantial grounds for difference of opinion and (3) when an immediate appeal from the order

may materially advance the ultimate termination of the litigation.  See, e.g., Dal-Tile, 203 B.R. at

557; Magic Rests., 202 B.R. at 26; Delaware and Hudson, 96 B.R. at 473.  Thus, consistent with

Section 1292(b), a district court will entertain an appeal under Section 158(a)(3) "only where the

appellant establishes exceptional circumstances [that] justify departure from the basic policy of

postponing review until after entry of final judgment."  Delaware and Hudson, 96 B.R. at 473

(citing <u>Coopers & Lybrand v. Livesay</u>, 437 U.S. 463, 475 (1978)); <u>see also</u> <u>Edison Bros.</u>, 1996 WL 363806, at *3 (same).

The government fails to address any of these decisions. Most conspicuously, it ignores this Court's ruling in <u>Delaware and Hudson</u> which denied leave to appeal a bankruptcy court order denying transfer of a bankruptcy case, a decision that was affirmed by the Third Circuit. <u>Delaware and Hudson</u> held that the appellant had failed to satisfy any of the three requirements for review of an interlocutory order, and stated that the bankruptcy court's decision denying transfer was based upon "a careful examination of the relevant facts" which were weighed "appropriately with respect to the interests of justice and the convenience of the parties." 96 B.R. at 473. Nor were there any "exceptional circumstances" justifying immediate review, as the appellant's alleged "financial restrictions" did not warrant transferring the bankruptcy case closer to appellant's headquarters. <u>Id.</u>

Instead of discussing decisions from this Court, the government looks outside this District and the Third Circuit for decisions it claims stand for the proposition that district courts have broader discretion under Section 158(a)(3) than the Section 1292(b) standard would confer. (Pl.'s Br., at 31-32.) To the extent these decisions are contrary to this Court's precedents (and some of them are not), they should be rejected.[9]

_____

[9] A close examination of these cases shows that their holdings are either (a) limited to their specific facts, <u>see</u> <u>Mishkin v. Ageloff</u>, 220 B.R. 784, 790-92 (S.D.N.Y. 1998) (acknowledging numerous Second Circuit cases incorporating Section 1292(b) standard under Section 158(a)(3); granting leave to appeal given "unique set of circumstances"); <u>In re Moix-McNutt</u>, 215 B.R. 405, 409 (8th Cir. B.A.P. 1997) ("While we would ordinarily deny the appellant leave to appeal, we are persuaded that the unique procedural posture of this case warrants immediate judicial review"), or (b) the facts of these cases would have satisfied the Section 1292(b) standard as well as the so-called "more flexible approach." <u>See</u> <u>In re Orange Boat Sales</u>, 239 B.R. 471, 474 (S.D.N.Y. 1999) (granting leave to appeal under both 1292(b) and "more flexible approach" standards); <u>In re Jackson Brook Institute, Inc.</u>, 227 B.R. 569, 581-82 (D. Me. 1998) (applying the 3-pronged 1292(b) standard and granting leave to appeal, but denying appeal on the merits).

The government also attempts to obscure the distinction between a bankruptcy case and an adversary proceeding by arguing that appeals of venue orders should "be more readily heard in a title 11 case since there is only a 'very small chance of success' on an appeal taken after the case is over." (Pl.'s Br., at 32.)  In the first place, this adversary proceeding is not a "case under title 11" but instead a discrete proceeding "arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 157(a).  Aside from that important statutory and practical consideration, the same argument the government makes out of context here was deemed "unpersuasive" by the Delaware and Hudson court because "[a] wrongly decided transfer motion can be asserted as grounds for error on appeal from final judgment and thus need not be appealed immediately."  96 B.R. at 472 (denying leave to appeal denial of transfer of Chapter 11 case).

The government fails to cite a single decision where any court granted leave to appeal an order denying transfer, or re-transfer, of an *adversary proceeding*.  The cases cited on page 32 of the government's brief stand only for the practice of some courts to entertain early appeals of venue orders involving *bankruptcy cases*, not adversary proceedings, before any significant case administration has commenced.  See, e.g., In re Steele Cattle, Inc., 101 B.R. 263 (D. Kan. 1988) (affirming order, issued six weeks after petitions filed, transferring consolidated Chapter 11 cases within the same district); In re Landmark Capital Co., 20 B.R. 220, 225 (S.D.N.Y. 1982) (transfer order issued three months after Chapter 11 case commenced); In re Land, 215 B.R. 398, 402 (8th Cir. B.A.P. 1997) (affirming order denying transfer of Chapter 13 cases issued two months after case commenced).  These courts reasoned that, absent early review, "the bankruptcy court may issue rulings during the pendency of the case, dividends will be paid to the creditors, and the Chapter 13 [or other] trustee will be paid the percentage fee," and this activity may have to be unwound if venue was ultimately deemed improper.  Land, 215 B.R. at 402.

- 17 -

None of these factors is implicated here.  The Connecticut Bankruptcy Court maintains venue over the Chapter 11 bankruptcy case, which has never been transferred anywhere.  There is no compelling reason why this adversary proceeding should be litigated in Connecticut, however, particularly given its genesis in an order of the Delaware Bankruptcy Court.  The Debtor's assets were sold eight years ago, and all secured creditors, other than the noteholder defendants in this adversary proceeding, have had their claims paid in full.  Regardless of the outcome of this adversary proceeding, there will be insufficient proceeds to allow for a distribution to general unsecured creditors and, accordingly, there will be no claims reconciliation process in the Connecticut bankruptcy case.  As the government's counsel conceded almost five years ago to Judge Thompson: "There is nothing left to be done in this case other than to adjudicate the adversary proceeding and then to distribute the money according to the outcome of th[is] adversary proceeding."  (Tr. of Aug. 30, 2001 Hr'g, at 32.)

The government is left to argue that leave to appeal should be granted now because an appellate court might be disinclined to order a "do over" if the government suffers an adverse judgment following trial of the adversary proceeding.  (Pl.'s Br., at 32-33.)[10]  But this argument, which can be made in support of review of virtually every interlocutory order, is insufficient to warrant a piecemeal appeal.  That the government may face a "small chance" of reversing an adverse judgment on the merits on venue grounds is not so much a reflection of the amount of resources that will be expended at trial, but of the fact that the government will not be able to show that it lost this case because of where it was litigated, especially given Judge Carey's ruling

---

[10] The government cites to a footnote in In re Trim-Lean Meat Prods., 11 B.R. 1010 (D. Del. 1981) in support of this argument, but there is no discussion in that footnote, or in any other section of the opinion, about a "small chance of success" on appeal being a factor in whether to grant interlocutory review.  11 B.R. at 1111 n.1.  In Trim-Lean, the Court affirmed a bankruptcy court order denying transfer to Illinois, after concluding that jurisdiction existed under former 28 U.S.C. § 1334(b).  This decision pre-dates 28 U.S.C. § 158(a)(3), which was enacted after the Supreme Court's decision in Northern Pipeline Constr. Co. Marathon Pipeline Co., 458 U.S. 50 (1982), and it does not provide an explanation of the standard applied in granting the appeal.

granting the government leave to take additional depositions of witnesses located within 100 miles of Bridgeport, Connecticut. Notably, the government conceded, when seeking to appeal Judge Shiff's original transfer order, that the venue where this adversary proceeding is tried could not later be argued to be outcome determinative. (Tr. of Aug. 30, 2001 Hr'g, at 29-30.)

The government's purported concern about wasting "a huge commitment of judicial resources" rings hollow. For over four years, Judge Walsh presided over expert and fact discovery, ruled on a series of discovery and other motions, and spent over four days reviewing the government's massive 166-page summary judgment submission before denying it. Had the government moved for recusal back in 2001, when Judge Walsh twice expressly invited it to do so, a waste of judicial resources might have been avoided. Instead, the government waited until shortly before trial to move for recusal, and then as soon as Judge Walsh -- at the government's request -- reassigned this adversary proceeding to Judge Carey, the government moved for the second time to have the adversary proceeding re-transferred. To date, Judge Carey has reviewed numerous briefs and declarations, ruled on the government's second re-transfer motion and eight other pre-trial motions, and presided over two hearings and a status conference that spanned some ten hours combined. At this juncture, Judge Carey is plainly the judge best informed about the merits of this adversary proceeding. If this adversary proceeding is re-transferred, Judge Carey's substantial efforts would have been for naught, and Judge Shiff (or another judge) would have to invest substantial resources to get up to speed and prepare this case for trial at some indefinite later date.

**B.     The Government Has Not Met Its Burden Of Showing That Interlocutory Review Is Warranted**

Judge Carey applied the proper legal standard and correctly ruled that the government had the burden of showing that re-transfer was appropriate. A bankruptcy court may transfer an

adversary proceeding if it is in "the interest of justice or for the convenience of the parties." 28

U.S.C. § 1412; <u>see</u> <u>also</u> Fed. R. Bankr. P. 7087. "The decision of whether venue should be

transferred lies within the sound discretion of the Court, though the moving party must

demonstrate by a preponderance of the evidence that such a change is a warranted." <u>Hechinger</u>

<u>Liquidation Trust v. Fox (In re Hechinger Inv. Co.)</u>, 296 B.R. 323, 325 (Bankr. D. Del. 2003)

(denying transfer motion); <u>see also</u> <u>In re Emerson Radio Corp.</u>, 173 B.R. 490, 495 (D. N.J. 1994)

(party seeking to transfer venue of bankruptcy proceeding bears burden of proving by a

preponderance of evidence that transfer is warranted), <u>aff'd</u>, 52 F.3d 50, 56 (3d Cir. 1995). A

denial of a motion to transfer venue is reviewed on appeal for abuse of discretion. <u>See, e.g.</u>,

<u>United States v. Inigo</u>, 925 F.2d 641, 654 (3d Cir. 1991).

**1.    Venue Is Not A Controlling Issue In This Adversary Proceeding**

A controlling issue of law involves a ruling which, if erroneous, would be reversible error

on final appeal. <u>See, e.g.</u>, <u>Katz v. Carte Blanche Corp.</u>, 496 F.2d 747, 755 (3d Cir. 1974) (en

banc). As Judge Thompson found almost five years ago, venue does not present a controlling

issue of law because this adversary proceeding is going "to be decided by one competent

bankruptcy judge or another competent bankruptcy judge." (Tr. of Aug. 30, 2001 Hr'g, at 42.)

That statement is as true now as it was five years ago.

It is inconceivable that the government could ever prove reversible error in having to try

a case in Wilmington, Delaware, which is about 100 miles from Justice Department

headquarters, as opposed to Bridgeport, Connecticut, which is over 250 miles from Justice

Department headquarters. Tellingly, the government's counsel conceded in 2001 before the

Connecticut District Court that transferring the case to Delaware <u>could</u> <u>not</u> form the basis of an

appeal if the government lost on the merits: "There is no way that the government could argue

that this transfer somehow would result in a different outcome of what happens in Delaware on the merits." (Id. at 29-30.) The instant motion flies in the face of this concession.[11]

Judge Carey has also recently authorized the government to take late depositions of various non-party witnesses who are located within 100 miles of the Connecticut Bankruptcy Court, but are outside the subpoena power of the Delaware Bankruptcy Court. This is yet another reason why venue is not a controlling issue in the context of this adversary proceeding.

### 2.    There Are No Substantial Grounds For Difference Of Opinion

There are no substantial grounds for difference of opinion as to whether maintaining venue in this District is proper. The government's argument that Judge Carey improperly relied on "non-bankruptcy precedent" in denying its second re-transfer motion is without merit. (Pl.'s Br., at 39.) Judge Carey employed the twelve-factor test utilized by Judge Walsh in the Hechinger case to deny a transfer motion brought under 28 U.S.C. § 1412. 296 B.R. at 326-27 (denying transfer of preference action). The relevant factors under this test include bankruptcy-specific considerations, which Judge Carey discussed on the record before issuing his ruling:

> the four main factors that most courts talk about are -- that courts should consider are proximity of the court to interested parties, location of the debtor's assets, efficient and economic administration of the estate, and the relative economic harm to the debtor and other interested parties. The parties here focused largely on the efficient and economic administration of the estate.

(Tr. of Mar. 29, 2006 Hr'g, at 69.) Judge Carey then noted that the Third Circuit's decision in Jumara v. State Farm Ins. Co., 55 F.3d 873 (3d Cir. 1995), "expanded those really to twelve factors." (Id.) This was clearly an appropriate framework with in which to consider whether to the transfer this adversary proceeding.

---

[11] Recognizing that this concession is fatal to its current re-transfer efforts, the government recently has attempted to disavow it. (Docket No. 358, at 20.) Like any other litigant, the government is bound by the representations it made to a federal district judge.

Nor did Judge Carey, as the government contends, give "no consideration" to the presumption that venue of an adversary proceeding should be laid where the underlying bankruptcy case is pending. (Pl.'s Br., at 39.) Judge Carey stated that the government's "choice" of forum -- where the Debtor's bankruptcy case is pending -- "weighs in favor of the plaintiff, the movant," but that other factors favored a denial of re-transfer. (Tr. of Mar. 29, 2006 Hr'g, at 70.) This conclusion was far from an abuse of discretion. As the government's counsel concisely put it five years ago: "There is nothing left to be done in this case other than to adjudicate the adversary proceeding and then to distribute the money according to the outcome of th[is] adversary proceeding." (Tr. of Aug. 30, 2001 Hr'g, at 32.) Because there is nothing material left to administer in the Connecticut bankruptcy proceeding, judicial efficiency would not be served by re-transferring this case to Connecticut. That is why three other judges prior to Judge Carey rejected this argument five years ago.

The government contradicts itself by arguing that Judge Carey gave "undue weight" to the fact that the government's equitable subordination claim relates to alleged events during the Debtor's 1996 Delaware bankruptcy (Pl.'s Br., at 40), but then asserting that Judge Carey "essentially allowed his belief that transfer would result in delay to override all other considerations." (Id. at 44.) In any event, these were just two of the factors that Judge Carey considered in exercising his discretion. And by briefly postponing the trial by five weeks (at the government's request) and by granting the government leave to take up to four additional depositions (over defendants' objections), Judge Carey effectively mooted the government's "most important factor" allegedly favoring re-transfer.

### 3.    Interlocutory Review Would Not Materially Advance The Termination Of This Litigation

There is nothing in the government's 49-page brief that supports the contention that granting leave to appeal would materially advance the termination of this litigation.  If an appeal is granted, one of two scenarios will result:  Judge Carey's decision will be affirmed, in which event the parties will have wasted their time briefing and possibly arguing an interlocutory appeal while simultaneously preparing for a complex three-week trial commencing June 12, 2006.  Neither side needs such a distraction at this stage of the proceedings.  Alternatively (although we regard this as highly unlikely), Judge Carey's decision will be reversed and the case re-transferred, which would result in an indefinite delay of trial.  Under either scenario, the termination of this litigation would not be materially advanced.

### C.    This Court Should Not Exercise "Pendent Appellate Jurisdiction" Over Venue Decisions Issued In 2001

The government makes the extraordinary request that this Court assume "pendent appellate jurisdiction" over Judge Shiff's June 2001 transfer order, which was effectively affirmed on appeal by Judge Thompson in August 2001, and Judge Walsh's December 2001 order denying re-transfer, the latter of which the government failed to seek leave to appeal when it had the opportunity to do so over four years ago.  The government claims that these rulings are "partially intertwined" with Judge Carey's order denying re-transfer (Pl.'s Br., at 3), but fails to cite a single case where a court has exercised pendent appellate jurisdiction in analogous circumstances.  This Court should not now reconsider the decisions made five years ago.

The government is on particularly tenuous ground insofar as it asks this Court to revisit procedural rulings that were issued in Connecticut, never mind at this late hour.  The Third Circuit has stated, in the context of transfer decisions, that "the principles of comity among courts of the same level of the federal system provide a further reason why the transferee court

should not independently re-examine an issue already decided by a court of equal authority."
Hayman Cash Register Co. v. Sarokin, 669 F.2d 162, 169 (3d Cir. 1982) (reversing re-transfer
order); accord Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988)
("[T]ransferee courts that feel entirely free to revisit transfer decisions of a coordinate court
threaten to send litigants into a vicious circle of litigation."); Gulf Research & Dev. Co. v.
Leahy, 98 F. Supp. 198, 201 (D. Del. 1951) (denying re-transfer and stating that "[i]f both [the
transferor court] and I were obdurate in our positions, this case could conceivably shuttle back
and forth interminably between California and Delaware.  Such an eventuality should be
avoided").  Judge Thompson declined to overturn Judge Shiff's original transfer order, and this
Court should decline the government's invitation to revisit it.

     Moreover, the Supreme Court has held that pendent appellant jurisdiction should be
exercised only over an unappealable order that is "inextricably intertwined" with an
independently appealable order, and where review of an unappealable order "was necessary to
ensure meaningful review" of an appealable order.  Swint v. Chambers County Comm., 514 U.S.
35, 51 (1997) (vacating decision for want of pendent appellate jurisdiction where review of
appealable collateral order did not turn on review of related unappealable order).  In light of the
Supreme Court's "guarded endorsement of pendent appellate jurisdiction in certain limited
circumstances," the Third Circuit has recognized that this doctrine is a "narrow" one which
should only be used "sparingly."  E.I. DuPont de Nemours & Co., v. Rhone Poulenc Fiber &
Resin Intermediates, S.A.S., 269 F.3d 187, 203 (3d Cir. 2001) (refusing to exercise pendent
appellate jurisdiction where appealable order was not "inextricably intertwined" to unappealable
order); accord In re Kaiser Group Int'l, Inc., 307 B.R. 449, 458 (D. Del. 2004) (declining to
exercise pendent appellate jurisdiction).

The government has not made the requisite showing to warrant pendent appellant jurisdiction by this Court. First, the government has not cited any precedent supporting this Court's review of an interlocutory order issued by a bankruptcy court in another circuit, which was effectively reviewed by a district court located in another circuit and determined to be a proper exercise of discretion. Judges Walsh and Carey correctly refused to second guess the venue decisions by Judge Shiff and Judge Thompson. See, e.g., Christianson, 486 U.S. at 816; Hayman Cash Register, 669 F.2d at 169; Gulf Research, 98 F. Supp. at 201. This Court also should refuse to reconsider them.

The government does not even attempt to argue that Judge Shiff's and Judge Thompson's 2001 venue rulings are "inextricably intertwined" with Judge Carey's recent order (it claims only that they are "partially intertwined"). Nor could it. In 2001, the government argued against transfer (and for re-transfer) on the grounds that (1) Judge Shiff did not have the authority to sua sponte transfer an adversary proceeding; (2) transfer was untimely; and (3) Judge Walsh's possible recusal was a factor against transfer. But when the government filed its second re-transfer motion, the recusal issue had been mooted and it chose not to rehash its various other arguments that three courts had rejected in 2001. Instead, it asserted a variety of new reasons in favor of re-transfer, the "most important" being the ability to subpoena certain witnesses to trial in Bridgeport, Connecticut, and only obliquely claimed that re-transfer "would eliminate all of the government's potential grounds for appealing an adverse judgment on the premise that it was improper to transfer the adversary proceeding to Delaware." (Docket No. 332, at 11.) It did not, however, reargue the merits of those "potential grounds." Thus, Judge Carey's order denying the second re-transfer motion was in no way "inextricably intertwined" with the 2001

venue orders, and this Court should not review those prior orders when determining whether to grant leave to appeal Judge Carey's recent order.

The last four pages of the government's brief argue that the government "comes close to satisfying, if not fully satisfying, the conditions justifying mandamus." (Pl.'s Br., at 46.) The government's mandamus-type arguments are without merit. In <u>Nascone v. Spudnuts of Pa., Inc.</u>, 735 F.2d 763 (3d Cir. 1984), the only Third Circuit mandamus case cited by the government, the Pennsylvania-based appellants appealed an order transferring the case to Utah (pursuant to a forum selection clause), arguing, like the government does now, that immediate review was necessary to avoid "serious hardship" and a waste of judicial resources. <u>Id.</u> at 773. The Third Circuit ruled that the petition was "devoid of merit" and "did not come remotely close to meeting the high standard for mandamus." <u>Id.</u> (mandamus standard is "clear legal error").

The government's position here is even weaker, as it is seeking the transfer of this case to a court that is over twice as far from its headquarters as Wilmington, Delaware, notwithstanding that it has deposed, or has been granted leave to depose before trial, every witness that lives within 100 miles of the courthouse in Bridgeport, Connecticut.[12] Moreover, unlike in <u>Spudnuts</u> where the Third Circuit granted review (only to deny relief) because the forum selection clause there presented a relatively narrow legal question, Judge Carey's decision was based on "myriad factual considerations relevant to the exercise of discretion in a standard transfer situation." <u>Id.</u> (contrasting fact-specific "standard transfer situation" with transfer based on forum selection clause; implying that mandamus review would not be appropriate in the context of the former).

---

[12] The government also claims that if an adverse judgment is reversed on appeal on venue grounds, it will still have suffered prejudice because its "trial strategy will have been fully disclosed." (Pl.'s Br., at 48.) The government's trial strategy is largely a matter of public record, as evidenced by the 166-page summary judgment submission it filed in December 2004.

In sum, assuming _arguendo_ that the standards governing mandamus review have any bearing on the instant motion (and they do not), Judge Carey's decision scarcely amounts to "clear legal error."

## IV.    CONCLUSION

The government's motion for leave to appeal the interlocutory order denying its second re-transfer motion should be denied, and its notice of appeal should be dismissed.[13]

Dated:  May 3, 2006

/s/ Euripides D. Dalmanieras
Thomas G. Macauley (ID No. 3411)
ZUCKERMAN SPAEDER LLP
919 Market Street, Suite 1705
Wilmington, Delaware 19801
Telephone: (302) 427-0400

and

Andrew Z. Schwartz
Euripides Dalmanieras
FOLEY HOAG LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
Telephone: (617) 832-1000
Facsimile: (617) 832-7000
_bctnotice@foleyhoag.com_

Counsel for Media/Communications Partners
L.P., Chestnut Street Partners, Inc., Milk
Street Partners, Inc., and TA Investors

---

[13] In its dormant appeal over the Debtor's counsel's fees that had been pending in this District Court (Case No. 03-33), which this Court administratively closed on March 29, 2006, the government recently filed a "Combined Motion" seeking, among other things, to consolidate the now-closed appeal with its proposed appeal of the denial of its second re-transfer motion in this adversary proceeding, as well as expedited determination of the instant motion. The Intervenor-Defendants object to the government's procedurally improper attempt to entangle the proposed interlocutory appeal of the denial of its second re-transfer motion with an unrelated, administratively closed appeal over the Debtor's counsel's fees, to which the Intervenor-Defendants are not parties.

/s/ Guy S. Neal (by permission /s/ Euripides D. Dalmanieras)
Guy S. Neal, Esq.
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Telephone: (202) 736-8000

Counsel for Allstate Insurance Company

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that copies of the foregoing were served via U.S. Mail on the 3rd day of May, 2006 on the following counsel:

Kathleen M. Lamanna, Esq.
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103-2819

Abid Qureshi, Esq.
Akin, Gump, Strauss, Hauer & Feld, LLP
590 Madison Avenue
New York, NY 10022

Alan M. Shapiro, Esq.
U.S. Department of Justice
P.O. Box 55
Ben Franklin Station,
Washington, DC 20044

Guy S. Neal, Esq.
Sidley Austin LLP
150 K Street, N.W.
Washington, D.C. 20005


        /s/ Euripides Dalmanieras

B3193642.3

**EXHIBIT A**

S 27

1         UNITED STATES DISTRICT COURT

2            DISTRICT OF CONNECTICUT

3    --------------------------------*

4    SCOTT CABLE COMMUNICATIONS, INC.,

5                    Plaintiff,
                                        3:99CV918(AWT)
6    vs.                                MAY AUGUST 30, 2001
                                        HARTFORD, CONNECTICUT
7

8    U. S. TRUSTEE,                     COPY

9                    Defendant.

10   --------------------------------*

11   BEFORE:
           HON. ALVIN W. THOMPSON, U.S.D.J.

12            HEARING ON MOTION FOR LEAVE TO APPEAL
     APPEARANCES:
13

14     FOR THE INDENTURED TRUSTEE:
           SHIPMAN & GOODWIN
15         BY:  IRA H. GOLDMAN, ESQUIRE
               One American Row
16             Hartford, Connecticut   06103
       FOR THE DEBTOR:
17         AKIN, GUMP, STRAUSS, HAUER & FELD
           BY:  DAVID ZENSKY, ESQUIRE
18             590 Madison Avenue
               New York, New York
19     FOR THE IRS:
           UNITED STATES DEPARTMENT OF JUSTICE
20         BY:  JOHN V. CARDONE, ESQUIRE
               P. O. Box 55
21             Washington, D.C.
           OFFICE OF THE UNITED STATES ATTORNEY
22         BY:  ANN NEVINS, ESQUIRE
               Assistant U.S. Attorney
23             915 Lafayette Blvd.  Rm. 309
               Bridgeport, Connecticut   06604

24                          Corinna F. Thompson, RPR
                            Official Court Reporter

25

1
2          ( The proceedings commenced at 2:02 p.m.)
3          THE COURT:  Good afternoon. Please be seated.
4          We're here in the matter of Scott Cable
5 Communications, Inc..  I'll ask counsel to state their
6 appearances for the record.
7          MS. NEVINS:  Your Honor, Ann Nevins, Assistant
8 United States Attorney for the Internal Revenue Service.
9 Your Honor, today I'm going to enter my appearance in lieu
10 of Dierdre Martini, a former assistance who was previously
11 in the case.
12          MR. CARDONE:  John Cardone, U.S. Department of
13 Justice tax division on behalf of the United States IRS.
14          MR. ZENSKY:  David Zensky, Akin, Gump for the
15 debtor, Scott Cable.
16          MR. GOLDMAN:  Ira Goldman, Shipman & Goodwin
17 for State Street Bank, the indentured trustee.
18          MS. WALLACE:  Marion Wallace from Shipman &
19 Goodwin, also here for State Street Bank, the indentured
20 trustee.
21          THE COURT:  Thank you.
22          We are here -- the government has requested a
23 hearing on its motion for leave to appeal.
24          As I read the papers, there are generally three
25 areas of argument and I prefer to take them one at a time

3

1    and hear fully from the parties on each one.

2              But before we do that, there was a point raised

3    by the government in its papers as to whether the IRS had

4    conceded that the Delaware record would have to be reviewed

5    and a copy of the transcript was submitted -- attached to

6    the United States' request for a hearing.

7              It wasn't clear to me whether the Department of

8    Justice was making a point that it did not concede that the

9    record would have to be reviewed in the proceedings before

10   Judge Schiff and therefore, the statement in his order was

11   in error and as a matter of fact, the record will not have

12   to be reviewed, or whether you were simply making the point

13   that although the record may or will have to be reviewed,

14   you did not concede that fact.

15             So I'd like to clear that up to get started.

16             Is it the government's position that the

17   Delaware record would not have to be reviewed?

18             MR. CARDONE:  No.  I mean, I have a short answer

19   and a long answer.  The short answer--

20             THE COURT:  I'll take the short one.

21             MR. CARDONE:  The short answer is the statement

22   is in error.  I don't know what's in the Delaware record

23   other than the confirmation order that's been before this

24   Court.

25             So I could not concede whether or not the

1   record has to be reviewed.

2         THE COURT:  Okay.

3         MR. CARDONE:  In our papers we hypothesized two

4   different scenarios, which I'll talk about in greater

5   detail. I don't know.  I don't know the record so I don't

6   know what is or is not in there.

7         THE COURT:  Okay. Thank you.

8         Do counsel have a preference as to the order

9   which you argue the points that are in your papers? I think

10   they pretty much all follow along the same pattern,

11   although I'm not sure. I didn't do an outline of each one.

12         The government's first point, I believe --  I

13   take it your first argument is that the bankruptcy court's

14   order was inconsistent with the spirit of the order from

15   the district court and was in violation of --  well, the

16   court was acting outside its jurisdiction.

17         MR. CARDONE:  I believe the statutory

18   jurisdiction is a little cleaner an argument which I'm

19   prepared to argue first.

20         THE COURT:  Okay.  Why don't you argue that one

21   and I'll just save the parties some time.  I didn't think

22   that Judge Schiff's order was inconsistent with my order

23   remanding the case.

24         So why don't we take the other part of the

25   first argument then.

1    MR. CARDONE:  The first argument, Your Honor,

2    is that whether or not this is granted as a need for an

3    interlocutory appeal or, you know, whether or not the

4    government can appeal as of right, or whether or not this

5    is even treated as a writ of mandamus in seeking review of

6    the judge's order, the bankruptcy court did not have the

7    power to issue this order transferring the adversary

8    proceeding to Delaware and it should be reviewed by this

9    court just as a threshold issue.

10   The bankruptcy court in its order to show

11   cause, it cited -- and I don't attach the order to show

12   cause to our brief but I would quote it in full -- it cited

13   the Bankruptcy Rule 10014 as to why this court --  why the

14   bankruptcy court would have the power to transfer the case.

15   Basically, 10014, or Bankruptcy Rule 10014 is

16   an enabling --  is the rule that basically enables the

17   provisions of Title 28 regarding the transfer to the

18   bankruptcy jurisdiction.

19   Now, we don't think the bankruptcy court had

20   the power under 10014 to transfer the case, one, because

21   the rule is very clear that it requires a motion of a party

22   in interest, and the historical notes to the rule are clear

23   to that effect.

24   The prior version of the rule in the Bankruptcy

25   Act did not allow --  it allowed a court to act on a

1    motion. In this case, however, it's clear that it requires

2    a motion of a party in interest.

3        There is case law holding to the contrary, but

4    the case law refers to --  refers to the case where a

5    bankruptcy was filed in the wrong jurisdiction. In this

6    particular case, there is no dispute that it couldn't be

7    filed in Delaware and that Connecticut is the presumed

8    correct jurisdiction for this bankruptcy to be filed.

9        So absent a motion by a party in interest, this

10   court cannot transfer a case to a court of another

11   jurisdiction using Bankruptcy Rule 1014, which is basically

12   the rule that enables 28 U.S.C. 1412, which governs

13   bankruptcy jurisdiction, the transfer of a case under Title

14   11.

15       The rule requires a motion of a party in

16   interest and it also requires it to be timely made. In this

17   case, there's --  the bankruptcy court ruled on a plan of

18   reorganization. The bankruptcy court ruled that it was in

19   the best interest of this estate to sell assets.  The

20   bankruptcy court ruled on really the only core heart of

21   what's left in this bankruptcy as to whether or not these

22   --  the liens of the junior subordinate noteholders should

23   be equitably subordinated.

24       The bankruptcy court ruled on that issue.  This

25   court ruled on that issue.  There has been law of the case

1   in this proceeding. It is now not timely under any stretch

2   of the imagination to transfer this proceeding to Delaware.

3            The bankruptcy court -- the order is couched

4   so that the case is still being administered in Connecticut

5   and supposedly this discrete issue, this adversary issue is

6   being transferred to Delaware. But there is nothing to be

7   administered. This is the heart of the case. The

8   determination of this adversary proceeding will determine

9   what happens in this bankruptcy case and that really is the

10  heart and soul of what's at issue here.

11           So it's inconsistent to take all of these

12  actions and to not rule on -- the government has also

13  filed a motion to convert and the bankruptcy court would

14  not rule on that issue pending the outcome of this

15  adversary--

16           THE COURT:  I'm sorry?  The government also

17  filed--

18           MR. CARDONE:  The government had filed a motion

19  to convert the case in the Chapter 11 proceeding and the

20  bankruptcy court would not rule on that issue.

21           It's inconsistent to say we are transferring a

22  discrete issue after all of this time has passed. That's

23  just the threshold of enabling the rule. And then what the

24  bankruptcy court did, it used the prong of 28 U.S.C. 1412

25  in determining whether or not to transfer the case.

1    The bankruptcy court said that the court system

2  itself has an interest in the efficient judicial

3  administration of its cases. And that really is the

4  standard that the bankruptcy court used.

5    But the Second Circuit, in a case before Judge

6  Dorsey, in arguing --  in interpreting a very similar

7  transfer statute, said that a transfer for the sole stated

8  reason that a transfer would serve judicially efficiency

9  was not appropriate.

10    That ends the analysis right there. The debtors

11  in their brief talk about --  they say, well, _Warrick_,

12  that's the Second Circuit case that I cited from, that

13  really doesn't apply because when you look at the transfer

14  of venue fact specific and you can't --  I believe their

15  words were somehow that it's fact specific and it must be

16  distinguished.

17    Well, that goes into the merits of the appeal.

18  But if we are talking about the facts of the case, that's

19  all that this court used to transfer this case was the

20  efficient --  the court's inherent interest in judicial

21  efficiency.

22    The evidence of the case shows that there is no

23  connection to Delaware in this proceeding. Of the over 100

24  creditors that were listed on the matrix, there is one

25  creditor with a Delaware address whose claim is for $600.00

1   out of a $41,000,000.00 bankruptcy estate.

2           None of the parties in the adversary proceeding

3   are in Delaware and indeed, we were prepared to present

4   evidence that most of the parties or the key players are in

5   Connecticut and Massachusetts. The corporation is a Texas

6   corporation.

7           There is no nexus to Delaware. There is no

8   jurisdiction in Delaware.  And the only rationale for

9   transferring the case was the efficient judicial

10  administration of the case.

11          THE COURT:  Let me ask you this:  If the

12  bankruptcy court had articulated a different basis, would

13  it have been appropriate to transfer the case?

14          MR. CARDONE:  Well--

15          THE COURT:  Or could it have been appropriate

16  to transfer the case if an appropriate basis had been --

17  assuming that this order from Judge Schiff does, in fact,

18  line up with what happened in Warrick, assuming that for

19  purposes of argument, if there had been a different

20  analysis by Judge Schiff and he had not pointed to judicial

21  efficiency, could he have transferred the case?

22          MR. CARDONE:  I can't think of an analysis that

23  would make transfer appropriate. I can't see--

24          THE COURT:  What if you assumed that the debtor

25  and trustee's argument that this deals with what happened

1    in the Delaware plan is a legitimate argument?  Assume

2    that.

3            MR. CARDONE:  Assume that it deals with that

4    issue?  The judge said a couple of things to that point.

5            The judge -- and this is our argument and I

6    guess you disagree that it's inconsistent -- but the judge

7    said the question is would the plan have been confirmed in

8    Delaware over the IRS's objection. That's the question the

9    judge posits.

10           If that were the question, and I don't think it

11   is, if that were the question, we would say that the

12   Delaware judge can't confirm this plan because it's setting

13   them up to promote a plan of tax avoidance two years down

14   the road.

15           Obviously the judge in Delaware can't --  he

16   might say well, that's a proper bankruptcy purpose. I can't

17   see him saying that. Or he could say well, that's kind of

18   too speculative for me to rule on. I have to deal with the

19   then known facts at the time.

20           That's why I don't see how Judge Schiff's

21   enunciation of that issue is the proper issue. That can't

22   be the test, would the plan have been confirmed had the IRS

23   objected then.

24           I think what the legitimate question would be

25   was did these people give fair consideration for what they

11

1  received? We contend that they didn't. We contend that they

2  didn't give good and fair consideration for what they

3  received.

4     So arguably, that is a matter of looking at the

5  Delaware record. And this is where I basically, you know,

6  we speculate. Let's assume that the record is filled with

7  information with regard to the kind of consideration they

8  received. And I don't think this is the case because I

9  think -- I can give you the other scenario.

10    But assume the record is filled with that

11 information, that there is an analysis of the Delaware

12 record.

13    Judge Walsh has already signed an order. The

14 confirmation order already says that the notes were entered

15 into for good and valuable consideration.

16    So assuming that's required, assuming the

17 record has that information and assuming he's already

18 signed an order that holds the exact opposite of what the

19 government contends, then it really raises the question of

20 whether or not the judge -- there is an appearance of

21 impartiality in the case.

22    I mean, when the judge is the trier of fact and

23 he's going to be trying the facts of the case, the

24 appearance of impartiality needs to be especially

25 pronounced.

1          THE COURT:  Why is that?  I mean, I get a

2    motion for reconsideration on half the rulings I issue.

3          MR. CARDONE:  That's because the--

4          THE COURT:  How is that different?

5          MR. CARDONE:  That's because the government --

6    that's because we were not a party to the Delaware

7    proceeding. That's why. We are not a party to that

8    proceeding.

9          THE COURT:  So it's somebody whose not a party

10   coming in and asking the judge to take a second look as

11   opposed to somebody who was a party?

12         MR. CARDONE:  That's correct, Your Honor. I

13   think it's perfectly appropriate if you're a party to the

14   proceeding. But the government was not a party to the

15   proceeding.

16         THE COURT:  We are not talking about the

17   appropriateness of the government to ask the judge to take

18   a second look. I thought you were talking about whether or

19   not the judge was somehow compromised in being impartial in

20   looking at it.

21         MR. CARDONE:  Yes. If that were the case, and

22   the record and the judge signed an order, I think to expect

23   any party --  we agree. We think it's appropriate to take a

24   look at what they did at the proceeding. We don't think

25   it's appropriate for this judge, who has already signed an

1   order finding the exact opposite of what we contend, to be

2   presiding over the proceeding.

3         In effect, that's the only reason why this case

4   was transferred. If that's the only reason, that just

5   creates -- that doesn't mitigate for transfer of the case

6   if this judge is going to have to recuse himself.

7         THE COURT: You're saying the judge can't

8   preside over a matter where the judge is being asked to

9   basically reverse a decision the judge entered earlier?

10        MR. CARDONE: If you were not a party to the

11  original proceeding, it's not -- it's just not proper. I

12  don't think the record -- I don't think this judge was

13  presented with enough reason -- with a foundation, and I

14  can discuss that.

15        I don't think this judge was presented with a

16  foundation as to why he signed the order. But for a party

17  that wasn't a party to the original proceeding to have to

18  come in to court and ask the judge to review a record that

19  was established when they weren't there and to reach the

20  exact opposite conclusion that's already contained a

21  finding that he found, that that does create an appearance

22  of partiality. It is not an impartial finder of fact for

23  that party.

24        It clearly -- I'm not saying it's a foregone

25  conclusion, but it's pretty close and it's clearly not a

1   reason to transfer this case.

2        If the Delaware court is going to be confronted

3   with that possibility--

4        THE COURT:  Wouldn't the judge have to decide

5   whether he felt somehow his impartiality was compromised by

6   this scenario?

7        What I'm struggling with is I think judges are

8   asked all the time, Take a second look at what you've done

9   because we have something here that you didn't have in

10  front of you at the time you made the decision.

11        MR. CARDONE:  And it's usually done by a person

12  that's been a party to the case all along.

13        THE COURT:  Usually, yes.

14        MR. CARDONE:  This isn't the case.

15        THE COURT:  But it seems to me the person who

16  hasn't, so to speak, had a bite at the apple is better off

17  than the person who is a party to the case because, you

18  know, when the person who's been a party to the case comes

19  in, the judge is really -- the first question is, is this

20  really something knew or are they just repackaging the

21  argument and evidence they gave before?

22        You start out with a leg up under this scenario

23  because you're coming in fresh and everything that

24  happened.  Well, you can say, Judge, we weren't there for

25  that so we should get a little leeway.  And if I were

1  presiding, I think most judges would say, yeah, you're

2  entitled to that.

3          MR. CARDONE:  Your Honor, I'm not saying that

4  most judges would and I'm not saying that Judge Walsh

5  wouldn't do that. But the fact that -- it doesn't change

6  the fact --  if it's possible that he's reached this

7  conclusion, he's looked at the record, it's unfair to ask a

8  third party that wasn't involved at the proceeding to come

9  in and argue the exact opposite, if that's on the record.

10          THE COURT:  Well, the real question, though

11  for, purposes of today's motion is whether it would be

12  appropriate for Judge Schiff to conclude that he could

13  transfer the case to Delaware based on a premise that it

14  would be fine for Judge Walsh to hear the case.

15          MR. CARDONE:  That's correct. Based on just

16  that premise. The flip side of that--

17          THE COURT:  Which is not --  I don't think that

18  that gets reduced simply to judicial economy or efficiency

19  being served. I don't think that's simply judicial

20  efficiency because I don't know exactly what his ruling --

21  I think it does refer to efficiency, but he also says the

22  question is best answered by the Delaware bankruptcy court

23  which approved the Delaware plan, which I think is more

24  than mere, you know, efficiency or judicial economy. At

25  least that's the way I'm reading what he wrote.

1    MR. CARDONE:  I don't see how it is as far as

2  the plan is dead. It's a matter of interpreting a finding

3  of fact that is already found. I respectfully disagree that

4  as far as --

5    THE COURT:  Okay.

6    MR. CARDONE:  -- asking to look at the record

7  and look at what they got under the plan, anyone can read

8  the order and anyone can read the plan. It's

9  hypothesizing.  It's not a basis --  Judge Schiff can read

10  the order just as well as anyone.

11    Indeed, we --  based upon what reported

12  decisions there are in this case, and there really was only

13  one, the Delaware case was open for a period of nine months

14  from I think filing to confirmation. There was one dispute,

15  which was a senior secured creditor, and there was a

16  dispute over what rate of interest he was going to get.

17    Everyone above, the people that were

18  challenging now were paid in full. Everyone --  the only

19  people that received anything below these people were the

20  owners of the company and the owners were the same people

21  who received this secured lien.  So there was no reason for

22  anyone to even look at this provision of the plan.

23    Therefore, the speculation does not overcome

24  the presumption. The speculation goes both ways, that there

25  is nothing there for him to look at. He would be starting

1  cold just as any other judge. And the speculation does not

2  overcome the presumption that this --  that the venue is

3  valid and jurisdiction is proper in Connecticut.

4         I don't see what other factors there are other

5  than interpreting the record. Really it boils down to that

6  and that's just speculation whether or not you have to

7  interpret the record. I don't see any other definition of

8  judicial economy coming out of that. None of the other

9  factors apply.

10        Indeed, the only thing they point to mitigates

11  against transferring the case.

12        THE COURT:  I thought that he was looking --

13  the part of the statute he was looking at was the interest

14  of justice--

15        MR. CARDONE:  Right.

16        THE COURT:  -- is that correct?

17        MR. CARDONE:  As I read it, he's saying the

18  interest of justice means the court in and of itself --

19  the statute is written --  so it would seem to imply that

20  the First Circuit, the interest of justice for the

21  convenience of the parties. He's saying the interest of

22  justice suggests that there is an efficient judicial

23  administration of its cases.  The court system itself has

24  an interest in the efficient judicial administration.

25        THE COURT:  I see where you're reading.

1      MR. CARDONE:  I think that that phrase is in

2   opposite to what the Second Circuit said in _Warrick_. I

3   don't see how the two are distinguishable.

4      That's the first argument, basically.

5      With respect to there was no power under the

6   bankruptcy rule to transfer this case because it doesn't

7   meet the timeliness threshold, doesn't meet the motion,

8   even in those two factors he doesn't use the right standard

9   under the statute.

10      In the alternative, I really don't --  the

11   bankruptcy judge said, well, 105 gives him the power to

12   transfer the case. 105 really refers to implementing the

13   bankruptcy code itself.

14      We are not talking about any provision of the

15   bankruptcy code.  All the rules and statutes we are talking

16   about in this case are under Title 28 and this court's

17   jurisdiction and venue.

18      The judge cites a case that basically reaches

19   that exact same determination, that 105 does not govern in

20   this instance.

21      THE COURT:  I didn't read his order as saying

22   105 was a separate basis. The way I read it was you take it

23   all in combination.

24      MR. CARDONE:  Okay. I don't think it adds

25   anything to the fact.

19

1          THE COURT:  Okay.

2          MR. CARDONE:  We are not implementing the act

3     of the bankruptcy code.

4          THE COURT:  All right.

5          MR. CARDONE:  Under that statute, 105 is overly

6     broad.

7          This basically --  the one issue --  the one

8     point you touched on that we -- is that the government made

9     no concession they would have to look at the Delaware

10    record.

11         We don't know what the Delaware record is. The

12    State Street Bank spends a lot of time on that issue and I

13    don't know what relevance it has, but it's not germane to

14    whether or not this appeal should be heard.

15         They also spend a lot of time on the fact that

16    there has been such an exorbitant amount of delay in this

17    proceeding and at all cost this case should be transferred

18    but for no other reason than to move it along.

19         And I just would like the court, just to put

20    some of this in context, as was evident from looking at the

21    papers before in the prior appeal and in the Connecticut

22    -- Delaware disclosure statement, the vast majority of

23    these people, people holding 85 percent of this claim, they

24    were in Delaware holding a claim against assets that if

25    liquidated was worthless. They were going to recover

1    nothing.

2              Two years later, less than two years later,

3    after the Delaware claim was confirmed, they then held a

4    claim that they would recover, I don't know, approximately

5    $32,000,000.00 only if their tax scheme didn't work and it

6    didn't.

7              Now, they still hold a claim.  In January of

8    1999 they argued these assets are depreciating in value. We

9    need to sell these assets. Well, the bankruptcy judge

10   approved the sale. So now they are holding a claim against

11   cash.

12             Yes, they are not getting the most they could

13   possibly get, but neither are they suffering exorbitantly,

14   based upon where they started out in December of 1996.

15             Everyone is frustrated with respect to the

16   procedural turns that this case has had and everyone is

17   frustrated with the fact that we have to be here.

18             I question if they are so worried about

19   proceeding with the case, why are they fighting this

20   appeal? If they didn't seek the transfer in the first

21   place, why are they fighting in defending against this

22   appeal?

23             Just because everyone is frustrated with the

24   speed -- with the procedural aspects that this case has

25   encountered does not mean that we aren't entitled to a fair

1  review of the underlying transaction and to a fair review

2  of the government's claim vis-a-vis the secured creditors

3  or the allegedly secured creditors in this proceeding.

4       Their brief really, I don't think, puts that

5  into context. They are not doing as well as they could

6  have, but neither are they destitute at this point in time.

7  They are holding a claim against cash. It's not

8  depreciating in value any further. And I think we're

9  entitled to a review of our position in this matter.

10      Thank you, Your Honor.

11      THE COURT:  Okay.

12      MR. ZENSKY:  Good afternoon.  For the court's

13  convenience, Mr. Goldman and I split up the issues so we

14  don't repeat each other.

15      THE COURT:  Thank you.

16      MR. ZENSKY:  I'll address quickly what I

17  believe is the response to the argument you just heard,

18  which we understood to be the government's argument that

19  you have appellate jurisdiction as a right in this case and

20  Mr. -- Ira is going to explore the other two issues about

21  the Cohen doctrine and the interlocutory appeal standard.

22      What we just heard is 20 minutes of appeal

23  itself. I was sitting here and I don't think any of us

24  heard a single precedent or single argument as to why the

25  appeal can be heard in the first place at this juncture.

1    That's the government's motion today, for leave to take a

2    interlocutory appeal of what we all know is a non-final

3    order. Judge Schiff's order doesn't end the case and under

4    the federal system after appeals, you need another way to

5    get it up.

6            Cases that the government relies on out of the

7    Second Circuit are all mandamus cases. There is no petition

8    for mandamus before you and I'm not sure that a district

9    court even has mandamus power over a bankruptcy court.

10           They have cited to you Second Circuit decisions

11   where the Second Circuit used the writ of mandamus to rein

12   in an errant bankruptcy court or an errant district court.

13   But that's not the situation and there is no petition for a

14   writ of mandamus before you.

15           So it remains a very large mystery to me, for

16   one, the basis for the argument that they can appeal as a

17   right in this case, which is stated at several points in

18   their brief.

19           Now, even if the argument that Judge Schiff

20   went outside his jurisdiction was relevant to the

21   jurisdictional analysis that I believe you have to answer,

22   which is, Can you take the appeal or can you hear the

23   appeal at this juncture?  Or even if we imagine for a

24   moment that the government had tried to seek a writ of

25   mandamus and that you could entertain that, I think the

1    record is clear that Judge Schiff did not go outside his

2    jurisdiction here.

3            The only statute that you need to focus on is

4    28 U.S.C. 1412, I believe, which is cited right in the

5    first sentence or second sentence of Judge Schiff's

6    decision below. He relies on the interest of justice

7    standard, which is one of two standards set forth in 28

8    U.S.C. 1412.

9            I'll read it into the record, if I may.

10           A district court may transfer a case or

11   proceeding under Title 11 to a district court for another

12   district in the interest of justice or for the convenience

13   of the parties.

14           Doesn't require a motion. Doesn't say anything

15   about whether a bankruptcy judge or district judge can act

16   sua sponte under this issue. And it allows for a standard

17   in and of itself, in the interest of justice, which we

18   believe is what Judge Schiff did here.

19           The bankruptcy court ruled that -- the

20   government spent time discussing with Your Honor that

21   Bankruptcy Rule 1014 applies to a motion to transfer an

22   entire bankruptcy case.

23           Now, it's true that Judge Schiff mentioned that

24   in his decision, but of course that's not what happened.

25   All he did was transfer a proceeding and a transfer of a

1    proceeding is squarely within the power of Section 1412 and

2    also squarely within the power of Bankruptcy Rule 7087,

3    which is the bankruptcy rule which implements the

4    proceeding part of 1412, 1014 being the case part.

5         We have cases right on point that tell us that

6    powers under Section 1412 may be exercised sua sponte by a

7    bankruptcy judge in the text itself -- that's the <u>Henderson</u>

8    decision out of the bankruptcy court for the northern

9    district of Alabama -- squarely holding that it can be

10   exercised sua sponte.

11        We have the decisions <u>Pinehaven</u> and <u>M.D. Sass</u>

12   cited in Scott Cable's brief which hold that a finding that

13   a transfer in the interest of justice is enough in and of

14   itself to transfer case. It doesn't have to be linked to

15   convenience of the parties. And again, that's what Judge

16   Schiff did here.

17        We certainly agree with what I understand to be

18   the essence of your comments, Judge Thompson, that there is

19   no disqualifying factors of impartiality here that prevents

20   Judge Walsh from taking this case.

21        As you pointed out, judges are asked all the

22   time to revisit an order they previously entered. Cases

23   come back to a court to enforce an order many years later.

24   There may be an ambiguity and the judge has to figure out

25   what the order meant if a new set of facts have arisen.

1    The Bankruptcy Code provides for the right of a

2  party to go back and challenge a confirmation order, albeit

3  within 60 or 90 days of an order. Surely that motion was

4  within the power of Judge Walsh to hear.  And as we

5  perceive the procedural posture, that's really where you

6  are. You have held that the government has the right to go

7  back.  They are not precluded by the confirmation order.

8  They can challenge what happened. If Judge Walsh could hear

9  a motion under the Code challenging it within the time,

10 there is no reason he can't hear the government's case.

11    So for those reasons, Judge, again we don't see

12 any basis for appellate jurisdiction in this court at this

13 juncture as a matter of right. And even if there was such a

14 basis, there was not such an exercise of power by Judge

15 Schiff outside his jurisdiction that would enable him to

16 invoke that jurisdiction at this stage.

17    THE COURT:  Even if the government were seeking

18 a writ of mandamus, if I were to take the Warrick case as

19 guidance, I think I would have to conclude that there was

20 abuse of discretion by Judge Schiff.

21    MR. ZENSKY:  I couldn't disagree more because

22 Warrick was a 1404 case, not a 1412. Big difference.

23    The standard in 1412 is in disjunctive. The

24 court can act in the interest of justice or for the

25 convenience of a party.

1    In 1404, that "or" is not there.  The standards

2  are linked.  So I would say, as a first part, if a judge

3  acted outside his jurisdiction under 1404, or used the

4  wrong standard, has no application to what happened here.

5    Secondly, I would read Warrick as being very

6  fact intensive, as Mr. Cardone stated; that in that case

7  the court didn't feel that the justification proffered was

8  sufficient to satisfy the interest of justice or judicial

9  efficiency standard.  But the rationale of the district

10  court was very different from Judge Schiff's rationale.

11    THE COURT:  My question was -- there was a

12  reference to the fact that the government is not seeking a

13  writ of mandamus here.

14    MR. ZENSKY:  Yes.

15    THE COURT:  My question was if I were to take

16  Warrick as a guide, the standard applied in Warrick, there

17  was an abuse of discretion by the judge who decided to

18  transfer the case.

19    MR. ZENSKY:  Yes.

20    THE COURT:  If I were to be asked to second

21  guess Judge Schiff by the parties here, I wouldn't be asked

22  to look at it and say, Would I have transferred the case?

23  I would be asked to look at it and say, Did Judge Schiff

24  abuse his discretion in deciding to transfer the case?

25    MR. ZENSKY:  If we were -- we had a petition

1    for mandamus before you and if there is was support for the

2    proposition that a district court, as opposed to the Second

3    Circuit, has the power of mandamus, and if you felt that

4    there was strong enough evidence that Judge Schiff had gone

5    outside his jurisdiction or abused his discretion, yes,

6    then you could say that <u>Warrick</u> would come into place, if

7    that's what you're asking.

8         MR. GOLDMAN:  Your Honor, we did promise to

9    split it up and I promise I won't repeat the same things. I

10   only wanted to just note that this case --  this is a very

11   unusual situation and I think Judge Schiff recognized that

12   it was unusual --  that it is an unusual situation because

13   the fairness of the --  of what happened in the Delaware

14   proceeding is going to be attacked, although collaterally,

15   he made a judgment which I think is clearly expressed in

16   his order that in his discretion, that given the two

17   possibilities; namely, that he would be making judgments

18   about what happened in the Delaware proceeding or that the

19   Delaware court could make those judgments about what went

20   on in the Delaware proceeding, that he, in his discretion,

21   felt it was more appropriate for the Delaware court to

22   handle it.

23        It's a very unusual situation. One could

24   probably go through a whole career as a bankruptcy judge

25   and not have something like this happen. I can't imagine --

1    if the bankruptcy judge has discretion at all, I can't

2    imagine that this wouldn't be an appropriate place to

3    exercise that discretion.

4              Thank you, Your Honor.

5              THE COURT:  I would hope, too, that most

6    district judges could go through a whole career and not

7    have this happen to them, too.

8              Did you want to go to your next argument, Mr.

9    Cardone?

10             MR. CARDONE:  Your Honor, I just want to point

11   out, I think when we talk about the party --  that the

12   judge abused his discretion -- I'm sorry, not the judge --

13   the judge did not have the authority to enter the order, to

14   suggest that the district court -- I don't believe I cited

15   the case on point -- but to suggest that a district court

16   did not have mandamus review over a bankruptcy court to me

17   seems somewhat absurd.

18             This court could always revoke the reference.

19   And indeed, if you read the cases, the government is in a

20   very difficult situation where Warrick itself says you

21   appeal first. Mandamus is an issue of last resort. And all

22   of these cases are intertwined.

23             And indeed, I know we dropped it in a footnote,

24   but aside from the fact that there is a --  the government

25   would argue there is pause of discretion and we seek review

1    of that. For all intents and purposes, this motion would be

2    treated the same as a petition for mandamus review.

3            Really, the other --  the issue that we have

4    here is that, as we talked about, the collateral order

5    doctrine, this matter is unreviewable if this matter is

6    transferred to Delaware because there is no --  no -- not

7    even practical, there is no theoretical way that I could

8    see that we would be able to seek review of this order

9    after the conclusion of the Delaware proceeding.

10            With the cases that we cite, these show clearly

11    this meets the other conditions for a collateral order. It

12    definitively resolves the issue of where venue is

13    appropriate. It is unrelated to the merits of the case and

14    we are all in agreement on that.

15            The third factor is whether or not this is

16    reviewable upon appeal. It is not. There is no way that the

17    government could argue that this transfer somehow would

18    result in a different outcome of what happens in Delaware

19    should the case then proceed in Delaware on the merits.

20            There is just no conceivable way that you could

21    argue that it's reviewable if it's not reviewed now as a

22    collateral order.

23            THE COURT:  You could you address the argument

24    made by one of the two parties opposing you that it isn't

25    really that it's not reviewable; it's that you have a much

1  harder road in getting it reviewed.  That's the distinction

2  they make.

3          MR. CARDONE:  I just cite to the <u>Warrick</u> case.

4  I don't want to say common sense. This isn't a question

5  where there is a choice of law issue, that it would be

6  definitive, that would determine the outcome of the case.

7          We are not transferring this to a jurisdiction

8  where venue --  I'm sorry  -- to a jurisdiction where the

9  statute of limitations might be a different. We are not

10 dealing with that kind of --  we are not dealing with state

11 law questions of who has the burden of proof or some state

12 law --  the differences in some sort of tort claim.

13          This is basically --  you're in a different

14 circuit.  Arguably, you could argue that the factors that

15 determine whether or not the distinction should be

16 subordinated are different in different circuits. That's

17 not the case of the status of the law.

18          So there is no way that you can argue --  that

19 this transfer in and of itself will change the outcome of

20 the appeal and become determinative of the results of the

21 final merits of the case.

22          I just cannot see how they can argue that, to

23 say that this is ultimately reviewable after adjudication

24 on the merits.

25          THE COURT:  Well, does that mean it's not

1    reviewable or does that mean you would just be preordained
2    to lose?
3            MR. CARDONE:  Is there a difference? I don't
4    see the difference.
5            THE COURT:  Oh, there is a difference.
6            MR. CARDONE:  I think Songbyrd elicits that.
7    They talk about the way -- you're dealing with a transfer
8    of venue under the collateral order doctrine; that the
9    factors -- I believe they said that the factors -- that
10   the factors -- I'm sorry.  That case was the Pan Am
11   Corporation. It says that the Gulfstream factors are to be
12   applied flexibly.
13           To say we are preordained to lose is no
14   different than to say we won't --
15           THE COURT:  I mean, on the point of it being
16   effectively unreviewable on the appeal from a final
17   judgment, as I read one of the papers submitted in
18   opposition, you'd have to show that this made some
19   difference in the outcome--
20           MR. CARDONE:  That's correct.
21           THE COURT:  -- in the case.
22           MR. CARDONE:  There is no realistic way that
23   that is going to happen.
24           THE COURT:  Okay.
25           MR. CARDONE:  I would like them to enunciate

1    the reason how that would be possible and it's not.

2                THE COURT:  Okay.

3                MR. CARDONE:  Your Honor, with respect to the

4    argument that we are not operating under Bankruptcy Rule

5    1014 but under Bankruptcy Rule 7087, 7087 -- it's really

6    1014 in its requirements that there would be a motion. And

7    really, we are not transferring just --  we are

8    transferring an adversary proceeding, but that is the core

9    aspect of this case. There is nothing left to be done in

10   this case other than to adjudicate the adversary proceeding

11   and then to distribute the money according to the outcome

12   of that adversary proceeding.

13                I really have nothing more on the collateral

14   order.

15                THE COURT:  Can you address the point made in

16   the opposition papers that to accept your argument is to

17   eliminate the third prong of the collateral order analysis?

18                MR. CARDONE:  No. I think -- well, to address

19   that argument, I would disagree with it.

20                THE COURT:  Can you tell me -- explain to me

21   why that point is wrong?

22                MR. CARDONE:  That point is wrong because there

23   is a provision, as I talked about before, if the forum that

24   the case is going to be transferred to has a different law

25   to be applied or if the case is transferred to where the

1    statute of limitations might have some determination or if

2    someone can't be made a party in that jurisdiction, there

3    are other -- there are other instances when the transfer

4    of venue can be appealed.

5            I would say that a transfer of venue in most

6    instances makes it very difficult to appeal the order and

7    that's why -- that's why it is special in bankruptcy

8    cases. They should tend to be reviewed more and that's why

9    the <u>Gulfstream</u> factors should be applied more liberally. I

10   agree.

11           But it doesn't make the factor unreviewable for

12   a host of other collateral orders. Every other collateral

13   order, like a statute of limitations question, that can be

14   easily reviewed upon appeal.

15           THE COURT:  Okay. I'm going to take one second

16   and just check a couple of things, Mr. Goldman.

17           I think the one question I'll have for the

18   parties; is it the trustee's position that none of the

19   three -- that the government fails on each of the three

20   prongs?

21           MR. GOLDMAN:  Your Honor, it's our position

22   that they fail on the second and the third prong.

23           THE COURT:  Second and the third.

24           MR. GOLDMAN:  I think it wouldn't conclusively

25   determine the question of whether the transfer was proper.

1    And I think most notably, it does not concern a right that

2    would be effectively unreviewable.

3         And I think in your colloquy with Attorney

4    Cardone, it's very clear that it would be reviewable.  It

5    just would present a very difficult burden for him to prove

6    to a court that it had an impact on the decision, which

7    really is the reason why we are so frustrated that we are

8    spending time on this issue.

9         None of us -- none of us asked Judge Schiff to

10   transfer this case. He did it sua sponte.  It really he

11   doesn't change anybody's likelihood of winning, prevailing,

12   and we should just move forward and have the case tried.

13        And that really leads me to the issue of why I

14   think the second prong is not satisfied.  And I think Mr.

15   Cardone has effectively admitted this. It's not an

16   important issue. It's not an issue that's going to have any

17   bearing on how this case is ultimately determined. It's

18   either going to be determined by one competent bankruptcy

19   judge or another competent bankruptcy judge.

20        It is a complicated issue. First of all, we

21   don't really know that much about it because, in fact, the

22   IRS hasn't gotten very far in developing the case. It's

23   still really in its infancy.

24        I think Mr. Cardone, in saying that he could

25   not really convince a court that which jurisdiction it was

1   held in would make a difference, is another way of saying

2   that in the context of this case, this is not an important

3   issue. And therefore, we think it fails the Cohen doctrine

4   on two different grounds, the third one being clearer

5   because it's a subjective term, but we really think in this

6   case it's not an issue.

7            THE COURT:  I'd like to ask Mr. Cardone to

8   comment on why he thinks it's an important issue in this

9   case.

10           MR. CARDONE:  The question of venue, Your

11  Honor, was one of the first questions you asked in the oral

12  argument before the --  in the prior appeal:  Why in

13  Connecticut? Why didn't we file back in Delaware?

14           THE COURT:  The fact that I asked doesn't mean

15  it's important.  It means I was interested.

16           MR. CARDONE:  Judge Schiff was wondering if

17  this should have been filed in Delaware and this was

18  something we looked at. There is no case that I could find

19  where a bankruptcy court transferred a case that is

20  presumed to be in the proper jurisdiction, overcoming that

21  presumption, absent any connection to the forum in which it

22  is to be transferred to, only because that judge has some

23  familiarity, some presumed familiarity with a hypothetical

24  record.

25           The fact of the matter is that this --  I don't

1   want to speculate, but it's curious that they did file in

2   Connecticut; that the answer to your question was that they

3   had no jurisdiction to file in Delaware the first appeal.

4       Really, the logical follow-up to that question

5   is, Well, why did they eliminate the Delaware holding

6   companies? I find it ironic because they chose jurisdiction

7   in Connecticut and because we --  it's proper here and we

8   feel it should be kept here -- that we are accused of

9   somehow forum shopping or we're accused of somehow impeding

10  this case on an unnecessary point.

11      The other question that I have is that there is

12  substantial law of this case that has been developed. And I

13  question whether or not the Delaware court will be bound by

14  that or Delaware district court. It's not --  it's not a

15  higher court. I think it's free to theoretically -- I hope

16  it's not the case -- but theoretically, it could reevaluate

17  the position and could easily say that you are bound by my

18  prior order and that the district of Connecticut's opinion

19  might be nice, but now we are in Delaware.

20      I think we are entitled to the law of the case

21  that's been established here. I think that makes it an

22  important issue. This should just not be swept out and sent

23  out to Delaware based upon hypotheses.

24      THE COURT:  Okay. Do you want to go to the

25  third?

1    MR. CARDONE:  I think I've gotten--

2    THE COURT:  I think we have covered most of

3    this.

4    MR. CARDONE:  It's --  I think I've gotten it

5    that to this court, whether or not you're granting a

6    mandamus review of a judge's abuse of discretion or whether

7    or not you're granting a leave to appeal, there is just --

8    based upon --  based upon the Warrick case, based upon the

9    absence of a record for what was done in this case, that

10   this was an abuse of discretion by the bankruptcy court in

11   light of fact that the parties did not seek it. And it

12   should be reviewed.

13   On the record alone the actions were not

14   justified and they only set up what I believe will be, you

15   know, will be further litigation in Delaware because I

16   would be remiss in not raising the recusal of Judge Walsh

17   in Delaware based upon the appearance of what could have

18   happened.  Third Circuit law is very clear that an

19   appearance of impropriety has to be guarded against and I

20   think this is slowing this case down and just going to

21   impede it further to a resolution.

22   MR. GOLDMAN:  Your Honor, I have one or two

23   preliminary points before I get to the application of the

24   standard for leave to appeal.

25   First of all, I just wanted to note that at one

38

1   point maybe 10 minutes ago Mr. Cardone made some statements

2   about the bondholders and who they were and what their

3   rights were and the fact that they may have gotten a

4   windfall. I wanted to make a point that that really isn't

5   on the record now and that's an argument that he's going to

6   have an opportunity to make if the substance of this case

7   does move forward. But that really is inappropriate and I

8   don't think we should get into the debate on the underlying

9   merits of this case at this point.

10          The frustration that was expressed in the

11  brief, in our opposition response to his motion, is really

12  that a case has been brought, an adversary proceeding has

13  been brought, allegations have been made. There is some

14  beginnings of a legal theory on it.

15          We admittedly thought that summary judgment

16  might have been the quickest way to end it and it turned

17  out we were wrong and now there is going to have to be a

18  trial. But we should move on with the trial. And instead,

19  the government is engaging in this motion.

20          The government just said that it's going to try

21  to recuse Judge Walsh if it losses on this motion.

22          There is a chilling sentence on the bottom of

23  page 12 of their motion that says that if the order of

24  transferring this case is a nullity, then the transferee

25  court would have no jurisdiction. Thus, to avoid

1   litigating--

2         THE COURT: Why don't I just read the sentence.

3         I read it.

4         MR. GOLDMAN: I won't -- "threaten" may be the

5   wrong word, but the point is being made that we are going

6   to have to engage in procedural motion after procedural

7   motion after procedural motion.

8         The frustration that the trustee has as a

9   fiduciary of the bondholders is simply an allegation has

10   been made and it should be judged and we should get to the

11   substance of that. And that for the IRS, it may be

12   appropriate to just freeze things for a very long period of

13   time and say that they are making a point. But for

14   bondholders it means that the judgment day, the day when

15   this allegation is going to be judged, will never occur.

16   And so we just think it's very important to move ahead.

17         In that regard, if you apply the test for

18   whether leave to appeal of a interlocutory order should be

19   granted, what the case law does is it effectively borrows

20   the same standards it used in 28 U.S.C. 1292(b), if a Court

21   of Appeals was going to take an appeal of a interlocutory

22   order in a district court, and that is essentially another

23   three prong test.

24         The order involves a controlling question of

25   law as to which there is substantial ground for difference

40

1   of opinion and an immediate appeal may materially advance

2   the ultimate termination of a litigation.

3            Again, I would start with the third prong

4   because I do not believe that this interlocutory order, or

5   the other ones that are predicted, are going to materially

6   advance the ultimate termination of litigation. Nor do I

7   believe that they are going to change the outcome, whatever

8   it will be.

9            I think the important thing is to get to a

10  competent court and have this trial.

11           So I believe that if the standard being applied

12  is will this appeal materially advance the ultimate

13  termination of litigation, the answer is no, and therefore,

14  leave to appeal should not be granted.

15           I then move up to the first part of the three

16  prong test, which is the order involves a controlling

17  question of law.  And that phrase has been interpreted by

18  courts and it's really cited in my colleague's brief, the

19  brief filed by Akin, Gump, but it either has to be a

20  question -- reversal of which would terminate the case,

21  which obviously this would not be, or a determination that

22  would materially effect the outcome of the litigation.

23           Again, the point we have made a number of times

24  is we do not believe this issue we're debating is going to

25  materially effect the outcome of litigation.

1    For that reason, we think it's easy to see that

2  this doesn't meet the test for leave to appeal of an

3  interlocutory order.

4    THE COURT:  Thank you.

5    I'm going to deny the motion for leave to

6  appeal and my reasons are substantially the reasons set

7  forth in the oppositions by the debtor and the trustee. I

8  don't believe that the bankruptcy court's action was

9  inconsistent with the district court's order on the last go

10  round.

11    Although when I read Judge Schiff's opinion, I

12  don't see the analysis on interest of justice that I think

13  is there present in the record explicitly spelled out.  It

14  does seem to me that he acted in the interest of justice in

15  deciding to transfer this case.

16    As was pointed out by counsel for the trustee,

17  this is an unusual situation. It is a situation where the

18  affairs of what happened in Delaware will be attacked. I

19  can see it as being quite reasonable for a judge to

20  conclude that it's most appropriate for the Delaware

21  bankruptcy court to have a shot at making the decision.

22    I don't find persuasive the government's

23  analysis in terms of Judge Walsh having to be recused,

24  although that's not really the issue, I guess. The issue is

25  the reasonableness of Judge Schiff's assumption that Judge

1  Walsh could take the case.

2           I don't know that I really have to get into

3  whether I have the power to mandamus the bankruptcy court

4  whether it was acting outside of its jurisdiction because I

5  think the interest of justice are clearly --  I'll say

6  this:  I think it's clear that Judge Schiff did not abuse

7  his discretion in acting in what he perceived the interest

8  of justice and there is a more than reasonable basis for

9  him to transfer the case for that reason.

10          I don't think the requirements under the

11 collateral order doctrine are satisfied. I really don't see

12 this as being an important issues in the context of this

13 case. I think trustee's counsel got it right when you say

14 it's got to be decided by one competent bankruptcy judge or

15 another competent bankruptcy judge.

16          As to the third prong, I won't go into all the

17 verbiage, but I think the government also fails to satisfy

18 that prong as well.

19          And as to the interlocutory appeal, 158(a)(3),

20 I do not see how the granting leave to appeal is going to

21 advance the litigation. And I don't see how we are dealing

22 with a controlling question of law either.

23          So my gut reaction is that I would most

24 probably be persuaded that Judge Schiff came out on the

25 right side, that the case should be transferred, although I

43

1    can't say for sure. That's not my call to make at this

2    point, in any event.

3            I think that finishes up. And you all can go on

4    to your next hearing before maybe Judge Walsh.

5            Thank you very much. The argument was helpful.

6            MR. GOLDMAN:  Thank you.

7            MR. ZENSKY:  Thank you.

8

9            ( Whereupon, Court stood in recess at 3:10

10   p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

44

```
1
2
3                    C E R T I F I C A T I O N
4
5
6
7
8
9            I, Corinna F. Thompson, RPR, LSR, do hereby
10   certify that the foregoing pages, pages 1 through 43,
11   represent a true, accurate and complete transcription of my
12   stenographic notes to the best of my ability of the
13   proceedings held in the matter of Scott Cable vs. U. S.
14   Trustee, 3:99CV918(AWT), before the Honorable Alvin W.
15   Thompson, United States District Judge, at the United
16   States District Court, District of Connecticut, 450 Main
17   Street, Hartford, Connecticut on August 30, 2001.
18
19
20
21
22
23
24   _____
25            Corinna F. Thompson, RPR, LSR #137
```

**EXHIBIT B**

1

IN THE UNITED STATED BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE


In Re:                          )
                                )
        ACE-TEXAS, INC., et al. )  Case No. 96-166
                                )
            Debtors.            )
                                )
UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,          )
                                )
v.                              )  Adv. No. 01-4605
                                )
STATE STREET BANK AND TRUST     )
COMPANY, as Trustee for Junior  )
Subordinated Secured PIK Notes, )
                                )
            Defendant.          )

                    United States Bankruptcy Court
                    824 Market Street - Sixth Floor
                    Wilmington, Delaware


                    December 19, 2001
                    3:30 p.m.


BEFORE:    HONORABLE PETER J. WALSH
           United States Bankruptcy Judge



                    TRANSCRIPT OF PROCEEDINGS


                    WILCOX & FETZER
        1330 King Street- Wilmington, Delaware 19801
                    (302) 655-0477



**W&F**
**WILCOX & FETZER LTD.**
Registered Professional Reporters





1        MR. MONACO:  Good afternoon, Your Honor,

2   Frank Monaco for State Street Bank and Trust.

3        If I could make a few introductions

4   before we get started.  I would like to introduce my

5   co-counsel, Ira Goldman.  He's already previously been

6   admitted pro hac vice.

7        THE COURT:  Okay.

8        MR. MONACO:  And would I also would like

9   to move the admission pro hac vice of Mitchell Hurley

10  who represents the debtors.  He's a member in good

11  standing of the Bar of New York.  And I would move his

12  admission pro hac vice.

13       THE COURT:  Okay.

14       MR. MONACO:  Thank you, Your Honor.

15       THE COURT:  Ready to proceed?

16       MR. SHAPIRO:  Yes, Your Honor.

17       Your Honor, my name is Alan Shapiro.

18  I'm an attorney with the United States Department of

19  Justice in Washington, D.C.

20       I was relatively recently assigned to

21  this matter which has been ongoing for a couple of

22  years.  Before I was assigned to the case, another

23  attorney in our office, John Cardone, who is with us

24  today, handled the case.  He recently took a job with

1    the Internal Revenue Service, which I guess brings me

2    to the position that I'm in now.

3              I don't pretend to have nearly the

4    knowledge of this case as my predecessor.  And it is

5    obviously a pretty thick file.  But, nevertheless, I

6    understand that we are making a motion to transfer

7    here today, and that this is not the first time.  I

8    also don't want to waste the Court's time.  Perhaps

9    you could indicate to me how much of an opportunity

10   that you've had to review the papers that have been

11   put before you and the facts that have been put before

12   you.

13             THE COURT:  I reviewed the motion

14   papers.

15             MR. SHAPIRO:  Okay.  It's not my

16   intention to take up much of your time then.

17             Basically, we believe that the trial

18   judge in Connecticut, Judge Schiff, acted without

19   authority to transfer the case.  And we believe that

20   you have the authority, in considering your

21   jurisdiction, to review whether this Court is the

22   proper place for this adversary proceeding to take

23   place.

24             Obviously, there is a presumption that



WILCOX & FETZER LTD.
Registered Professional Reporters

1  the Connecticut Court, since it was a proper venue for

2  the whole case, would be a proper place for the

3  adversary proceeding.  And we understand, of course,

4  that the debtor is a Texas corporation with a

5  Connecticut principal place of business and that five

6  of the six creditors making up the 85 percent group of

7  one of the claimants that is competing with the IRS

8  for the pot of money that is left come from either

9  Connecticut or Massachusetts.

10            On an evidentiary basis, we really don't

11  feel that there are any contacts with the State of

12  Delaware that really support bringing the case to

13  Delaware.  Clearly, there was an earlier proceeding

14  involving a debtor or the debtor that we have before

15  us today.

16            In addition, and I think cutting more to

17  the chase, we are concerned, the Government is

18  concerned that we won this hard fought decision from

19  Judge Thompson, the District Court judge in

20  Connecticut, which essentially says that the

21  Government is not precluded from pursuing this

22  adversary proceeding, that it did receive reasonable

23  notice and, therefore, can go forward.

24            And, in our view of the things, the law



1    of the case coming from that decision is very

2    important.  And we are concerned about being put in

3    the potential position -- we don't know the minds of

4    our opponents or the Court -- of having to re-litigate

5    at the trial level decision that we think really is

6    the law of the case.

7              THE COURT:  Well, my view is, and I

8    don't think anybody's addressed this issue, but I

9    think it is the law of the case even if the case stays

10   here.

11             MR. SHAPIRO:  Okay.  Well, that

12   certainly answers one of our concerns.

13             The other is, and I'm sure from reading

14   the motion you picked up on this, and it's a sensitive

15   issue, one in which we meant no disrespect or anything

16   of that nature.  But there are suggestions in Footnote

17   6 of our brief that there was the potential for

18   recusal on this case.  When I say potential, I really

19   emphasize that word.

20             We are concerned about the Court feeling

21   uncomfortable or feeling that it is in a difficult

22   situation having to review a decision that it made in

23   a confirmation order involving a predecessor

24   corporation in order to reach the merits of the

*[handwritten margin note: the law of the case is the law of the case even if the case stays in Delaware]*



1    adversary proceeding itself.  And because of that,

2    obviously we raised that in our reasons why we didn't

3    think that this necessarily was the best place for the

4    case to be, that adversary proceeding to be handled.

5              Obviously, I'm treading as lightly as I

6    can on this issue.  But only you yourself would know

7    whether you would personally find it difficult to

8    revisit the facts and to view them afresh with the

9    additional information and evidence that will come up

10    in discovery.

11              And having covered that as sensitively

12    as I perhaps can, I am confident that whatever

13    decision that you end up making in this particular

14    motion will be a good one.  Thank you.

15              Oh, I apologize to my opposing counsel.

16    I spoke a little too soon.  There was one final

17    point.  A very strong reason for our making this

18    particular motion is because we felt that from our

19    reading of the case law that it was necessary in order

20    for us to protect and preserve a record for appeal on

21    a particular right.  And while that might be

22    frustrating to our opposing counsel, that really was a

23    very strong motivating factor in our decision.  We

24    felt compelled to take care of that procedural

1  matter.

2            Thank you.  I apologize.

3            THE COURT:  Okay.

4            MR. GOLDMAN:  Good afternoon, Your

5  Honor.  I'm Ira Goldman from the law firm of Shipman &

6  Goodwin.  We're counsel to the State Street Bank,

7  which is the indenture trustee of these junior PIK

8  notes which are the issue.  And we essentially came

9  into being in December of 1996 at the end of the

10  Delaware bankruptcy.  And I have been involved in this

11  case since its very beginning.

12            It's a case about priorities between two

13  creditors.  There is a pot of money and there are two

14  creditors, which is not that unusual.  But what is

15  unusual about the case, if you've read the papers,

16  you've seen that, is that it's a case where what's

17  being called into question is when a creditor gets a

18  certain indebtedness, certain bonds from out of the

19  bankruptcy proceeding, what does that mean?  What is

20  the nature of that property interest and is it subject

21  to attack?

22            I think Judge Schiff, when we argued

23  this adversary proceeding before him, first thought

24  that it was governed by res judicata and that was



1    overruled on appeal.  And I think he then, as he went

2    through this, decided that, and said right in his

3    decision to transfer the adversary proceeding, that he

4    was troubled by being put in the position of having to

5    revisit the Delaware proceeding because the way the

6    IRS framed it, that would be essential in order to

7    buttress the case that they are making, which is that

8    there was something about the granting of those junior

9    PIK notes that they should be viewed in a different

10   light or subordinated.

11            And Judge Schiff finally thought that it

12   was appropriate, in his discretion, to transfer it to

13   the Delaware Court where the Delaware Court would be

14   the best party to make that extraordinary review.

15            Judge Thompson on appeal, or really it

16   was a motion for leave to appeal, stated that he felt

17   Judge Schiff certainly didn't abuse his discretion and

18   that certainly that was a legitimate reason to

19   transfer it.

20            At this point, the bond holders have

21   been watching this pot of money for three years now.

22   It really came into being in January of 1999.  So we

23   will be reaching the third anniversary very soon.

24   It's about 41 million dollars.  And it's sort of

**W&F**
**WILCOX & FETZER LTD.**
Registered Professional Reporters

framed as a winner take all situation where either the
IRS is entitled to it if they are right in their
arguments or the bond holders are long overdue in
getting their distribution if the IRS is wrong.

And we simply want this to move ahead
quickly.  We don't particularly care that much about
the forum because we think one competent bankruptcy
judge or another one will ultimately determine this
case when it's finally heard on its merits.

But most important to every bond holder
that we've been able to talk to is that it finally be
heard and it finally move forward and that a decision
be reached.  So that our overriding goal is just to
get this moving.  And we think that to follow the
request of the IRS and transfer this again will simply
be one more delay, which would be unfortunate and not
fair to the bond holders who have been waiting so
long.

Thank you, Your Honor.

MR. HURLEY:  Good afternoon, Your
Honor.  Mitchell Hurley from Akin, Gump, Strauss,
Hauer & Feld for the debtors, Scott Campbell
Communications.  I will be very brief in my comments
this morning.



1    We agree with Mr. Goldman in his

2  comments and join in the motion.  We want to register,

3  though, first our agreement with Judges Schiff and

4  Thompson that it would serve and did serve the

5  interest of justice to transfer the adversary

6  proceeding to this Court.  And while we acknowledge

7  reasonable minds could differ about a decision to

8  transfer the adversary proceeding down here, the most

9  important thing for the debtor, as with the bond

10  holders, is that we proceed to the merits as quickly

11  as we can.

12    As Mr. Goldman mentioned, it's been

13  several years since the adversary proceeding was

14  filed.  And we would like to move forward with it as

15  quickly as we can.

16    So just moving on quickly to the

17  arguments that the Government made about recusal or

18  disqualification.  We would submit that there is no

19  basis for a Section 455 disqualification in this

20  case.  The analysis under Section 455 is kind of an

21  affirmative demonstration by the Court of favoritism

22  or deep-seated antagonism to one party or the other or

23  an indication that the Court has prejudged issues that

24  would be determined in the proceeding.

**W&F**

**WILCOX & FETZER LTD.**

Registered Professional Reporters

1    I think it's clear from the Government's

2  papers that they have not come up with any information

3  or data that would suggest that this Court has any

4  favoritism toward one side or the other or antagonism

5  towards one side or the other.

6    In fact, the Supreme Court case that

7  they rely on, I think, is pretty clear on this point.

8  That is Liteky V. United States, 510 US540 114 Supreme

9  Court 1147.  Justice Skalia, in that case, said

10  clearly, and I'm quoting, "Opinions formed by the

11  judge on the basis of facts introduced or events

12  occurring in the course of the current proceedings, or

13  of prior proceedings, do not constitute a basis for a

14  bias or partiality motion unless they display a

15  deep-seated favoritism or antagonism that would make a

16  fair judgment impossible."

17    I think it's plain, in this case, those

18  that factors are not present.  In fact, when Justice

19  Skalia reached for an example of when that kind of

20  antagonism would be present, he had to go all the way

21  back to a case from 1921.  That was a World War I

22  espionage trial where the defendant was a German

23  American.  The District Court had said, quote, "One

24  must have a very judicial mind in deed not to be



12

1    prejudiced against the German Americans because their

2    hearts are reeking with disloyalty."  That's the kind

3    of comment that creates a 455 disqualification.

4            In this case, there hasn't been any kind

5    of comment that would indicate a preference one way or

6    another from this Court.  And I think it's clear, too,

7    that judges all the time are asked to review issues

8    involving parties that they have had dealings with

9    before and factual issues that have been presented to

10   the Court before in different circumstances.  And I

11   think that it's a fundamental precept of our system of

12   justice that a judge's impartiality is presumed unless

13   there is some strong evidence to suggest otherwise.

14   And we submit that there has been no such evidence

15   presented in the Government's papers.  Thank you.

16           MR. SHAPIRO:  May I reply, Your Honor?

17           THE COURT:  Yes.

18           MR. SHAPIRO:  I wanted to make clear on

19   the record, there was a statement by opposing counsel,

20   and I think it might have even been made by Judge

21   Schiff as well, the trial judge from the Connecticut

22   Bankruptcy Court.

23           The Government's position is that it did

24   not concede that it would be essential to review the

**W&F**

**WILCOX & FETZER LTD.**

Registered Professional Reporters

1    record of the bankruptcy proceeding that was had in

2    this particular Court with the predecessor of the

3    debtor for which the adversary proceeding actually

4    pertains to.  There has been suggestions to the

5    contrary.  It's our position that we were either

6    misquoted or that's just simply inaccurate.  We do not

7    take that position and have not taken that position.

8    In the future, facts may show otherwise.  But I wanted

9    the record to be clear on that.

10            And, also, the attorney that just spoke

11    a moment ago -- I apologize.  I missed his name.  But

12    the Government is not suggesting that there is any

13    predisposition of yourself towards the Government or

14    toward any of the other parties.  We are not

15    suggesting that there is any bias on the part of the

16    Court.  I think I went to great lengths to show how

17    sensitive I thought the issue was to even bring up the

18    topic itself.

19            And I did refer the Court to Footnote 6

20    of our brief.  And the point that we were trying to

21    get to is a different case, which is cited in Footnote

22    6.  I believe one of the names of the parties was

23    Frates, F-R-A-T-E-S.  It's the suggestion that in some

24    instances, because a judge may have made a prior

1  ruling on a related matter, that they may feel, quote,

2  boxed in.  I'm not suggesting that you yourself

3  actually may feel that way.  But it was a concern of

4  ours that we felt that we had to raise so you could

5  consider and decide what you think is right.

6              And there is another argument in

7  Footnote 6 that has to do with the appearance as

8  opposed to actual partiality.  Again, that might be a

9  fine distinction.  But it is a statutory distinction.

10  So I didn't want you to be left with the impression

11  that we were suggesting any actual bias or

12  predisposition or even necessarily that these other

13  things that I've indicated that we were concerned

14  about are actually true.  We just wanted you to

15  realize that we were thinking of them and hoped that

16  you would think of them too.  I'm sure that we will be

17  getting a good decision no matter what that decision

18  is from you.  Thank you.

19              THE COURT:  Okay.  As I indicated, I did

20  read the motion papers.  In fact, I read them more

21  than once simply because I found it a rather

22  interesting issue.

23              I'm going to deny the motion for the

24  following reasons:  Number one, I'm not going to say

15

1   that I disagree with Judge Schiff's decision.  But

2   having the case here strikes me as presenting somewhat

3   of an anomaly because the alternative relief requested

4   in the adversary proceeding is subordination under

5   Section 510(c), and it just strikes me as strange that

6   the court that is not presiding over the chapter case

7   would make a determination for subordination under

8   Section 510(c).

9           But, be that as it may, Judge Schiff,

10  for reasons he thought appropriate, transferred the

11  case back here.  And my understanding of the law is

12  that an order transferring venue is not an appealable

13  order.  But, in any event, you got a hearing before

14  the District Court judge in Connecticut.  And the

15  District Court judge, I guess, in effect, denied your

16  request for an interlocutory appeal and basically said

17  that Judge Schiff did not abuse his discretion in

18  transferring the case.

19          And, in that context, it would seem

20  highly inappropriate for me to send the case back to

21  Connecticut because it, in effect, would be saying to

22  Judge Schiff that I didn't agree with what he did nor

23  did I agree with the District Court, what the District

24  Court did on appeal.  And I just don't think that the



1    transferree court has that kind of discretion to send

2    the case back.

3                And it's not as if I'm looking for

4    work.  So, indeed, if I thought it was appropriate to

5    send the case back, I would.  But I don't think it's

6    within my authority to do so.  And for that reason,

7    I'll deny the motion.

8                With respect to the recusal matter,

9    obviously that issue is not before me.  But I must

10   confess, at this stage, the only thing I know about

11   this case is I have a vague recollection about it.  It

12   goes back to 1996.  And I've had probably several

13   hundred confirmation hearings since then.  And I can

14   safely say that I don't remember a thing about the

15   confirmation issues that were addressed in that case

16   back in 1996.

17               But I'm not -- if the Government wants

18   to file a motion seeking recusal, they are certainly

19   free to do so.  And, indeed, given my caseload, I

20   certainly think I would look diligently for a basis

21   for doing so and give it to another judge.  The only

22   problem, of course, is the other bankruptcy judge is

23   equally burdened with a caseload.  So maybe that

24   wouldn't be appropriate.

1    But, in any event, that issue is not

2  before me.  And the case has been transferred here.

3  And I view myself as having no authority to reverse

4  effectively and act like an appellate court to the

5  District Court and send the case back to Connecticut.

6  So I'm not going to do that.

7    The Government had an alternative

8  request.  And Mr. Shapiro didn't mention that in his

9  argument.  And I'm not sure where you stand on that.

10  Namely, and I'm now reading from the Page 13 of your

11  motion papers, it says, "This adversary proceeding

12  arose in a different bankruptcy case than the case

13  under which it was docketed by the clerk.  The law of

14  this case is that the United States was not bound by

15  the terms of the confirmation order entered in the

16  Ace-Texas, Inc., and we maintain that we are not a

17  party in interest for purposes of confirming the

18  plan."  And then the request is that this proceeding

19  be opened in a new case.

20    Number one, I don't know how to do

21  that.  And, number two, I don't know why this

22  adversary has been appended to the prior chapter

23  case.  And I assume the prior chapter case, that is

24  Case 96-166, has been closed.  And as far as I'm



1    concerned, there is no reason why this adversary

2    proceeding should be appended to the prior chapter

3    case.

4            Certainly, it's not unusual and not

5    routine, but not unusual for bankruptcy courts to

6    transfer the venue of adversary proceedings and to a

7    forum which has absolutely no connection to the case.

8    And the caption of the case in the transferee forum, I

9    think, should just be the adversary proceeding.

10           So if the Government has some discomfort

11   in the way this case was docketed, I can resolve that

12   matter by simply divorcing this adversary proceeding

13   from the prior chapter case and have it on a

14   stand-alone basis.

15           As I mentioned, I have no understanding

16   as to why it was appended, if you will, to the prior

17   chapter case.  So, number one, since I don't know how

18   to open a new bankruptcy case where no petition has

19   been filed, and because there is no reason to append

20   this adversary proceeding to the old case, I will

21   simply sever that connection.

22           Any questions?

23           MR. SHAPIRO:  Yes, Your Honor.  In

24   severing it, will it have some new number of some sort

1   that will identify it?

2         THE COURT:  I don't think so.  I'll have

3   to talk to the clerk of the court.  But I don't think

4   there is any reason why it would have a new adversary

5   number.

6         MR. SHAPIRO:  Should we refer to the

7   number of the overall case in the Connecticut court?

8         THE COURT:  No, you just refer to the

9   adversary number.

10         MR. SHAPIRO:  Okay.

11         THE COURT:  When you say refer to it,

12   I'm not sure what you mean.  I'm looking at the

13   caption of the case now.  What I'm suggesting is,

14   there is no reason for there to appear on the caption

15   of any of the pleadings the in Re: Ace-Texas, Inc.,

16   Case Number 96-166.  There is adversaries proceedings

17   transferred to and out of this Court all the time.

18   And the transferee court just labels it as an

19   adversary proceeding.

20         MR. SHAPIRO:  Your suggestion is a good

21   one.  Thank you.

22         THE COURT:  So I will undertake to do

23   some type of order that removes the reference to the

24   prior case.  Does anyone know whether the prior case



1  was closed?

2           MR. GOLDMAN:  I assume it was.

3           THE COURT:  Even if it was wasn't

4  closed, as I understand the gravamen of the complaint

5  here, it's to have the PIK notes declared as equity

6  or, in the alternative, to subordinate them pursuant

7  to Section 510(c).  And, to me, that relates to what

8  is going on in the chapter case in Connecticut, not

9  what is going on in the old Chapter 11 case in this

10 Court.

11          Okay.  Anything else?  We stand in

12 recess.

13          Oh, I suppose we should have a pretrial

14 conference to find out where this, the status of the

15 case.  And now you'll see how crowded my calendar is.

16          Before we do that, I've got a little bit

17 of time before my next hearing.  Do you want to tell

18 me, can you tell me now the status of the case, what

19 discovery has been done, what issues, what motions

20 have been made?  Any dispositive motions been made in

21 the case?  Or are we ready for trial?

22          MR. SHAPIRO:  Your Honor, I believe

23 we're ready to commence discovery.

24          THE COURT:  No discovery yet?

```
 1            MR. SHAPIRO:  Not to my knowledge.  I
 2  think there has been a little bit of exchange of
 3  documents on an informal basis.  But I don't believe
 4  there has been any discovery.  Of course, since I'm
 5  new, I'll defer to my opposing counsel if you want to
 6  correct me on that.
 7            MR. GOLDMAN:  There has been no
 8  discovery yet, Your Honor.  The State Street did file,
 9  it's so long ago now, a motion.  It was part of the
10  summary judgment but it was in the alternative stating
11  they were necessary parties that had not been joined,
12  those parties being the bond holders themselves.
13  Right now it's just the indenture trustee.
14            And yet some of the allegations seem to
15  go back to a period of time before the indenture
16  trustee existed.  And that issue has not been
17  resolved.  So that would be an issue that we might
18  have to tee up by filing a motion again.  I don't know
19  whether that motion is still open at this point.
20            THE COURT:  Why don't you file a new
21  motion if you want to raise that?
22            MR. SHAPIRO:  Your Honor, my memory has
23  been jarred a bit.  There is another pending motion,
24  too.
```



```
 1              Ira, do you have a pending motion or
 2   Mr. Monaco?  I might have confused the parties.
 3   Somebody has a pending motion.
 4              MR. HURLEY:  That's right.  We had a
 5   motion we filed with the bankruptcy court in
 6   Connecticut on behalf of Scott Cable to intervene in
 7   the adversary proceeding.  And we will presumably
 8   resume the motion here.
 9              THE COURT:  My recollection is that
10   Judge Schiff allowed you to intervene solely for the
11   purpose of the summary judgment motion.
12              MR. SHAPIRO:  That's correct.
13              THE COURT:  If you want to intervene,
14   generally, I think you are going to have to file a
15   motion to achieve that.
16              MR. HURLEY:  Okay.  Thank you.
17              MR. MONACO:  Your Honor, could I raise
18   another matter related to all this?  Debtors' counsel
19   requested that I act as, I guess, special local
20   counsel for the debtors.  I also represent State
21   Street.  I just raise that now because our interests
22   are joined.  And I didn't know whether that would
23   cause any problem with respect to the Court.  If I was
24   going to do that, to file some kind of application to
```

**W&F**

**WILCOX & FETZER LTD.**
Registered Professional Reporters

1   be retained as special counsel or they could just file

2   pleadings --

3          THE COURT:  Why don't we see if the

4   debtor is going to be allowed to intervene first.

5          MR. MONACO:  Okay.

6          THE COURT:  Okay.  Well, you've answered

7   one question.  The case is not ready for trial.  And I

8   assume these two motions will be filed.  And I assume

9   the parties will commence discovery.

10         And so why don't we simply have a status

11  conference?  It seems to me it ought to be about 90

12  case days out in order for you to undertake some

13  meaningful discovery.  So why don't we look at a

14  status conference?  How about April 5 at 11:30?

15         MR. GOLDMAN:  What day of the week is

16  that, Your Honor?

17         THE COURT:  It's a Friday.  Okay.  That

18  will be a status conference.  Okay.

19         Anything else?

20         MR. SHAPIRO:  Yes, Your Honor.

21  Obviously all the parties and their representative are

22  scattered throughout the states.  Is it possible that

23  we could do that telephonically?  How do you feel

24  about that?



WILCOX & FETZER LTD.
Registered Professional Reporters

```
 1              THE COURT:  Where are you located?
 2              MR. SHAPIRO:  I'm located in Washington,
 3  D.C.
 4              THE COURT:  Well, that's no problem for
 5  you; is it?
 6              MR. SHAPIRO:  Well, it does take a train
 7  ride to come up and go back.  So I do need a
 8  significant amount of work time to come to the Court
 9  for what probably won't take all that long.  But if
10  you wish, I will certainly make myself available.
11              THE COURT:  Are you people going to be
12  acting as trial counsel?
13              MR. GOLDMAN:  Your Honor, I certainly
14  think we will still be involved.  While I'm not
15  anxious to maximize my trips to Delaware, I think, to
16  the extent the status conference may be meaningful, I
17  think sometimes a face-to-face status conference is
18  preferable.
19              THE COURT:  Yes, I would prefer that.
20  And this is -- and I allow a lot of telephone
21  appearances in adversary proceedings, particularly
22  where they are preference actions because they are so
23  routine.  But this is a more substantial matter.  And
24  I think it would be appropriate to have personal
```



1  appearances.

2           Okay.  So we will have a status

3  conference on April 5 at 11:30.  And if anybody is

4  going to file a motion to add additional parties or

5  the debtor wants to intervene, will have the file a

6  motion, and, as I indicated, the Government can file

7  whatever motion it deems appropriate regarding

8  recusal.  And so I think that's where we are.

9           MR. SHAPIRO:  Do you want to lay out any

10 guidelines for discovery or do you want us to just

11 commence discovery and see where we were on April 5?

12          THE COURT:  Commence discovery and see

13 where we are on April 5.

14          We stand in recess.

15          (Hearing adjourned at 4:00 p.m.)

16                  -  -  -

17

18

19

20

21

22

23

24



26

State of Delaware)
                 )
New Castle County)


C E R T I F I C A T E


        I, Anne L. Adams, Registered

Professional Reporter and Notary Public, do hereby

certify that the foregoing record, in its entirety, is

a true and accurate transcript of my stenographic

notes taken on December 19, 2001, in the

above-captioned matter before the United States

Bankruptcy Court for the District of Delaware.




            _____ *Anne L Adams*

                 Anne L. Adams




DATED: _____ *1/9/02* _____

**W&F**
**WILCOX & FETZER LTD.**
Registered Professional Reporters

# S I G N - I N   S H E E T

CASE NAME: _United State v. State Street_

CASE NO.: _A-01-4605_

COURTROOM NO.: _2_

DATE: _12/19/01_

| NAME | LAW FIRM OR COMPANY | CLIENT REPRESENTING |
|---|---|---|
| Alan Shapiro | U.S. Department of Justice | United States |
| Ira Goldman | Shipman + Goodwin LLP | State Street Bank, Ind. Trustee |
| Frank Monaco | Walsh Monzack Monaco | " " " " |
| Mitch Hurley | Akin, Gump & Strauss etc. | Scott CABLE Comms. In |
| | | |
| | | |
| | | |
| | | |

**PLEASE PRINT OR YOUR APPEARANCE CANNOT BE CORRECTLY NOTED!**