UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>Plaintiff, )<br>) **Bankr. Court Adv. Proc. No. 01-4605**<br>v. )<br>)<br>STATE STREET BANK AND TRUST CO., as ) **Dist. Court Case: 06-cv-34-KAJ**<br>  Indenture Trustee for Junior Subordinated )<br>  Secured PIK Notes, )<br>SCOTT CABLE COMMUNICATIONS, INC., )<br>  as Debtor in Possession (Chapter 11), )<br>ALLSTATE INSURANCE CO., )<br>MEDIA/COMMUNICATIONS PARTNERS, L.P., )<br>CHESTNUT STREET PARTNERS, INC., )<br>MILK STREET PARTNERS, INC. and )<br>TA INVESTORS, )<br>)<br>Defendants. ) | |

**REPLY TO (DI# 419) JOINT OBJECTION TO
UNITED STATES' MOTION FOR LEAVE TO APPEAL (DI# 415)**

PETER SKLAREW
Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Washington, D.C.  20044
(202) 307-6571 / Fax (202) 514-5238
peter.a.sklarew@usdoj.gov

May 8, 2006

**TABLE OF CONTENTS**

1. The Strictly Limited Trial Depositions Do <u>Not</u> "Moot" the Problem of Unavailability of Witnesses Located Within 100 Miles of the Connecticut Court . . . . . . . 1

2. The Argument that Nothing is Left of the Main "Case" is Wrong and What Is Left Bears Considerably on this Adversary Proceeding . . . . . . . . . . . . . . . . . . . . . . . . . . 3

3. "Four Different Judges" Have *Not* Rejected the Government's Position . . . . . . . . . . . . 4

4. The Arguments Regarding the Twin "Failures" to Appeal the Denial of Retransfer in 2001 or to Seek Recusal at that Time, Are Misplaced, and the Argument Regarding the "Failure" to Inform Judge Walsh in Advance that We Would Seek Retransfer if he Recused Himself is Offensive to the Court . . . . . . . . . . . . . . . . . . . . 6

5. Pre-trial Rulings by Judge Carey Will Not be Rendered a Waste of Judicial Resources Merely Because the Proceeding is Re-Transferred; Nonetheless, the Very Fact that Defendants Raise this Kind of Argument Strongly Supports Granting Interlocutory Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

6. The Allegation of "Judge Shopping" is Untenable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

7. Judge Carey Did Not Consider Bankruptcy-Specific Factors in the Venue Analysis and Did Accord Overriding Weight to Avoiding Delay . . . . . . . . . . . . . . . . . . 12

8. The 2001 Rulings are "Inextricably" Interwined with the Venue Determination in 2006, Supporting Pendent Appellate Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

9. There is No "Precedent" Requiring Application of 28 U.S.C. § 1292(b) and this Court's Previous Pronouncements on the Issue are All Dicta . . . . . . . . . . . . . . . . 14

**Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**TABLE OF CASES**

Clemmons v. Wolfe, 377 F.3d 322 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fleet Mortg. Group, Inc. v. Kaneb, 196 F.2d 265 (1st Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 14

In re Del. & Hudson Ry Co. 96 B.R. 469 (D.Del. 1988), *aff'd* 884 F.3d 1383, 1384 (3d Cir. 1989) . 15

In re EDP Medical Computer Systems, Inc., 178 B.R. 57 (M.D.Pa. 1995) . . . . . . . . . . . . . . . . . . 15

In re Rivera Torres, 432 F.3d 20 (1st Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

In re School Asbestos Litig., 977 F.2d 764 (3d Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Trem-Lean Meat Products, Inc., 11 B.R. 1010 (D.Del. 1981) . . . . . . . . . . . . . . . . . . . . . . . 16

**REPLY TO (DI# 419) JOINT OBJECTION TO**
**UNITED STATES' MOTION FOR LEAVE TO APPEAL (DI# 415)**

This reply does not repeat arguments in, and continues the abbreviations established in, the government's initial brief (DI# 416) in support of the motion for leave to appeal the 4/10/06 Order denying re-transfer. It is being submitted because the Joint Objection of the note holder defendants (in which the Indenture Trustee and the Debtor have filed separate "joinders") (1) contains various errors and omissions that could cause the Court to draw inferences and assumptions that would be incorrect; (2) raises certain legal points and cites cases that the government's initial brief did not anticipate, particularly as concerns the standard for granting interlocutory appeal; and (3) incorrectly attributes various "concessions" to the United States that are not concessions and that are objectively incorrect. This reply assumes that the Court has read the government's opening brief and should not be viewed as a distillation of the government's primary arguments. The arguments below are not in order of those appearing in the Joint Objection, but rather are organized to place some of the more important points first, except that we leave until last the important predicate issue of whether this Court is required to employ the test under 28 U.S.C. § 1292(b), which we maintain, contrary to the Joint Opposition, is simply not compelled by any local "precedent." We also cite an additional case within the Third Circuit in which interlocutory appeal from the denial of venue transfer was permitted by a judge refusing to be confined to the § 1292(b) factors.[1/]

**1.      The Strictly Limited Trial Depositions Do Not "Moot" the Problem of Unavailability of Witnesses Located Within 100 Miles of the Connecticut Court**

The most glaring erroneous statement in the Joint Objection, and one which is essential to the

---

[1/] The United States was uncertain whether it could file a reply and contacted the Bankruptcy Court Clerk's office to inquire whether the Rule 8003 motion and objections has already been forwarded to the District Court, in which case the government would have filed a motion for leave to file a reply in the District Court. But the clerk's office informed the undersigned that the local practice is to allow movants five days to file a reply before transmitting Rule 8003 motions to the District Court. If leave for a reply was necessary, then the United States hereby requests leave to submit this one *instanter* for the reasons indicated in the first paragraph of text in this reply.

1

defendants' arguments against interlocutory appeal – which is why they repeat it at least five times (pp.3, 13-14, 18-19, 21, 22) – is the notion that Judge Carey's recent ruling permitting the government to take last-minute trial depositions of three witnesses within the subpoena power of the Connecticut court "moots" the problems caused by the unavailability of important witnesses in Delaware. First, Judge Carey did *not*, as defendants repeatedly imply, allow the government to take full trial depositions even of the three witnesses whose depositions may be taken. He allowed the government extremely limited depositions solely to confirm the foundation for the admissibility of some documents that were used without objection during the summary judgment proceedings based on declarations, plus some limited facts regarding such documents that were also established by declaration in the summary judgment proceedings.

Most importantly, it remains the case that, due solely to the original improper transfer of the adversary proceeding to Delaware without considering where witnesses could be subpoenaed for trial, coupled with the erroneous denial of retransfer in 2006 in the face of clear evidence that important witnesses unavailable in Delaware would be available in Connecticut, that the government will be (1) hampered in its trial presentation, (2) unable to ask questions of witnesses, whose depositions were taken early, based on information learned from subsequently deposed witnesses, (3) unable to call the unavailable witnesses for rebuttal as needed and in light of events at trial. Additionally, in the event that the Connecticut District Court issues a ruling on the conversion issue, prior to the trial (as it has most recently stated it would do), and if that ruling reverses the denial of conversion to Chapter 7 (as appears likely based on the transcript of the March 14, 2005 hearing in which Judge Thompson allowed the appeal to go forward),[2/] the government may nevertheless remain hampered in obtaining testimony to authenticate and gain admission of any new attorney-client documents that a Chapter 7

---

[2/] That transcript was submitted in No 03-cv-33-KAJ on 4/8/05 (DI# 30 in that cause number).

trustee will likely permit the government to inspect.

2.   **The Argument that Nothing is Left of the Main "Case" is Wrong and What Is Left Bears Considerably on this Adversary Proceeding**

The possible conversion to Chapter 7 also negates another repetitious error in the reply – the contention that there is nothing left of the "case" but this adversary proceeding, which defendants insist was "conceded" by former government trial attorney John Cardone in 2001. (Joint Obj. pp. 5, 18, 22.) The statement was made before any discovery when Mr. Cardone had no idea that the government would be seeking the files of the debtor's counsel by arguing for the appointment of a trustee based on the conflict of interest of the debtor's management.[3/] Moreover, Judge Thompson, who has just stated he will resolve an appeal from the denial of conversion to Chapter 7, has already rejected the notion that there is nothing left to do in the Connecticut "case" – arguments that the debtor and indenture trustee unsuccessfully advanced in seeking to dismiss the government's appeal from the denial of conversion and also in opposing interlocutory appeal from the grant of interim compensation to Akin Gump.

Also, to the extent that the adversary proceeding has been the main controversy that arose in the underlying Chapter 11 case, this Court should certainly consider the case law that favors interlocutory appeals from venue determinations for bankruptcy "cases" because the policies behind favoring such interlocutory appeals applies to this adversary proceeding given its scope and complexity. As the Joint Objection freely admits, this adversary proceeding will *determine* both the allowability of the defendants' claims for debt (*i.e.*, whether the claim is, in substance, an equity interest in the debtor), as well as the priorities of the various claims (*i.e.*, whether defendants' claims should be equitably subordinated) and the proper distribution of almost the entire bankruptcy estate.

---

[3/] The argument that a trustee was necessary so that a disinterested fiduciary could determine whether to waive the debtor's attorney-client privilege was not added to the government's motion to convert until after Mr. Cardone's departure when the government learned of the conflict of interest of the debtor's management.

3

Since defendants admit that interlocutory review of venue determinations for title 11 "cases" is proper and argue only against interlocutory review of venue determinations for an "adversary proceeding" that arises within the case, the fact that this adversary proceeding will control so much of the disposition of the underlying case justifies considering the precedents concerning transfer of "cases."

### 3.    "Four Different Judges" Have *Not* Rejected the Government's Position

Defendants also repeatedly rely on the talisman that four different judges in three different courts have supposedly rejected the government's venue contentions, but that is simply not accurate. Judge Shiff freely acknowledged that he was transferring the case exclusively because Judge Walsh had confirmed the plan and Judge Shiff incorrectly viewed the government's complaint as tantamount to a Rule 60(b) motion respecting the confirmation of the plan, or at least viewed the issue as being what would Judge Walsh have done with the benefit of all of the facts.[4/]  Since Judge Shiff's ruling was based on the assumption that Judge Walsh could and would try this adversary proceeding, and since that is clearly not going to happen, it is completely wrong to suggest that because Judge Shiff transferred the matter here, and/or because Judge Thompson denied leave to appeal, and/or because Judge Walsh then denied re-transfer based on a request to reconsider Judge Shiff's order, that four judges (now also including Judge Carey) have rejected the government's arguments.  One bankruptcy judge – Judge Carey – has rejected the government's arguments in their present form and based on present circumstances.

Also, in quoting Judge Walsh's 2001 denial of re-transfer on page 8 of the Joint Objection, defendants conveniently omit the part where Judge Walsh said, of Judge Shiff's order, that "it just strikes me as strange that the court that is not presiding over the chapter [11] case would make a determination for subordination under Section 510(c)," after which Judge Walsh made it clear that he

---

[4/] The government's complaint is not a plan confirmation "do over" and the government maintains that it would be error for the trial court to base a decision on the view that it is simply a "do over" of the plan confirmation.

4

felt that he simply could not disagree with Judge Shiff's ruling in light of Judge Thompson's comments in denying interlocutory appeal. (DI# 69 (Joint Obj. Ex. B), p.15.) Similarly, Judge Carey explicitly rejected any consideration of reconsidering Judge Shiff's original transfer ruling because "[t]hat decision was made and then upheld on appeal." (DI# 405 (Ex. 3 to Rule 8003 motion), pp. 61.) While Judge Walsh was arguably correct, Judge Carey could have considered the changed circumstances that made reliance on law of the case principles no longer appropriate. This Court, particularly in view of the intervening Third Circuit decision which has made it clear that it was wrong of Judge Shiff to assume that it would be proper for Judge Walsh to adjudicate this proceeding, and given that Judge Walsh *in fact* will not be presiding (contrary to Judge Shiff's assumption), is free to revisit Judge Shiff's ruling notwithstanding Judge Thompson's comments in what remains, procedurally, a denial of leave to appeal rather than an affirmance with full briefing. Also, Judge Thompson, apart from not having entertained full appellate briefing, certainly could not have considered the issue against the backdrop of the Third Circuit's 2004 ruling in Clemmons v. Wolfe, 377 F.3d 322 (3d Cir. 2004).

      Oddly, on page 25, the Joint Objection correctly argues (for what purpose we are not certain) that the government's 2006 re-transfer motion included several arguments not made in 2001, with the "most important" one (according to the government's papers in the Bankruptcy Court) being the ability to subpoena certain witnesses to trial in Bridgeport, Connecticut. In fact, this is yet another reason why this Court can reverse Judge Carey's denial of retransfer without transgressing traditional respect for law of the case in the form of Judge Thompson's denial of interlocutory appeal, since that ruling regarded a transfer order that rested exclusively on the view that Judge Walsh should preside.

**4.     The Arguments Regarding the Twin "Failures" to Appeal the Denial of Retransfer in 2001 or to Seek Recusal at that Time, Are Misplaced, and the Argument Regarding the "Failure" to Inform Judge Walsh in Advance that We Would Seek Retransfer if he Recused Himself is Offensive to the Court**

Another repeating theme in the Joint Objection is the argument that the government "failed" to appeal Judge Walsh's initial denial of re-transfer in 2001 (*e.g.*, pp. 8, 23), and "failed" to move for recusal at that time (pp. 9, 19). First, the re-transfer motion, coming after two judges had already rejected the government's efforts to stop the transfer, was required solely to preserve the ability to appeal the issue at the end of the case. As for appealing the denial of re-transfer, as defendants point out, Judge Walsh was the third judge to disagree with the government's arguments at that time. A party is never required to seek interlocutory appeal in order to preserve an argument and the failure to seek it is not a ground on which to denial a subsequent appeal, particularly when circumstances change. The combination of Judge Walsh's bowing out of the case, and the 2004 Clemmons decision providing new circuit law indicating that the government's original concerns about Judge Walsh being the trier of fact were valid concerns provided changed circumstances under which the government was entitled to seek reconsideration on the issue. Moreover, an interlocutory appeal in 2001 would have been far less compelling with Judge Walsh still on the case and without the Clemmons precedent.

Similarly, as we explained in great detail in the reply in support of recusal after defendants first raised an untimeliness argument, a considerable number of things happened during the case to greatly enhance the grounds for recusal by the time we filed the motion in December 2005. Since we have briefly recapped those events in the opening brief, we will not repeat them here. But in order to gain a thorough understanding of why the recusal motion was timely in 2005, it would be necessary to read the recusal reply brief (DI# 325).

The Joint Objection repeats (pp. 10, 11, 12) and argument, which defendants made even more stridently in opposing re-transfer, that the government did something improper in failing to include a

6

statement in its recusal motion to the effect that, if Judge Walsh did recuse himself, the government planned to move to re-transfer the case.[5/]  This argument suggests that Judge Walsh would allow such information to skew his determination of whether recusal was required.  To whatever extent potential delay may be relevant in a venue transfer context, it would plainly be an improper and inappropriate consideration in connection with a motion for recusal.  Additionally, as stated in the reply in support of our re-transfer motion after defendants made this argument in opposition thereto, if Judge Walsh had remained on the case, the government would have sought interlocutory review of his determination not to recuse himself, and would have sought a stay.  Given that Third Circuit precedent expressly favors interlocutory review of recusal denials *before* a trial, see <u>In re School Asbestos Litig.</u>, 977 F.2d 764, 777-78 (3d Cir.1992), greater delay would likely have been engendered by Judge Walsh's remaining on the case.

     Defendants also leave out important facts in stating that the government admitted that it was reminded of the recusal issue when Judge Walsh's scheduling conflict arose.  (Joint Obj. p.10 n.4.)  The government explained further that it still would not have moved for recusal at all but for the fact that Judge Walsh effectively put the government in a situation where it had to "fish or cut bait" (in defendants' words in the bankruptcy court filings).  What this refers to is that Judge Walsh's insistence that the government either file a formal recusal motion or abandon the argument completely put the government in a position where, unless it formally moved for recusal, it risked irrevocably waiving not only recusal but also the argument, made initially in opposing transfer, that, even if not quite subject to recusal, Judge Walsh's involvement in the 1996 confirmation was a reason *not* to transfer the case to

---

[5/] In their bankruptcy court papers, defendants asserted that the government "sandbagged" Judge Walsh in a deliberate "two-step" scheme of delaying the trial.  Overlooked in this stridency was the fact that if the government wanted to delay the trial, the easiest way to do it would have been to agree with defendants' position that Judge Walsh should retain the case, even though he would have to move the trial to the fall (given that the entire recusal issue arose when Judge Walsh reported that he was no longer able to try the case in May, or until the fall).

7

him, rather than a reason *to* transfer it to him.  Since the government was unwilling to waive that contention, it reexamined the grounds for recusal thoroughly, including reviewing transcripts from crucial hearings over which Judge Walsh presided in 1996, and then realized that the grounds for recusal had become far stronger than they had been in 2001.  (Again, this is spelled out more fully in the reply brief in support of recusal, DI# 325.)

5. **Pre-trial Rulings by Judge Carey Will Not be Rendered a Waste of Judicial Resources Merely Because the Proceeding is Re-Transferred; Nonetheless, the Very Fact that Defendants Raise this Kind of Argument Strongly Supports Granting Interlocutory Appeal**

Another complete fallacy in the Joint Objection is that Judge Carey's various recent pre-trial rulings will all have been a waste of judicial resources if the case is now transferred to Connecticut. (Joint Obj. p.19.)  Transfer of venue does not render pre-trial rulings a nullity.  To the contrary, Judge Shiff would be bound to adhere to them absent a justification for a party to seek reconsideration of the interlocutory pretrial rulings.

But there is a more important point that, although obscured, is indirectly revealed by defendants' argument that the various pre-trial rulings will all have been a waste of judicial resources if the cases is transferred.  That is, the argument is a harbinger of what defendants will surely argue if the trial goes forward and the government raises the venue issue as a point in an appeal from a final judgment, if it does not prevail at trial.  Defendants will argue all the more loudly that it would be a waste of judicial resources to re-try the case in Connecticut with no assurance that the outcome would be different.

Further in this same vein is the Joint Objection's repeated raising (pp. 5, 19, 20-21) of a supposed "concession" of the government's former trial attorney at oral argument on the motion for leave to appeal the original transfer order in Connecticut that the government could not possibly win an appeal from the transfer at the end of the case because the government will be unable to show that

8

the outcome would have been different. Preliminarily, a trial attorney's legal argument in seeking an appeal that is not granted does not bind the government to an error of law. Second, the government would have a right to reversal and retrial in the correct venue without having to prove that the outcome would have been different. All it would need to demonstrate is that there is a reasonable probability that the outcome could be different if the matter was tried in Bridgeport, Connecticut. And, that will obviously be the case if the government is unable to subpoena witnesses to testify at trial, notwithstanding that it may have taken some of their depositions or may yet take very limited further depositions just to get some exhibits and related facts into evidence.[6]

Consider the implications of the fact that the government has already won a pre-trial ruling that the debtor may not assert the attorney-client privilege, based on the crime-fraud exception. That ruling came in respect to a motion to compel production of a limited number of documents for which the privilege was claimed. Thereafter the government was permitted *limited* follow-up discovery on those documents that the Court ordered produced. Before that, debtor's principals and its attorneys asserted the privilege as a basis to refuse to answer dozens of deposition questions. Because the depositions had already been taken, the government never had an opportunity to fully examine the witnesses in respect to attorney-client communications. One of the debtor's former principals and virtually all of its former attorneys are within the subpoena power of the Court in Connecticut but not Delaware. Thus, if trial was held in Connecticut, then the government might be able to examine local witnesses in respect to matters opened up by the crime-fraud exception ruling.

But the mere fact that defendants even make the argument that the government could not possibly appeal a final judgment by citing the inappropriate venue is, by itself, sufficient reason for

---

[6] Somewhat inconsistent with defendants' argument that the government could never obtain reversal of even an incorrect venue determination is their statement on page 17 that a "wrongly decided transfer motion can be asserted as ground for error on appeal from a final judgment and thus need not be appealed immediately" (quoting the Del. & Hudson Ry decision, which is discussed *infra*).

this Court to grant interlocutory appeal. That is because, according to defendants, the government will not be able to obtain post-trial review of the venue issue. Accordingly, pre-trial review of the venue issue becomes imperative.

Defendants attempt to argue that the case was properly transferred to Delaware not to get it before Judge Walsh, but because the event at the heart of the dispute occurred in Delaware – the confirmation of the plan. That is a double fallacy. It a fallacy first because it is clear from Judge Shiff's comments that he thought the *judge* who confirmed the plan should reconsider that confirmation in light of all the facts the government might introduce at trial. Judge Carey was not even a Delaware bankruptcy judge at the time of the 1996 confirmation. Moreover, the plan was the culmination of extensive pre-bankruptcy planning and negotiation followed by post-petition negotiations over the plan. The pre-bankruptcy planning and negotiation all took place in Connecticut (where the debtor's headquarters were) or New York City (where the debtor's lawyers were). The negotiations for the most part took place by correspondence, fax, and phone, and *none* of the key negotiators were in Delaware at the time. Debtor was in Connecticut. Its lawyers were in New York. The pre-1996 unsecured junior PIK note holders' representatives were in Boston and Chicago. All of the members of the informal (pre-petition) and later official (post-petition) committee of unsecured creditors representing the public bond holders had the main offices outside Delaware.[7] The main lawyers for the creditors committee were also in New York City. Very little occurred in Delaware

---

[7] The committee members (and their locations) were:
        1. Chase Manhattan Bank, N.A. (New York, NY);
        2. Merrill Lynch Phoenix Fund, Inc. (Princeton, NJ);
        3. Franklin Age High Income, Inc. (Franklin Templeton Investments, San Mateo, CA);
        4. National Union Fire Insurance of Pittsburgh, PA (Pittsburgh, PA);
        5. LB Series Fund, Inc. (Thrivent Financial for Lutherans, Minneapolis, MN);
        6. Home Box Office (Time Warner, Inc., New York, NY);
        7. Texas Commerce Bank as indenture trustee for the 12¼% Subordinated Debentures.
(Texas Commerce Bank merged with Chemical Bank of New York in 1986). This indenture trustee served in respect to the pre-reorganization securities, as distinguished from the indenture trustee in this adversary proceeding, which is the trustee for the post-reorganization junior secured PIK notes.

save for the hearings on the approval of the disclosure statement and on confirmation, but no fact issues can arise in respect to what happened at those events because they are recorded in undisputed court transcripts. Most importantly, the fact that debtor's former attorneys are in New York City means that their files are there – within 100 miles of Bridgeport, Connecticut, but not within 100 miles of this Court. If Judge Thompson reverses denial of conversion, the government will be seeking those records and also likely will be needing the testimony of some of the New York lawyers to gain admissibility of any additional material found in the files of the debtor's attorneys.

In this regard, moreover, the mere fact that the trial may proceed without awaiting conversion is another reason to transfer venue back to Connecticut. The debtor and indenture trustee have already asserted that Judge Thompson lacks the power to stay the trial in Delaware because it is outside his district. While the government argues the opposite, the issue is not 100% clear. The United States maintains that if the case was transferred to Connecticut, this would not be an issue because Judge Thompson would have indisputable authority to entertain a stay pending the conclusion of the conversion appeal.

**6.    The Allegation of "Judge Shopping" is Untenable**

The Joint Objection (p.12) labels the government's 2/10/06 re-transfer motion "judge-shopping." Defendants offer no logical explanation of how "judge shopping" could conceivably explain why the government would move to transfer the case before Judge Carey made a single ruling or even held a single hearing, and given that the government had to appeal a summary judgment ruling against it by Judge Shiff. In addition, as defendants know, the government suggested at the argument on the transfer motion that it would have no quarrel with having Judge Carey preside over a trial in Connecitcut by video – citing the example of a district judge from Boston, Massachusetts (Young, J.) who has, to help alleviate docket congestion, presided over several bench trials in the Eastern District of New York by video from his courtroom in Boston while the attorneys and witnesses are in the

11

courtroom in Central Islip, New York.[8/]  (DI# 405 (Exh. 3 to Rule 8003 motion) pp. 59-60.)  That also would have eliminated any possible delay that a transfer of venue would have occasioned.[9/]

**7.      Judge Carey Did Not Consider Bankruptcy-Specific Factors in the Venue Analysis and Did Accord Overriding Weight to Avoiding Delay**

The Joint Objection (p.21) disputes the government's contention that Judge Carey leaned too much on non-bankruptcy venue transfer factors and gave undue weight to avoiding delay.  The presentation on page 21 in the Joint Objection includes a quote from the bench ruling which Judge Carey does initially recite bankruptcy factors, including location of the debtor's assets and the efficient and economic administration of the estate.  But those factors refer to venue determinations for the underlying "case," rather than an adversary proceeding.  Furthermore, examination of the bench ruling confirms that, after reciting the bankruptcy case factors, Judge Carey did not really apply them and instead turned to the Jumara decision, which did not involve a bankruptcy case or adversary proceeding.  Judge Carey completely ignored the rule favoring venue for adversary proceedings where the main case is pending.  Defendants attempt to refute this by noting that Judge Carery stated that a plaintiff's choice of forum is a factor.  Choice of forum has nothing to do with where the underlying "case" is venued.  To the contrary, a presumption (if rebuttable) in favor of venue in the district in which the underlying case is pending limits the "choice" of a plaintiff filing an adversary complaint.

Judge Carey clearly gave overriding weight to avoiding delay, first discounting several other important factors as not having any bearing on the instant facts and then stating that "[w]hen I come

---

[8/] A minor error in the Joint Objection lies in its statement that the hearing on the motion for re-transfer lasted four hours.  In fact, it consumed the first hour and a half of a hearing that then turned to a different motion.  (DI# 405 (Exh. 3 to Rule 8003 motion), p.68.)

[9/] The government is serious about this proposal, assuming that Judge Shiff would not be able to try the case with reasonable dispatch, and we would welcome the District Court's making further inquiries as necessary to consider this possibility.  We assume it would require the willingness of Judge Carey, Judge Shiff, possibly the chief judges of the bankruptcy and district courts.  We do not know whether such visiting judge assignments also require approval of the judicial councils of the circuits involved, but note that the example we have used did involve a visiting judge from a different circuit.

down to practical considerations that would make the trial easy, expeditious, or inexpensive, or the relative administrative difficulty in the two fora regarding the respective court's dockets, I think that weighs in favor of trying the case here." (DI# 405 (Ex.3 to Rule 8003 Motion) at p.70-71.) Also, court statistics do not bear out Judge Carey's belief that Judge Shiff's docket is more congested. The United States recently obtained the following comparative statistics from the offices of the United States Trustee in Connecticut and Delaware:

|                               | Delaware | Connecticut | Bridgeport |
|---|---|---|---|
| # of open cases (all chapters): | 5,236    | 4,409       | 660        |

The figures are in constant flux so this may change over time. Delaware has seven bankruptcy judges. Connecticut has four – one for Bridgeport (Judge Shiff), two for New Haven, and one for Hartford. Accordingly, the average number of cases handled by bankruptcy judges in Delaware (5,236 / 7) is 748, whereas Judge Shiff has 660 cases.[10]

## 8. The 2001 Rulings are "Inextricably" Interwined with the Venue Determination in 2006, Supporting Pendent Appellate Jurisdiction

Defendants argue (p.25) that the 2001 transfer order is not "inextricably" intertwined with the 4/10/06 Order denying re-transfer, but that is wishful thinking. It is true that our opening brief argued that the overlap was "partial" but that does not mean that the orders are not inextricably intertwined. First, the government expressly asked to Judge Carey to consider its motion one essentially for reconsideration of the earlier orders. Second, many of the arguments are identical. Third, assuming the Court grants interlocutory appeal from the 4/10/06 denial of re-transfer, there would be every reason to

---

[10] The Joint Objection points out that the government, at a status conference, opposed having Judge Carey telephone Judge Shiff to discuss Judge Shiff's availability for a trial. At the argument on the re-transfer motion, however, the government indicated it would not oppose a written inquiry. The government's reluctance to endorse an off-the-record private discussion between the judges should be understandable. The United States respectfully submits that the District Court's practice has reflected the more appropriate approach to inter-court communications, with Judge Thompson and Judge Jordan both having encouraged the parties to communicate the views of the other court on the record through providing transcripts.

13

consider the propriety of the original transfer order at this time and no reason not to consider it.

Defendants also argue (p.25) that the government's 2/10/06 retransfer motion "did not, however, reargue the merits of those" earlier motions. But that is simply because they were the law of the case and Judge Carey is a trial-level judge and was not the proper judge to ask to reconsider those rulings in the abstract. Instead the government properly asked him to reconsider them in light of the changed circumstance that the original reason for transfer had evaporated and transfer could not be sustained under a traditional venue analysis. But this Court can not only consider whether Judge Carey abused his discretion in determining the re-transfer motion (in light of the changed circumstances), but also whether the case was properly transferred here in the first place.

**9.    There is No "Precedent" Requiring Application of 28 U.S.C. § 1292(b) and this Court's Previous Pronouncements on the Issue are All Dicta**

The Joint Objection argues that this Court should adhere to its prior "precedents" applying 28 U.S.C. § 1292(b). (Joint Obj. p.16.) Preliminarily, it is well established that decisions by one district judge are simply not "precedent" binding another in the same district. More fundamentally, in none of the cited cases was there even an argument that a different standard should apply. Like so many courts that ruled on the issue before any party ever made a contrary argument and before any published decisions espousing a different view, this Court merely assumed that § 1292(b) standards governed under 28 U.S.C. § 158(d). Where no argument is made by a party to an appeal and the court merely assumes what the law is, the ruling is not binding precedent. See In re Rivera Torres, 432 F.3d 20 (1st Cir. 2005) (observing that court's statement in Fleet Mortg. Group, Inc. v. Kaneb, 196 F.2d 265 (1st Cir. 1999), that emotional distress damages could be recovered under Bankruptcy Code § 362(h), despite being explicit, was nevertheless "dictum" because the appellant in that case had not challenged that assumption).

Those courts that have actually been presented with a reasoned argument as to why that

assumption is wrong, and why district judges should have greater flexibility in allowing appeals from decisions by their Article I bankruptcy units in light of the Supreme Court case that motivated the 1984 amendments to the Bankruptcy Code and related provisions of the Judicial Code, have almost uniformly agreed that there should be greater discretion. Some of those courts had even previously issued rulings stating that § 1292(b) standards apply.

Significantly, all of the rulings of this Court cited on page 15 of the Joint Objection were decided in 1996 or earlier. The series of cases that began to reject this view began in 1997. (*See* page 31 of our Rule 8003 initial brief.) And, contrary to the implication on page 16 of the Joint Objection, under the local rules of the Third Circuit, its unpublished one-word order affirming the denial of interlocutory appeal in In re Del. & Hudson Ry Co. 96 B.R. 469 (D.Del. 1988), *aff'd* 884 F.3d 1383 and 1384 (two cases) (3d Cir. 1989), may not be viewed as precedent.

The Joint Objection incorrectly argues (p.17) that all bankruptcy decisions in which interlocutory appeal from a venue transfer ruling as been allowed involved title 11 "cases" and not "adversary proceedings," which defendants insist cannot possibly meet the § 1292(b) test. To the contrary, in In re EDP Medical Computer Systems, Inc., 178 B.R. 57 (M.D.Pa. 1995), the district court distinguished Del. & Hudson Ry. and granted interlocutory review of the denial of a motion to transfer venue for an adversary proceeding, using the § 1292(b) test, concluding that the issue of whether venue was proper was a controlling question (presumably because it would require reversal of a final judgment if the appellant was correct on the issue), and that resolving the question in advance would materially advance the litigation. The court also emphasized that no factual issues are raised by the venue transfer motion as all of the facts bearing on the venue determination were established of record and not disputed. It also observed that transfer of venue would enable consolidation of the adversary proceeding with related matters pending in the transferee district. To be sure, in EDP, the United States argued that original venue for the adversary proceeding did not properly lie in the Middle

15

District of Pennsylvania whereas in the instant case venue was proper in Connecticut and the court there then relied on 28 U.S.C. § 1412 to transfer the adversary proceeding to Delaware. But the government in the instant case is arguing that the transfer was improper *ab initio* because it relied on an improper consideration and improperly allowed that improper consideration to override all of the traditional facts that are considered in a proper venue transfer determination. The government also maintains that the Connecticut Bankruptcy Court lacked authority to transfer the matter without a motion by a party in contravention of the express language of the pertinent Bankruptcy Rule. As in EDP, there are no facts at issue in this appeal, only the application of law to undisputed facts.[11] As in EDP, a transfer of venue in this case will enable consolidation of proceedings because, as argued in the pending motion in No. 03-33-KAJ, transfer of the underlying adversary proceeding will enable transfer of that appeal so it can be consolidated with the appeals pending in Connecticut, one of which raises many of the same issues.

Another appeal from denial of the transfer of an *adversary proceeding* was permitted by this Court in In re Trem-Lean Meat Products, Inc., 11 B.R. 1010 (D.Del. 1981), and without mention of 28 U.S.C. § 1292(b).[12] The Joint Objection incorrectly argues (p.18 n.10) that the case is irrelevant because the case pre-dates the enactment of 28 U.S.C. § 158(a)(3)'s interlocutory appeal provision and the court "conclud[ed] that jurisdiction existed under former 28 U.S.C. § 1334(b). What this omits is that former § 1334(b) was quite similar to present § 158(a)(3). It provided that "[t]he district courts for such districts shall have jurisdiction of appeals from interlocutory orders and decrees of bankruptcy courts, but only by leave of the district court to which the appeal is taken." 28 U.S.C. § 1334(b) (1978

---

[11] Accordingly, defendants argument that the government was required to show a need for transfer "by a preponderance of the evidence" (Joint Obj. p. 20) is meaningless in this context.

[12] That the transfer was only of an adversary proceeding becomes apparent in the portion of the opinion discussing the existence of a "complaint" that then had to be served under old Bankruptcy Rule 704 (the forerunner of present Bankruptcy rule 7001).

version). Thus, just like with present § 158(a)(3) the district court is simply granted statutory discretion to grant interlocutory appeal with no standards provided under either old § 1334(b) or present § 158(a)(3).

In the end, defendants have nothing to refute our contention that this is a most unique situation. They can cite no case in which an adversary proceeding was transferred outside the district where the main case was pending in order to get it before a judge who entered an order in a prior case that is indirectly under challenge by a "stranger to the prior case" (as Judge Walsh put it in his 2003 denial of defendant's motion for summary judgment on the finality of the 1996 plan), after which that judge bowed out of presiding over the adversary proceeding, and then the newly assigned judge refused to re-transfer the case back to the district in which it was properly brought in the first place.

## Conclusion

For the foregoing reasons and those indicated in the United States' initial Rule 8003 brief, the District Court should grant leave to take and interlocutory appeal. As requested in a motion filed in No. 03-cv-33-KAJ, the District Court should then expedite the appeal, including by allowing the government's initial Rule 8003 brief to double as an opening appeal brief, and by shortening the times for answering and reply briefs, so that it can be decided before the scheduled three-week trial set to begin June 12, 2006.

/s/ *Peter Sklarew*
PETER SKLAREW
Tax Division, Dept. of Justice
Post Office Box 55
Washington, D.C. 20044
(202) 307-6571 / Fax (202) 514-5238
peter.a.sklarew@usdoj.gov

## Certificate of Service

     IT IS HEREBY CERTIFIED that service of the foregoing **REPLY TO (DI# 419) JOINT OBJECTION TO UNITED STATES' MOTION FOR LEAVE TO APPEAL (DI# 415)** is being made this  8th  day of May, 2006, upon counsel for all defendants via the Court's ECF system since this motion is being filed electronically.

                                            /s/ *Peter Sklarew*
                                            PETER SKLAREW
                                            Attorney, Tax Division

Case 1:06-mc-00091-KAJ   Document 6   Filed 05/09/2006   Page 20 of 20